UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD GRAHAM, | |
| Plaintiff, | |
| v. | COMPLAINT |
| RICHARD PRINCE, GAGOSIAN GALLERY, INC. and LAWRENCE GAGOSIAN, | JURY TRIAL DEMANDED |
| Defendants. | |

Plaintiff Donald Graham ("Mr. Graham" or "Plaintiff"), by and through his undersigned counsel, for his Complaint against defendants Richard Prince ("Mr. Prince"), Gagosian Gallery, Inc. ("Gagosian Gallery") and Lawrence Gagosian ("Mr. Gagosian") (collectively, "Defendants") hereby alleges as follows:

**Nature of Action**

1. This is an action for injunctive and monetary relief arising from Defendants' infringement of Mr. Graham's exclusive rights in the acclaimed photographic work of art entitled "Rastafarian Smoking a Joint" (the "Copyrighted Photograph", a copy of which is attached hereto as Exhibit A).

2. Mr. Graham is a visual artist engaged in fine art and commercial photography whose artwork has been exhibited in museums and shown at fine art galleries.

3. Mr. Graham is the author of, and owner of the registered copyright in, the Copyrighted Photograph, which is a somber black and white portrait capturing a Rastafarian man in the act of lighting a marijuana cigarette.

4. Defendant Prince, an "appropriation artist" notorious for incorporating works of others into artworks for which he claims sole authorship, willingly and knowingly and

without seeking permission from Mr. Graham, copied and reproduced the Copyrighted Photograph as it appeared on a social media website (also without permission from Mr. Graham), modified the Copyrighted Photograph by printing it in a form framed by elements of the website from which it was copied (the "Infringing Work", a copy of which is attached hereto as <u>Exhibit B</u>), and displayed the Infringing Work at a fine art gallery space owned and operated by Gagosian Gallery and Mr. Gagosian in September and October of 2014 as part of an exhibition entitled "New Portraits" (the "Exhibition").  Mr. Prince continues to display photographs that depict the Infringing Work alongside other Exhibition works on his Internet website, richardprince.com.

5. Defendants Gagosian Gallery and Mr. Gagosian solicited works of art, including the Infringing Work, from Mr. Prince; curated, funded, promoted and profited from the Exhibition; and compensated Mr. Prince from income produced by sales of works displayed at the Exhibition and other exhibitions featuring works originally displayed at the Exhibition. Defendant Gagosian purchased the Infringing Work.  Gagosian Gallery continues to display a photograph that depicts the Infringing Work alongside other Exhibition works on its Internet website, gagosian.com.

6. One or more of the Defendants created and displayed (or caused to be created and displayed) a billboard promoting the Exhibition and created and distributed physical copies of a companion catalog to the Exhibition, both of which prominently featured the Infringing Work, in each case without seeking permission from, giving attribution to or compensating Mr. Graham.

## Jurisdiction and Venue

7. This is a civil action seeking injunctive and monetary relief for violations of the copyright laws of the United States, 17 U.S.C. § 101 *et seq.*

8. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a).

9. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 1400(a).

10. This Court has personal jurisdiction over each of the Defendants because Defendants reside in and/or are doing business in New York and have committed acts of copyright infringement within New York.

## Parties

11. Plaintiff Donald Graham is a visual artist engaged in fine art and commercial photography, specializing in portraiture. Mr. Graham is a domiciliary of the State of California, residing in Los Angeles. In addition to creating works of art for exhibition in fine art galleries, Mr. Graham has been commissioned to take photographs for editorial and advertising purposes. Mr. Graham's fine artwork has been exhibited at various high-profile galleries and museums including, but not limited to, the Metropolitan Museum of Art and the International Center of Photography in New York and A. Galerie in Paris. Mr. Graham's editorial and commercial work has appeared in and on the cover of more than one hundred magazines including *Vanity Fair*, *Elle*, *Vogue*, *Paper*, *Time* and *Sports Illustrated*.

12. Defendant Richard Prince is a notorious "appropriation artist" who has made tens of millions of dollars over the course of his career by reproducing, modifying or preparing derivative works from the works of others, typically without permission, and selling

the reproduced, modified or derivative works as his own.  Mr. Prince is a resident of the State of New York, residing in Rensselaerville, New York.  Mr. Prince, joined with the other Defendants, has previously appeared before this Court to defend against claims of copyright infringement.

13.     Defendant Gagosian Gallery is a corporation organized and existing under the laws of the State of New York and having its principal place of business in the County and City of New York.  Gagosian Gallery owns and operates a number of art galleries in New York City and various other cities, including the gallery located at 976 Madison Avenue, New York, NY 10075 (the "Madison Gallery").  Gagosian Gallery is Mr. Prince's primary or exclusive gallery and agent.  Gagosian Gallery, joined with the other Defendants, has previously appeared before this Court to defend against claims of copyright infringement.

14.     Defendant Lawrence Gagosian is the controlling shareholder of Gagosian Gallery and makes its operating decisions, including those involving the Madison Gallery. Mr. Gagosian is a resident of the State of New York, residing in New York City.  Mr. Gagosian, joined with the other Defendants, has previously appeared before this Court to defend against claims of copyright infringement.

**Factual Background**

15.     Mr. Graham is a practiced and acclaimed visual artist who began his career as a photographer in 1983.  His published body of works includes the Copyrighted Photograph.

16.     In May of 1996, Mr. Graham, at his own direction and expense, spent approximately two weeks trekking through the villages and mountains of Jamaica, carrying with him his photography equipment and mobile studio, in order to capture photographs of the Rastafarian people in their surrounding environment. Mr. Graham worked fervently to convince

the Rastafarians that became the subjects of his photographs that his purposes were artistic and to overcome an inherent distrust due to his "outsider" status. Mr. Graham's efforts culminated in a series of photographic works including the Copyrighted Photograph.

17. The Copyrighted Photograph, registered with the United States Copyright Office on October 20, 2014 under Registration No. VA 1-945-613, a copy of which is attached hereto as Exhibit C,[1] is highly original and unique. Mr. Graham captured the spirit and gravitas of the Rastafarian people in a way that required considerable skill and talent.

18. The Copyrighted Photograph was first published in August 1998 and, in recognition of its artistic merit, was published in *Communication Arts* magazine's "Photography Annual 39" as part of Mr. Graham's five-photograph, award-winning series in the "Unpublished" category for that year.

19. Mr. Graham originally captured the Copyrighted Photograph using a Nikon camera on black and white film. Mr. Graham now sells prints of the Copyrighted Photograph, exclusively through A. Galerie, located at Rue Leonce Reynaud, 4 75116 Paris, France ("A. Galerie") or through his studio, in limited editions and in limited sizes. The Copyrighted Photograph is available in limited editions of eight prints, size 4 ft. by 5 ft., and 25 prints, size 20 in. by 24 in.

20. Since its initial publication, Mr. Graham has never licensed the Copyrighted Photograph or made it available for any commercial purpose other than for sale to fine art collectors through A. Galerie, from 2004 to present, or through Mr. Graham's studio, in each case exclusively as a fine art print.

---

[1] Plaintiff's application for supplemental registration in order to reflect a corrected Date of 1st Publication (per discussion supra in paragraph 18) is pending before the U.S. Copyright Office.

21. Mr. Graham's fine art Internet website, donaldgrahamfineart.com, contains two digital productions of the Copyrighted Photograph in the "Portraits" and "Work in Museums" sections, in each case in close proximity to the notice, "© Donald Graham." Another digital production of the Copyrighted Photograph exists on the Internet website donaldgraham.com in the "Portraits" section, also in close proximity to the "© Donald Graham" notice.

22. In recognition of the Copyrighted Photograph's status as a seminal work in his career, Mr. Graham displayed a 4 ft. by 5 ft. fine art print of the Copyrighted Photograph as one of only two of his fine artworks (the Copyrighted Photograph being the more prominently featured of the two) at the New York apartment and studio he maintained from 1997 until 2011, located at 296 West 10th Street, New York, NY 10014.

23. Mr. Prince has achieved notoriety in the "appropriation art" industry for his blatant disregard of copyright law. Mr. Prince consistently and repeatedly has incorporated others' works into works for which he claims sole authorship without obtaining permission from, or providing compensation, recognition or attribution to, the original work's author or copyright owner.

24. Regarding the legal implications of his practice, Mr. Prince commented in 2011: "Copyright has never interested me. For most of my life I owned half a stereo so there was no point in suing me, but that's changed now and it's interesting. … So, sometimes it's better not to be successful and well known and you can get away with much more. I knew what I was stealing 30 years ago but it didn't matter because no one cared, no one was paying any attention."

25. The Exhibition, originally held at the Madison Gallery from September 19, 2014 to October 24, 2014, featured a series of 37 inkjet prints on canvas, size 4 ft. ¾ in. by 5 ft. 5 ¾ in., of what Mr. Prince has referred to as "screen saves" of posts to the photographically oriented social media website Instragram ("Instagram") by Instagram users, produced by Mr. Prince for public display and for sale by or through Gagosian Gallery.

26. The Infringing Work included a reproduction of the Copyrighted Photograph, the only modifications thereto being:

(a) minor cropping of the bottom and top portions of the Copyrighted Photograph, leaving almost the entirety of the Copyrighted Photograph fully in tact (including the portrait subject's face, arms and torso);

(b) framing the Copyrighted Photograph with elements of the Instagram graphic user interface (including (i) above the Copyrighted Photograph: one line of text including a "thumbnail" image and username of the Instagram account holder responsible for posting the image to Instagram and (adjacent to that username) the time passed since the initial post; and (ii) below the Copyrighted Photograph: one line of text reading "[pictogram of heart] 128 likes", (below that line) two lines of text reading "[pictogram of text bubble] rastajay92 Real Bongo Nyah man a real Congo Nyah [pictogram of fist] repost @indigoochild", and (below those lines) a single line of text reading: "richardprince4 Canal Zinian da lam jam [pictogram of fist]" (such line of text, excluding the richardprince4 username, the "Appended Text")); and

(c) resizing the Copyrighted Photograph such that the total dimensions of the Infringing Work (consisting of the Copyrighted Photograph plus the framing Instagram elements) were 4 ft. ¾ in. by 5 ft. 5 ¾ in.

27. To create the Infringing Work, Mr. Prince accessed a post on Instagram containing an unauthorized reproduction of the Copyrighted Photograph, posted the Appended Text via his Instagram account and took a "screen save" of the Instagram post as it appeared on his mobile phone, thereby saving a digital copy of the image captured by the screen save in the memory of the mobile phone. Mr. Prince then sent the saved image to his computer, from which he proceeded to print (or cause to be printed) the saved image as a much larger scale inkjet on canvas. Mr. Prince's sole modification to the Instagram post prior to his screen save was the addition of the Appended Text (which appeared adjacent to his Instagram username).

28. Each of Mr. Prince's works displayed at the Exhibition included a line of text posted to Instagram prior to Mr. Prince's screen save in the fashion of the Appended Text. In a description of the process for creating these works, authored by Mr. Prince and published on gagosian.com and richardprince.com, Mr. Prince referred generally to the "'comments'" (quotation marks in original) he made to the original posts by other Instagram users prior to his screen saves alternatively as "non sequitur", "gobbledygook", "jokes", "oxymorons", "'psychic jiu jitsu'" (quotation marks in original) and "inferior language" that "sounds like it means something." Regarding the language of these "comments", Mr. Prince posited the following: "What's it mean? I don't know. Does it have to mean anything at all?" Below the description as it appears on gagosian.com is contact information for Gagosian Gallery and the following notice: "All images are subject to copyright. Gallery approval must be granted prior to reproduction."

29. Mr. Graham was made aware of Mr. Prince's infringement of the Copyrighted Photograph in early October 2014 by a friend of Mr. Graham's in the arts community who attended the Exhibition and, immediately upon viewing the Infringing Work, recognized the reproduction of the Copyrighted Photograph therein, having recalled seeing it in

Mr. Graham's former apartment and studio (discussed infra in paragraph 22), and informed Mr. Graham that the Copyrighted Photograph was on display at the Exhibition.

30.  The Infringing Work was sold by Mr. Prince or Gagosian Gallery to Mr. Gagosian prior to the conclusion of the Exhibition.

31.  On October 25, 2014, Mr. Prince responded to a post by Mr. Graham's wife on the social media website Twitter ("Twitter"), in which she stated that Mr. Prince "appropriated" Mr. Graham's photograph into the Exhibition, with a reply post from his Twitter account: "You can have your photo back. I don't want it. You can have all the credit in the world."

32.  One or more of the Defendants created (or caused to be created) and distributed a companion catalog to the Exhibit that featured reproductions of the works displayed at the Exhibit, including the Infringing Work (the "Infringing Catalog").

33.  On or about February 12, 2015, Mr. Graham caused a cease and desist letter to be sent to Mr. Prince and Gagosian Gallery, demanding that the Defendants:

(a)  Cease and desist from continuing to exhibit and/or distribute any work containing unauthorized reproductions of Mr. Graham's copyrighted artwork.

(b)  Remove all unauthorized reproductions of the Copyrighted Photograph from any work attributable to Mr. Prince.

(c)  Remove all unauthorized reproductions of the Copyrighted Photograph from the Gagosian Gallery website.

(d)  Deliver or destroy all copies of the Infringing Catalog.

(e)  Identify all of Mr. Prince's work containing the Copyrighted Photograph and the current location of each such work.

(f) Immediately deliver in gross all compensation Mr. Prince or Gagosian Gallery had received from each and every sale of any and all works that contained the Copyrighted Work.

34. One or more of the Defendants created (or caused to be created) and endorsed promotional materials and advertisements for exhibitions of Mr. Prince's works (including the Exhibition), including but not limited to photographs of the Exhibition depicting the Infringing Work that were displayed on Internet websites owned and operated by the Defendants.

35. One or more of the Defendants engaged an agent to reproduce and display a gigantic photograph of the Exhibition prominently featuring the Infringing Work on a billboard at 50th Street and West Side Highway in New York City for several months, until at least July 2015, a photograph of which is attached hereto as Exhibit D.

36. None of Mr. Prince, Gagosian Gallery, nor Mr. Gagosian ever solicited or obtained permission from Mr. Graham to reproduce, modify, distribute or display the Copyrighted Photograph or prepare any derivative work therefrom.

37. Defendants were previously co-defendants in a suit by a photographer alleging direct and indirect copyright infringement primarily related to an exhibition of Mr. Prince's works entitled "Canal Zone" (the "Canal Exhibition") held at a gallery operated by Gagosian Gallery at 555 West 24th Street, New York, NY 10011 (the "Chelsea Gallery") (*Cariou v. Prince*, 784 F. Supp. 2d 337, 342 (S.D.N.Y. 2011) judgment reversed in part, vacated in part, 714 F.3d 694 (2d Cir. 2013)).

38. The photographs alleged by the *Cariou* plaintiff to have been infringed featured subject matter similar to the Copyrighted Photograph, specifically a focus on partially

clothed Rastafarian men photographed in black and white.  Mr. Prince created thirty works incorporating the *Cariou* plaintiff's photographs, twenty-nine of which were displayed in the Canal Exhibition (the "Prince Canal Works"). The amount and substantiality of the *Cariou* plaintiff's photographs incorporated into the Prince Canal Works varied and such photographs were to varying degrees overlaid or interspersed with non-copyrighted elements.

39. This Court found infringement as a matter of law for all thirty Prince Canal Works; the Court of Appeals for the Second Circuit reversed as to twenty-five of the Prince Canal Works (finding such works to be permissible fair use) and remanded to this Court the adjudication of the five remaining Prince Canal Works.  Prior to such adjudication, Defendants reached a settlement with the *Cariou* plaintiff out of court, the terms of which have not been publicly disclosed.

40. The Parties were not able to come to an out-of-court resolution regarding Defendants' violation of Mr. Graham's exclusive rights in the Copyrighted Photograph and this Complaint followed.

### First Claim for Relief
### (Copyright Infringement Against Richard Prince)
### (17 U.S.C. §§ 106, 501)

41. Mr. Graham hereby incorporates paragraphs 1 through 40 of this Complaint as if fully set forth herein.

42. Defendant Prince infringed Mr. Graham's exclusive rights as the copyright owner of the Copyrighted Photograph by reproducing, publicly displaying and causing the Copyrighted Photograph to be distributed; by incorporating the Copyrighted Photograph into the unauthorized preparation of derivative works; and by utilizing depictions of the Infringing Work in promotional and advertising materials for exhibitions of Mr. Prince's works (including the

Exhibition), on a widely publicly accessible billboard and on Mr. Prince's website; and by creating and distributing (or materially assisting in the creation and distribution of) the Infringing Catalog, in each case without the permission of Mr. Graham. The infringing conduct occurred in the State of New York.

43. Defendant Prince's infringement was willful because, as a notorious "appropriation artist" who has previously been a defendant in copyright infringement litigation, Mr. Prince had knowledge that his unauthorized use of the Copyrighted Photograph infringed Mr. Graham's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the possibility thereof. In addition, Mr. Prince's receipt of Mr. Graham's cease and desist letter and engagement in infringing conduct subsequent thereto, including but not limited to his use of depictions of the Infringing Work to promote himself and exhibitions of his works (including the Exhibition), confirms the willfulness and knowledge with which Mr. Prince infringed Mr. Graham's copyright in the Copyrighted Photograph.

44. Defendant Prince's infringing actions have caused and continue to cause injury to Plaintiff to a degree and extent as yet to be determined.

**Second Claim For Relief**
**(Copyright Infringement Against Gagosian Gallery)**
**(17 U.S.C. §§ 106, 501)**

45. Mr. Graham hereby incorporates paragraphs 1 through 44 of this Complaint as if fully set forth herein.

46. Defendant Gagosian Gallery infringed Plaintiff's exclusive rights as the copyright owner of the Copyrighted Photograph by publicly displaying, offering for sale, and selling the Infringing Work; by utilizing depictions of the Infringing Work in promotional and advertising materials for exhibitions of Mr. Prince's works (including the Exhibition), on a

widely publicly accessible billboard and on websites that it operates and owns; and by creating and distributing (or materially assisting in the creation and distribution of) the Infringing Catalog, in each case without the permission of Mr. Graham.  The infringing conduct occurred in the State of New York.

47.     Defendant Gagosian Gallery's infringement was willful because, as a well-established and sophisticated art gallery with locations around the world that has represented Mr. Prince with longstanding knowledge and support of his practices as an "appropriation artist", and having previously defended against infringement claims arising out of exhibition of Mr. Prince's "appropriation art" in a suit that was ultimately settled in part outside of court, it knew or should have known that its actions infringed Mr. Graham's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the possibility thereof. In addition, Gagosian Gallery's receipt of Mr. Graham's cease and desist letter and engagement in infringing conduct subsequent thereto, including but not limited to its use of depictions of the Infringing Work to promote itself and exhibitions of Mr. Prince's works (including the Exhibition), confirms the willfulness and knowledge with which Gagosian Gallery infringed Mr. Graham's copyright in the Copyrighted Photograph.

48.     Despite this knowledge and willfulness, Defendant Gagosian Gallery encouraged and allowed Mr. Prince to publicly display, offer for sale and sell the Infringing Work as part of the Exhibition, materially contributing to the infringing activity by providing the space and resources at the Madison Gallery, as well as promotional and advertising assistance, that made the Exhibition possible.  Accordingly, Gagosian Gallery is contributorily liable for infringement of Mr. Graham's copyright in the Copyrighted Photograph.

49. As the exclusive or primary gallery and agent of Mr. Prince, Defendant Gagosian Gallery had the ability to influence and control Mr. Prince's infringing actions in and outside of the Madison Gallery. By encouraging and allowing Mr. Prince to publicly display, offer for sale and sell the Infringing Work among the many works included in the Exhibition, Gagosian Gallery benefited financially from the publicity and notoriety it received resulting from the Exhibition, as well as the resulting sale of the works displayed therein (in addition to other of Mr. Prince's works). Accordingly, Gagosian Gallery is vicariously liable for infringement of Mr. Graham's copyright in the Copyrighted Photograph.

50. Defendant Gagosian Gallery's infringing actions have caused and continue to cause injury to Plaintiff to a degree and extent as yet to be determined.

**Third Claim For Relief**
**(Copyright Infringement Against Lawrence Gagosian)**
**(17 U.S.C. §§ 106, 501)**

51. Mr. Graham hereby incorporates paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. Defendant Gagosian infringed Plaintiff's exclusive rights as the copyright owner of the Copyrighted Photograph by publicly displaying, offering for sale, and selling the Infringing Work; by utilizing depictions of the Infringing Work in promotional and advertising materials for exhibitions of Mr. Prince's works (including the Exhibition), on a widely publicly accessible billboard and on the Gagosian Gallery websites; and by creating and distributing (or materially assisting in the creation and distribution of) the Infringing Catalog, in each case without the permission of Mr. Graham, by and through his controlling interest in Gagosian Gallery. The infringing conduct occurred in the State of New York.

53. Defendant Gagosian's infringement was willful because, as a well-known and sophisticated proprietor of numerous art galleries, including the Madison Gallery and the Chelsea Gallery, who controls the gallery that represents Mr. Prince with longstanding knowledge and support of his practices as an "appropriation artist", and having previously defended against infringement claims arising out of exhibition of Mr. Prince's "appropriation art" in a suit that was ultimately settled in part outside of court, he knew or should have known that his actions infringed Mr. Graham's exclusive rights under the Copyright Act or, at least, recklessly and irresponsibly ignored the possibility thereof.  In addition, Mr. Gagosian's receipt of Mr. Graham's cease and desist letter and engagement in infringing conduct subsequent thereto, including but not limited to his use of depictions of the Infringing Work to promote his galleries and exhibitions of Mr. Prince's works (including the Exhibition), confirms the willfulness and knowledge with which Mr. Gagosian infringed Mr. Graham's copyright in the Copyrighted Photograph.

54. Despite this knowledge and willfulness, Defendant Gagosian encouraged and allowed Mr. Prince to publicly display, offer for sale and sell the Infringing Work as part of the Exhibition, materially contributing to the infringing activity by providing the space and resources at the Madison Gallery, as well as promotional and advertising assistance, that made the Exhibition possible.  Accordingly, Mr. Gagosian is contributorily liable for infringement of Mr. Graham's copyright in the Copyrighted Photograph.

55. As a representative of Mr. Prince and the controlling shareholder in Gagosian Gallery, Defendant Gagosian had the ability to influence and control Mr. Prince's infringing actions in and outside of the Madison Gallery.  By encouraging and allowing Mr. Prince to publicly display, offer for sale and sell the Infringing Work among the many works

included in the Exhibition, Mr. Gagosian benefited financially from the publicity and notoriety he received resulting from the Exhibition, as well as the resulting sale of the works displayed therein (in addition to other of Mr. Prince's works).  Mr. Gagosian benefited further by obtaining the opportunity to purchase the Infringing Work from Mr. Prince.  Accordingly, Mr. Gagosian is vicariously liable for infringement of Mr. Graham's copyright in the Copyrighted Photograph.

56. Defendant Gagosian's infringing actions have caused and continue to cause injury to Plaintiff to a degree and extent as yet to be determined.

### Prayer for Relief

WHEREFORE, the Plaintiff prays that this Court enter judgment in his favor and against Defendants:

1. Finding that Defendants have infringed Mr. Graham's exclusive rights in the Copyrighted Photograph, pursuant to 17 U.S.C. §106;

2. Granting Mr. Graham permanent injunctive relief enjoining each Defendant from reproducing, modifying, preparing derivative works from, displaying or selling, offering to sell, or otherwise distributing the Infringing Work, the Infringing Catalog or any other infringing articles, including any copies of any of the foregoing existing in any form, pursuant to 17 U.S.C. § 502;

3. Ordering the seizure and forfeiture to Mr. Graham, or other disposition as the court deems appropriate, of the Infringing Work, and ordering the destruction, or other disposition as the court deems appropriate, of the Infringing Catalog and any other infringing articles, including all copies of any of the foregoing existing in any form in the possession or under the control of any of the Defendants, pursuant to 17 U.S.C. § 503;

    4.  Granting Mr. Graham statutory damages in the maximum amount allowed by law, or, alternatively at Mr. Graham's election, profits or other advantages derived by Defendants based on copyright infringement of the Copyrighted Photograph, pursuant to 17 U.S.C. § 504;

    5.  Directing that Defendants reimburse Mr. Graham's attorneys' fees and costs in this action, pursuant to 17 U.S.C. § 505; and

    6.  Granting such other and further relief as the Court deems proper and just.

December 30, 2015

            CRAVATH, SWAINE & MOORE LLP,

           by
             */s/ Christopher P. Davis*
              David R. Marriott
              Christopher P. Davis

             Worldwide Plaza
              825 Eighth Avenue
              New York, NY 10019
               (212) 474-1000
                dmarriott@cravath.com
                cdavis@cravath.com

            *Attorneys for Plaintiff Donald Graham*