**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD GRAHAM,

                          *Plaintiff*,

          -against-

RICHARD PRINCE, GAGOSIAN
GALLERY, INC., and LAWRENCE
GAGOSIAN,

                        *Defendants*.

No. 1:15-cv-10160-SAS

Oral Argument Requested

**MEMORANDUM OF LAW**
**IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS**

Matthew S. Dontzin
Tibor L. Nagy
Tracy O. Appleton
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, New York 10075
(212) 717-2900

*Attorneys for Defendants Gagosian Gallery,*
*Inc., and Lawrence Gagosian*

Joshua I. Schiller
Matthew L. Schwartz
Frederick J. Lee
Benjamin Margulis
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
(212) 446-2300

*Attorneys for Defendant Richard Prince*

# TABLE OF CONTENTS

*Page*

TABLE OF CONTENTS.................................................................................................. i

TABLE OF AUTHORITIES ........................................................................................... ii

PRELIMINARY STATEMENT ..................................................................................... 1

BACKGROUND ............................................................................................................. 5

A.      Background on Appropriation Art and Richard Prince ...................................... 5

B.      The *Cariou v. Prince* Decision ........................................................................ 7

C.      The *New Portraits* Exhibition ......................................................................... 9

LEGAL STANDARD ................................................................................................... 12

ARGUMENT ................................................................................................................ 13

I.      PRINCE'S ARTWORK IS FAIR USE. ....................................................... 13

      A.      The Purpose-And-Character Factor Weighs In Favor Of Prince Because His Artwork Is Transformative. ........................................................ 13

            1.      Prince's Artwork Is Transformative............................................... 14

            2.      Commerciality Is Of Limited Weight Because Prince's Artwork Is Transformative. ................................................................ 17

      B.      The Nature-Of-The-Work Factor Is Of "Limited Usefulness" Because Prince's Artwork Is Transformative. ................................................... 18

      C.      The Amount-And-Substantiality Factor Weighs In Favor Of Prince Because His Use Is Reasonable In Light Of His Purpose. ......................... 18

      D.      The Market-Effect Factor Favors Prince As His Artwork Is Transformative And Fills A Market Niche That Graham Has No Interest In Occupying. .................. 19

II.      GRAHAM'S DAMAGES SHOULD BE LIMITED AS A MATTER OF LAW TO ANY PROFITS OBTAINED FROM THE SALE OF *UNTITLED*. .......................................... 22

CONCLUSION.............................................................................................................. 25

# TABLE OF AUTHORITIES

*Page(s)*

**CASES**

*Am. Geophysical Union v. Texaco, Inc.*,
   60 F.3d 913 (2d Cir. 1994) .................................................................. 18

*Antenna Television v. Aegean Video Inc.*,
   No. 95-CV-2328 ERK, 1996 WL 298252 (E.D.N.Y. Apr. 23, 1996) .................................... 24

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 12, 23

*Authors Guild v. Google, Inc.*,
   804 F.3d 202 (2d Cir. 2015) ................................................................ 17, 21

*Authors Guild, Inc. v. HathiTrust*,
   755 F.3d 87 (2d Cir. 2014) .................................................................. 20

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003) ...................................................... 4, 22-24

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ........................................................................ 12, 23

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006) ............................................................... 3, 18, 19

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006) ......................................................... 1, 2, 15, 16, 18-20

*Brownmark Films, LLC v. Comedy Partners*,
   682 F.3d 687 (7th Cir. 2012) ............................................................... 12, 13

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994).............................................................. 3, 8, 12-14, 16, 17, 19

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013) ........................................................ 1-9, 12-14, 16-21

*Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*,
   150 F.3d 132 (2d Cir. 1998) ............................................................... 14, 15, 20

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*,
   919 F. Supp. 728 (S.D.N.Y. 1996) ........................................................... 25

*Fournier v. Erickson*,
   202 F. Supp. 2d 290 (S.D.N.Y. 2002) ....................................................... 25

ii

*Hamil Am., Inc. v. GFI, Inc.*,
    193 F.3d 92 (2d Cir. 1999) ........................................................................ 24

*Leibovitz v. Paramount Pictures Corp.*,
    137 F.3d 109 (2d Cir. 1998) ...................................................................... 17

*Newton v. Penguin/Berkley Pub. USA*,
    No. 13 Civ. 1283, 2014 WL 61232 (S.D.N.Y. Jan. 6, 2014) ...................... 13

*On Davis v. The Gap, Inc.*,
    246 F.3d 152 (2d Cir. 2001) .......................................................... 4, 23, 24

*Pani v. Empire Blue Cross Blue Shield*,
    152 F.3d 67 (2d Cir. 1998) ........................................................................ 12

*Scott v. WorldStarHipHop, Inc.*,
    No. 10 Civ. 9538, 2011 WL 5082410 (S.D.N.Y. Oct. 25, 2011) ................ 12

*Shady Records, Inc. v. Source Enterprises, Inc.*,
    No. 03 Civ. 9944, 2005 WL 14920  (S.D.N.Y. Jan. 3, 2005) ..................... 25

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
    547 F.3d 406 (2d Cir. 2008) ...................................................................... 17

*TCA Television Corp. v. McCollum*,
    No. 15 Civ. 4325, 2015 WL 9255341 (S.D.N.Y. Dec. 17, 2015) ............... 12

*Troll Co. v. Uneeda Doll Co.*,
    483 F.3d 150 (2d Cir. 2007) .................................................................. 5, 25

STATUTES

17 U.S.C. § 107 ................................................................................. 13, 18, 19

17 U.S.C. § 412 ......................................................................................... 4, 25

17 U.S.C. § 504(b) .................................................................................... 4, 22

RULES

Fed. R. Civ. P. 12(b)(6) ................................................................................. 1

Fed. R. Civ. P. 8(a)(2) ................................................................................. 23

CONSTITUTIONAL PROVISIONS

U.S. Const., art. I, § 8, cl. 8 ......................................................................... 13

Defendants Richard Prince ("Prince"), Gagosian Gallery, Inc., and Lawrence Gagosian (together with Gagosian Gallery, Inc., "Gagosian," and together with Prince, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint of Plaintiff Donald Graham ("Plaintiff" or "Graham") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

In *Cariou v. Prince*, 714 F.3d 694 (2d Cir. 2013), the Second Circuit held that "appropriation art" created by Prince that is substantially similar to the artwork at issue here constituted fair use as a matter of law. That decision is controlling and disposes of this case.

Prince is a well-known appropriation artist. "Appropriation art" involves "the more or less direct taking over into a work of art a real object or even an existing work of art." *Id.* at 699. Prince follows in a long line of artists—including Marcel Duchamp, Pablo Picasso, Salvador Dali, Andy Warhol, Robert Rauschenberg, Jasper Johns, Sherry Levine, and Jeff Koons—who have expressed themselves "by reference to the works of others." *Blanch v. Koons*, 467 F.3d 244, 250 (2d Cir. 2006). Many artists borrow from existing culture, but appropriation artists do so in a more overt way that challenges our conception of art.

In two landmark copyright cases, *Blanch* and *Cariou*, the Second Circuit recognized that appropriation art can be considered "transformative" as a matter of law and, therefore, make fair use of copyrighted material. In *Blanch*, the Second Circuit held that an artwork by appropriation artist Jeff Koons made fair use of copyrighted advertising images of women's legs, which he juxtaposed against a backdrop of food and landscape. *Id.* at 247. The Court deemed this artwork transformative because it used the copyrighted material "as fodder for his commentary on the social and aesthetic consequences of mass media." *Id.* What mediates the critical dividing line between fair use and infringement in *Blanch* is the "transformative" nature of the work—that is,

1

(1) whether the work adds "new expression, meaning, or message," and (2) whether the work "usurps the market of the original work." *Id.* at 253, 258 (internal quotation marks omitted).

In 2013, the Second Circuit reaffirmed the transformative nature of appropriation art in *Cariou*, holding that twenty-five of thirty paintings in Prince's *Canal Zone* series made fair use of copyrighted photographs by Patrick Cariou as a matter of law. As in this case, Prince's paintings incorporated enlarged copies of the photographs and other elements to create fundamentally different works. *Cariou*, 714 F.3d at 706. The Second Circuit held that these paintings were transformative as a matter of law under the standard articulated in *Blanch* because: (1) they "have a different character, give Cariou's photographs a new expression, and employ new aesthetics with creative and communicative results distinct from Cariou's," and (2) there was "no evidence that Prince's work ever touched—much less usurped" the market for Cariou's work. *Id.* at 708.

This lawsuit involves a single work, *Untitled (Portrait)* (2014) ("*Untitled*"), out of thirty-seven artworks in Prince's recent *New Portraits* exhibition. *Untitled* depicts a screenshot of a post on the social media website Instagram by user "rastajay92." Rastajay92 had posted, without permission, a copy of Graham's photograph *Rastafarian Smoking A Joint*, which had originally been posted, presumably also without his permission, by another Instagram user, "indigoochild." Prince enlarged the screenshot, preserved the Instagram visuals and text—such as the Instagram poster's username, the time stamp, the number of "likes" the post had received, and user comments—and added his own username and comment to the bottom of the artwork.

This lawsuit reflects an attempt to essentially re-litigate *Cariou* and should be dismissed with prejudice. Under *Cariou*, Prince's artwork makes fair use of Graham's photograph as a matter of law. *First*, a reasonable observer would recognize that Prince's artwork adds "'new

expression, meaning, or message'" to Graham's photograph. *Cariou*, 714 F.3d at 706 (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 579 (1994)). By his own description, Graham's photograph depicts "a somber black and white portrait" that conveys the "spirit and gravitas" of its Rastafarian subject. Compl. ¶¶ 3, 17. By contrast, Prince's work uses that image *as it has been incorporated within a social media post*, making it clear to any reasonable observer that the focus of the artwork is no longer on the photograph itself, but on the fact that it has been used in a social media post. This key difference, reflected in the addition of Instagram visuals and text surrounding the photograph, conveys a message sharply different from Graham's: a commentary on the power of social media to broadly disseminate others' work, or as a condemnation of the vanity of social media, its pervasiveness and sexualized nature, and people's need to receive "likes" and "comments."

*Second*, the Second Circuit has recognized that the nature of the copyrighted work is "'of limited usefulness where,' as here, 'the creative work of art is being used for a transformative purpose.'" *Cariou*, 714 F.3d at 710 (quoting *Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006)).

*Third*, the amount and substantiality of the use of Graham's work is reasonable in relation to Prince's transformative purpose. No courts "'have ever concluded that'" copying an entire work "'weighs against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image.'" *Cariou*, 714 F.3d at 710 (quoting *Bill Graham*, 448 F.3d at 613). As the Supreme Court has explained, a secondary user "must" be permitted "to 'conjure up' at least enough of the original" work to accomplish his transformative purpose. *Campbell*, 510 U.S. at 588. In using and commenting on *the post*, Prince's artwork may have captured "key portions" of Graham's work, but it was reasonable and necessary for Prince to use the same amount of

Graham's work as had originally appeared on Instagram to transform it into something "new and different." *Cariou*, 714 F.3d at 710.

*Fourth*, Graham never once suggests that Prince's artwork usurps the market for his original photograph or potential derivatives. *See* Compl. ¶¶ 19–20. This concession alone warrants dismissal on the face of the complaint. Graham explicitly admits that he has never licensed or otherwise made his photographs "available for any commercial purpose other than for sale to fine art collectors" and "exclusively as a fine art print." Compl. ¶ 20. As the Second Circuit explained, "potential derivative uses include only those that creators of original works would in general develop or license others to develop." *Cariou*, 714 F.3d at 708–09.

*Lastly*, even assuming Graham could make out a claim for infringement (which he cannot), as a matter of law his damages cannot exceed the profits Defendants earned on the sale of *Untitled*. Pursuant to 17 U.S.C. § 504(b), a copyright holder may recover "actual damages" and "profits" due to the infringement that are not already covered by actual damages. *On Davis v. The Gap, Inc.* makes plain that the "profits" awarded under § 504(b) are limited to those earned from the sale of infringing works and do not include earnings from the sale of non-infringing works. 246 F.3d 152, 159–61 (2d Cir. 2001). In addition, Graham does not seek "actual damages," but even if he did, he would be limited to a reasonable license fee. The complaint does not plead facts sufficient to indicate the fair market value of such a fee. In any event, any plausible license would necessarily overlap the damages recovered from Defendants' profits and thus would not be recoverable. *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 358 (S.D.N.Y. 2003). Finally, under 17 U.S.C. § 412, Graham may not recover statutory damages and attorney's fees because these recoveries are unavailable "for any infringement 'commenced' before the effective date of a copyright's registration," even if the alleged

4

infringement "is part of an ongoing series of infringing acts." *Troll Co. v. Uneeda Doll Co.*, 483 F.3d 150, 158 (2d Cir. 2007). The *New Portraits* exhibition commenced on September 19, 2014, over a month before the October 20, 2014 effective date of Graham's copyright registration. Compl. ¶¶ 17, 25, ex. C. Thus, statutory damages and attorney's fees are precluded.

## BACKGROUND

**A.      Background on Appropriation Art and Richard Prince**

Richard Prince is a well-known appropriation artist. *Cariou*, 714 F.3d at 699. "Appropriation art" is "'the more or less direct taking over into a work of art a real object or even an existing work of art.'" *Id.* (quoting the Tate Gallery). Examples include Andy Warhol's *Gold Marilyn Monroe* (1962), which is an iconic photograph of Marilyn Monroe silkscreened onto a gold background; Robert Rauschenberg's *Retroactive I* (1964), which is a popular photograph of John F. Kennedy silkscreened next to an image of a parachuting astronaut; and Pablo Picasso's *Bottle of Vieux Marc, Glass, Guitar and Newspaper* (1913), which is a collage of newspaper clippings and other images. Below are images of each work:




Andy Warhol, *Gold Marilyn Monroe* (1962)      Robert Rauschenberg, *Retroactive I* (1964)



Pablo Picasso, *Bottle of Vieux Marc, Glass, Guitar and Newspaper* (1913)

Examples of more contemporary appropriation artists include Sherrie Levine, Richard Pettibone, John Baldessari, Barbara Kruger, Elaine Sturtevant, Gavin Turk, and Jeff Koons.

As recognized by the Second Circuit, Prince has become "a leading exponent of this genre." *Cariou*, 714 F.3d at 699. His work, going back to the mid-1970s, "has involved taking photographs and other images that others have produced and incorporating them into paintings and collages that he then presents, in a different context, as his own." *Id.* For example, Prince's first appropriations comprised a quartet of advertising images from *The New York Times Magazine* displaying elaborately decorated living rooms. In another early series, Prince re-photographed and collaged images of male and female models. These works commented on the way companies sold products by appealing to cultural stereotypes. Below are images of these works:

6



Prince, *Untitled (Living Rooms)* (1977)          Prince, *Untitled (Four Single Men)* (1977)

Prince continues this tradition today. His work has been displayed "in museums around the world, including New York's Solomon R. Guggenheim Museum and Whitney Museum, San Francisco's Museum of Modern Art, Rotterdam's Museum Boijmans van Beuningen, and Basel's Museum fur Gegenwartskunst." *Cariou*, 714 F.3d at 699.

**B.    The *Cariou v. Prince* Decision**

In 2007 and 2008, Prince made a series of thirty paintings and collages, entitled *Canal Zone*, in which he altered and incorporated "classical portraits and landscape photographs" from *Yes Rasta*, a book by French photographer Patrick Cariou. *Id.* at 698. Prince copied, enlarged, and altered the photographs, painting on them and incorporating them along with erotic images and other appropriated photographs into "crude and jarring" collages depicting a bizarre "post-apocalyptic screenplay." *Id.* at 706–07. An example of the *Canal Zone* artworks is shown below:



Richard Prince, *Back to the Garden* (2008)

Prince exhibited and sold several of the paintings at New York's Gagosian Gallery, and Gagosian published and sold an exhibition catalog that contained reproductions of Prince's paintings. *Id.* at 698. Cariou brought suit in the Southern District (Batts, *J.*) against the same defendants named in this action, alleging copyright infringement. On cross-motions for summary judgment, the District Court granted Cariou's motion on his copyright infringement claim, denied Defendants' cross-motion on the defense of fair use, and entered a permanent injunction.

The Second Circuit reversed, holding that the District Court's fair use standard incorrectly required that Prince's artworks "comment on, relate to the historical context of, or critically refer back to the original works." *Id.* at 706 (internal quotation marks omitted). As the Second Circuit explained, "[t]he law imposes no requirement that a work comment on the original or its author in order to be considered transformative." *Id.* Instead, "to qualify as a fair use, a new work generally must alter the original with 'new expression, meaning, or message.'"

8

*Id.* (quoting *Campbell*, 510 U.S. at 579). In making this determination, "[w]hat is critical is how the work in question appears to the reasonable observer," and thus the "focus" of the infringement analysis "is primarily on the Prince artworks themselves." *Id.* at 707.

Applying the correct standard, the Second Circuit held that twenty-five of the thirty *Canal Zone* paintings make fair use of Cariou's photographs as a matter of law. The Court examined the works "'side-by-side'" and held that the paintings "may reasonably be perceived" as "transformative as a matter of law." *Id.* at 707. The Second Circuit found that Prince's artworks "have a different character, give Cariou's photographs a new expression, and employ new aesthetics with creative and communicative results distinct from Cariou's." *Id.* at 707–08. It also concluded that there was "no evidence that Prince's work ever touched—much less usurped—either the primary or derivative market for Cariou's work," and there was "nothing in the record to suggest that Cariou would ever develop or license secondary uses of his work in the vein of Prince's artworks." *Id.* at 709.

As to the remaining five paintings, the Second Circuit remanded to the District Court to "apply[] the proper standard" in the first instance. *Id.* at 699. The Supreme Court denied Cariou's petition for a writ of certiorari, 134 S. Ct. 618, and the parties subsequently settled.

**C.    The *New Portraits* Exhibition**

In 2014, at the Gagosian Gallery in New York, Prince launched his *New Portraits* exhibition, consisting of thirty-seven inkjet prints on canvas depicting "screen saves" of posts on the social media website Instagram. Compl. ¶ 25. Prince enlarged the screen saves to 4 ft. 3/4 in. by 5 ft. 5 3/4 in., *id.*, and preserved the visuals and text of the Instagram user interface, such as the Instagram poster's username, the time stamp, the number of "likes" the post has received, and user comments, *see id.* ex. B. In addition, Prince added to the bottom of each artwork his own comments. *Id.* ¶¶ 27–28. Images of the *New Portraits* exhibition are shown below:



Richard Prince, *New Portraits* (2014)



Richard Prince, *New Portraits* (2014)

One of the artworks, *Untitled*, depicts a screen save in which Instagram user "rastajay92" had posted a copy of Graham's photograph *Rastafarian Smoking A Joint* without Graham's permission and added the comment "Real Bongo Nyah man a real Congo Nyah," as well as an "emoji." *Id.* ¶¶ 4, 26, 27, ex. B. The top and bottom of the photograph were cropped. *Id.* ¶ 26. The Instagram user also indicated that the post was in fact a "repost" of the photograph by

another Instagram user, "indigoochild," who presumably also did not have Graham's permission. *Id.* ex. B. Prince added to the bottom of the artwork his own Instagram username, "richardprince4," and the comment "Canal Zinian da lam jam," as well as an emoji of his own. Images of Graham's *Rastafarian Smoking A Joint* and Prince's *Untitled* are shown below:

 

Graham, *Rastafarian Smoking a Joint* (1997)          Prince, *Untitled (Portrait)* (2014)

Prince eventually sold *Untitled* to Larry Gagosian. *Id.* ¶ 30. Images of the works also appeared in a catalog and advertisements for the exhibition. *Id.* ¶¶ 6, 32, 34–35.

In December 2015, Graham filed the instant complaint alleging copyright infringement. *Id.* ¶¶ 1–3. Tellingly, the complaint does not name as defendants either of the two users who originally posted the photograph on Instagram. Furthermore, although the complaint alleges that Graham "now sells prints" of the photograph, it does not allege or even suggest that he has ever been unable to do so as a result of *Untitled*. *See id.* ¶¶ 19–20. In fact, Graham concedes he has

11

"never licensed" his photograph nor "made it available for any commercial purpose other than for sale to fine art collectors" and, in those cases, "exclusively as a fine art print." *Id.* ¶ 20.

As shown below, among other reasons, these admissions are fatal to Graham's complaint.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

Fair use is an affirmative defense, *see Campbell,* 510 U.S. at 590, and a mixed question of law and fact, *see Cariou*, 714 F.3d at 704. Courts may dispose of copyright infringement claims at the motion-to-dismiss stage on the basis of fair use where, as here, "the defense appears on the face of the complaint." *Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 74 (2d Cir. 1998).[1] Fair use may be apparent from viewing the works at issue "'side-by-side,'" in which case "'the only two pieces of evidence needed to decide the question of fair use'" are "'the original version'" and the secondary work. *Cariou*, 714 F.3d at 707 (quoting *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 692 (7th Cir. 2012)). As the Second Circuit has explained, "[w]hat is critical is how the work in question appears to the reasonable observer." *Id.* Thus, the "focus" of the infringement analysis is on the "artworks themselves." *Id.*[2]

---

[1] *See, e.g.*, *TCA Television Corp. v. McCollum*, No. 15 Civ. 4325, 2015 WL 9255341, at *12 (S.D.N.Y. Dec. 17, 2015) (granting motion to dismiss on basis of fair use defense); *Scott v. WorldStarHipHop, Inc.*, No. 10 Civ. 9538, 2011 WL 5082410, at *8 (S.D.N.Y. Oct. 25, 2011) (granting motion to dismiss because "the defense of fair use appears on the face of plaintiff's Amended Complaint").

[2] Alternatively, the Court may convert Defendants' motion into a motion for summary judgment pursuant to Rule 12(d), in which case Defendants are entitled to summary judgment for

## ARGUMENT

Section 107 of the Copyright Act of 1976 lists four nonexclusive factors that courts must consider in determining "whether the use made of a work in any particular case is fair use":

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. In weighing these factors, "[t]he task is not to be simplified with bright-line rules, for the statute, like the doctrine it recognizes, calls for case-by-case analysis." *Campbell*, 510 U.S. at 577; *see Cariou*, 714 F.3d at 705. Courts are "to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Campbell*, 510 U.S. at 577 (internal quotation marks omitted). All four statutory factors "are to be explored, and the results weighed together, in light of the purposes of copyright. *Id.* at 578. That purpose, according to the Supreme Court, is "'[t]o promote the Progress of Science and useful Arts.'" *Id.* at 575 (quoting U.S. Const., art. I, § 8, cl. 8).

## I.   PRINCE'S ARTWORK IS FAIR USE.

### A.   The Purpose-And-Character Factor Weighs In Favor Of Prince Because His Artwork Is Transformative.

The first statutory factor—the purpose and character of the use—is the "heart of the fair use inquiry." *Cariou*, 714 F.3d at 705 (internal quotation marks omitted). Courts must look to whether the use "'adds something new, with a further purpose or different character, altering the

---

the same reasons set forth herein. *See, e.g.*, *Brownmark Films*, 682 F.3d at 692; *Newton v. Penguin/Berkley Pub. USA*, No. 13 Civ. 1283, 2014 WL 61232, at *7 (S.D.N.Y. Jan. 6, 2014).

first with new expression, meaning or message.'" *Id.* (quoting *Campbell*, 510 U.S. at 579). Where the new work "'adds value to the original'" or the original work is "'used as raw materials, transformed in the creation of new information, new aesthetics, new insights and understandings—this is the very type of activity that the fair use doctrine intends to protect for the enrichment of society.'" *Id.* at 706 (quoting *Castle Rock Entm't, Inc. v. Carol Pub. Group, Inc.*, 150 F.3d 132, 142 (2d Cir. 1998)). In other words, courts consider "'whether and to what extent the new work is transformative.'" *Id.* at 705–06. In doing so, courts must "examine how the artworks may 'reasonably be perceived.'" *Id.* at 707 (quoting *Campbell*, 510 U.S. at 582).

### 1. Prince's Artwork Is Transformative.

A reasonable observer would perceive Prince's artwork as transformative because it conveys "'new expression, meaning, or message'" fundamentally different from that conveyed by Graham's photograph. *Id.* at 707. This transformation is apparent from a "'side-by-side'" comparison of the two works and weighs heavily in favor of a finding of fair use. *Id.*

Aesthetically, the two works are visually distinct. While Graham's photograph depicts only the Rastafarian subject, Prince's work is, in fact, a screenshot of an Instagram post, which reposts yet another Instagram post. Compl. ¶ 27. In Prince's work, the Rastafarian's image is surrounded by additional graphic and text elements depicting the Instagram website interface, such as the poster's username, the number of "likes" the post received, the post's time stamp, and user comments, including Prince's own comment. *See* Compl. ex. B. Moreover, while Graham's work was captured on black-and-white film and is available only as a print, Prince's work is a computer screenshot displayed on canvas. *See* Compl. ¶¶ 19–20, 25; *Cariou*, 714 F.3d at 706 (noting differences in composition and medium between Prince's and Cariou's works).

The key aesthetic differences in Prince's work convey new expression and meaning sharply different from that conveyed by Graham's photograph. Where Graham's photograph

conveys "a somber black and white portrait," Compl. ¶ 3, Prince's artwork is a screenshot of a popular social media website interlaced with user comments and "likes" that have become iconic elements of the modern internet. Where Graham's photograph "capture[s] the sprit and gravitas of the Rastafarian people," Compl. ¶ 17, Prince's artwork conveys a wholly different context of a modern online social media platform.

In this way, a reasonable observer would recognize that Prince uses Graham's photograph as "'raw material'" in the creation of a new work that may reasonably be perceived as a "commentary on the social and aesthetic consequences of mass media." *Blanch*, 467 F.3d at 253 (quoting *Castle Rock*, 150 F.3d at 142). *Blanch* held that an artwork by appropriation artist Jeff Koons made fair use of copyrighted advertising images of women's legs, which he juxtaposed against a backdrop of food and landscape. *Id.* at 247. The Second Circuit held that Koons used the images as "raw material" or "fodder" for his commentary "on the ways in which some of our most basic appetites—for food, play, and sex—are mediated by popular images." *Id.* (internal quotation marks omitted). Because Koons' artwork did not merely "repackage" the images, but instead employed them "in the creation of new information, new aesthetics, new insights and understandings," *Blanch* held it made fair use of them. *Id.* at 253.

Likewise here, a reasonable observer would recognize that Prince's artwork uses Graham's photograph as "raw material" in his commentary on social media. In contrast to the gravitas of Graham's photograph, Compl. ¶ 17, Prince's work uses that image *as it has been incorporated within a social media post*, making it clear to any reasonable observer that the focus of the artwork is no longer on the photograph itself, but its use in a social media post. Prince's artwork explicitly indicates that Instagram user "rastajay92" has reposted—*i.e.*, appropriated—the image from "indigoochild" (who presumably also posted it to Instagram

15

without Graham's permission). Therefore, Prince's work conveys new and divergent meanings to the observer. For example, Prince's artwork may reasonably be perceived as a commentary on the power of social media to broadly disseminate others' work. It can also be seen as conveying the message that social media is beneficial because it generates discussion of art—as demonstrated by Prince's comment on the "post" likening the Rastafarian's image to the *Canal Zone* paintings. Likewise, it can even be seen as a condemnation of the vanity of social media, its pervasiveness and sexualized nature, and people's need to receive "likes" and "comments" in the pursuit of online status. *See Blanch*, 467 F.3d at 253. Of course, the Court need not exercise its own artistic judgment in making this determination, *see Blanch*, 467 F.3d at 255; it need only ask how the artworks "may 'reasonably be perceived,'" *Cariou*, 714 F.3d at 707 (quoting *Campbell*, 510 U.S. at 582). On this score, it bears noting that reasonable observers in the media have perceived the *New Portraits* artworks as transformative.[3]

---

[3] *See, e.g.*, Christopher Sprigman, *Richard Prince, Instagram, and Authorship in a Digital World*, Bloomberg Business, June 17, 2015, www.bloomberg.com/news/articles/2015-06-17/richard-prince-instagram-and-authorship-in-a-digital-world ("Prince took those images and turned them into art—a much deeper sort of transformation than what was established in the Cariou case."); Paul Black, *Richard Prince: New Portraits-Gagosian Gallery-The Great Baudrillardian Joke*, Artlyst, June 18, 2015, www.artlyst.com/articles/richard-prince-new-portraits-gagosian-gallery-the-great-baudrillardian-joke ("In doing so Prince destroys the original associations of the image; the emptiness of the subjective social media selfie . . . becomes even more detached from its initial reality and identity."); Christopher Buccafusco, *Appropriation art meets Instagram: Is copyright law ready?*, MSNBC, May 26, 2015, www.msnbc.com/msnbc/appropriation-art-meets-instagram-copyright-law-ready ("Perhaps he is commenting on the photos themselves through his new 'comments.' Or perhaps he is using them to express something about modern society."); Peter Schjeldahl, *Richard Prince's Instagrams*, The New Yorker, Sept. 30, 2014, www.newyorker.com/culture/culture-desk/richard-princes-instagrams ("Is it art? Of course it's art, though by a well-worn Warholian formula . . . . You needn't visit the show to absorb its lessons about the contagion of social networks."); Jerry Saltz, *Richard Prince's Instagram Paintings Are Genius Trolling*, Vulture, Sept. 23, 2014, www.vulture.com/2014/09/richard-prince-instagram-pervert-troll-genius.html ("Here he is delving as deep as he ever has into privacy, copyright, and appropriation, twisting images so that they actually seem to undergo some sort of sick psychic-artistic transubstantiation where they no longer belong to the original makers."). The Court may take judicial notice of the *fact* that public

In light of the different character, aesthetics, context, medium, and approach of Prince's artwork, a reasonable observer would see that it transforms Graham's original photograph with new expression, meaning, and message. *Cariou*, 714 F.3d at 705. As with the *Cariou* works, Prince "has not presented the same material" as Graham "in a different manner, but instead has 'added something new' and presented images with a fundamentally different aesthetic." *Id.* at 708 (quoting *Leibovitz v. Paramount Pictures Corp.*, 137 F.3d 109, 114 (2d Cir. 1998)). Thus, as in *Cariou*, this factor of the fair use analysis weighs in favor of Prince as a matter of law.

### 2. Commerciality Is Of Limited Weight Because Prince's Artwork Is Transformative.

The first fair use factor also looks to "whether the allegedly infringing work has a commercial or nonprofit educational purpose." *Id.* However, the Second Circuit has "repeatedly rejected the contention that commercial motivation should outweigh a convincing transformative purpose and absence of significant substitutive competition with the original." *Authors Guild v. Google, Inc.*, 804 F.3d 202, 219 (2d Cir. 2015).[4] Thus, "the more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Cariou*, 714 F.3d at 708 (quoting *Campbell*, 510 U.S. at 579).

Because Prince's work is highly transformative, this Court should "not place much significance on" the work's commercial nature. *Id.* The "commercial/nonprofit dichotomy concerns the unfairness that arises when a secondary user makes unauthorized use of copyrighted material to capture significant revenues as a direct consequence of copying the original work."

---

media reports contain these statements. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cir. 2008). For convenience, copies of these articles are attached to the Declaration of Joshua I. Schiller, dated February 26, 2016.

[4] As the *Cariou* court explained, "'nearly all of the illustrative uses in the preamble paragraph § 107, including news reporting, comment, criticism, teaching, scholarship, and research are generally conducted for profit.'" *Id.* (quoting *Campbell*, 510 U.S. at 584).

*Am. Geophysical Union v. Texaco, Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). In this case, the novel aesthetics, message, and meaning added by Prince demonstrate that his success is not unfairly derived, but is instead a product of his own creative endeavors. *See Blanch*, 467 F.3d at 254 ("[S]ince the new work is substantially transformative, the significant of other factors including commercialism, are of less significance." (internal quotation marks omitted)).

Moreover, "courts are more willing to find a secondary use fair when it produces a value that benefits the broader public interest." *Am. Geophysical Union*, 60 F.3d at 913. The Second Circuit also has explained that "the public exhibition of art" is "widely" and "properly considered to have value that benefits the broader public interest." *Blanch*, 467 F.3d at 254 (internal quotation marks omitted). In the instant case, Prince's work was publicly displayed at Gagosian Gallery for the duration of the exhibit. "It can hardly be said," therefore, that Prince's gains came at the "exclusion of broader public benefits"—all the more reason for this Court to place little significance on the commercial nature of *Untitled*. *Id.*

**B.     The Nature-Of-The-Work Factor Is Of "Limited Usefulness" Because Prince's Artwork Is Transformative.**

The second fair use factor looks to "the nature of the copyrighted work." 17 U.S.C. § 107(2). This factor is "'of limited usefulness where,' as here, 'the creative work of art is being used for a transformative purpose.'" *Cariou*, 714 F.3d at 710 (quoting *Bill Graham*, 448 F.3d at 612); *Blanch*, 467 F.3d at 257. Given the foregoing discussion of how Prince introduces new aesthetics, meanings, and messages in his artwork, its transformative nature means that the second fair use factor, in this case, is of limited weight in the final fair use analysis.

**C.     The Amount-And-Substantiality Factor Weighs In Favor Of Prince Because His Use Is Reasonable In Light Of His Purpose.**

The third fair use factor examines "the amount and substantiality of the portion used in relation to the copyrighted work as a whole." 17 U.S.C. § 107(3). Courts must ask "'whether the

quantity and value of the materials used are reasonable in relation to the purpose of the copying.'" *Cariou*, 714 F.3d at 710 (quoting *Blanch*, 467 F.3d at 257). But no courts "'have ever concluded that'" copying an entire work "'weighs against fair use because copying the entirety of a work is sometimes necessary to make a fair use of the image.'" *Id.* (quoting *Bill Graham*, 448 F.3d at 613). Rather, a secondary user "must" be permitted "to 'conjure up' at least enough of the original" work to accomplish his transformative purpose. *Campbell*, 510 U.S. at 588.

In this case, the amount and substantiality of Prince's use is reasonable in relation to his work's transformative purpose. It was necessary for Prince to take a screenshot of rastajay92's post to "conjure up" the image of the Instagram social media post. *Id.* Rastajay92's post, in turn, copied the majority of Graham's photograph, with the top and bottom cropped. Compl. ¶ 26. In commenting on *the post*, it was reasonable and necessary for Prince to use the same amount of Graham's work as was presented on social media. That Prince may have captured the "key portions" of Graham's photograph is beside the point: The transformative purpose of his work could not exist without *at least* that amount of Graham's photograph as had originally appeared on Instagram. *Cariou*, 714 F.3d at 710 (noting Prince used "key portions of certain of Cariou's photographs" and "transformed those photographs into something new and different"). It bears remembering that, with the exception of the comment Prince added at the bottom, the textual and graphic elements in Prince's *Untitled* do appear on the actual Instagram post by rastajay92.

Given the foregoing analysis of how Prince transformed Graham's photograph "into something new and different," this factor "weighs heavily in Prince's favor." *Id.*

### D.     The Market-Effect Factor Favors Prince As His Artwork Is Transformative And Fills A Market Niche That Graham Has No Interest In Occupying.

The fourth fair use factor looks to "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor "is concerned with only one type

of economic injury to a copyright holder: the harm that results because the secondary use serves as a substitute for the original." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 99 (2d Cir. 2014). Thus, courts are not concerned with whether "'the secondary use suppresses or even destroys the market for the original work or its potential derivatives, but whether the secondary use *usurps* the market for the original work.'" *Cariou*, 714 F.3d at 708 (quoting *Blanch*, 567 F.3d at 258). Market usurpation occurs most often "where the infringer's target audience and the nature of the infringing content is the same as the original." *Id*. Generally, then, "the more transformative the secondary use," the less likely it is "that the secondary use substitutes for the original." *Castle Rock*, 150 F.3d at 145.

Here, Graham's complaint essentially concedes that Prince's artwork does not usurp the market for his original photograph or potential derivatives. Although Graham alleges he "now sells prints" of the photograph, he never once suggests that Prince's artwork has impeded these sales. *See* Compl. ¶¶ 19–20. Indeed, Graham's apparent decision to take no action against the Instagram users who first posted his photograph—to say nothing of Graham's decision to make a high-resolution version of the photograph available as a free download from his portfolio website—speak volumes about the *lack* of usurpation and market effect. *See id.* ¶ 21.

Moreover, Graham's allegations indicate that he would *never* make or license a work such as *Untitled*, explaining that he has never licensed the photograph at issue or made it "available for any commercial purpose other than for sale to fine art collectors" and "exclusively as a fine art print." Compl. ¶ 20. As the Second Circuit explained, "potential derivative uses includes only those that creators of original works would in general develop or license others to develop." *Cariou*, 714 F.3d at 708–09. Accordingly, there is no evidence or allegation in

Graham's complaint that Prince's work usurps the market for some derivative use—actual or potential—of Graham's work.

Indeed, it is evident from a side-by-side comparison that Prince's transformative artwork serves a market niche that Graham has no interest in occupying. Graham's work, by his own description, is a "somber black and white portrait" capturing "the spirit and gravitas of the Rastafarian people." Compl. ¶¶ 3, 17. Prince's work, while featuring the Rastafarian's image, contains numerous other visual and text elements specifically designed to invoke the image of a social media posting. No consumer seeking a fine art print of Donald Graham's photograph would be tempted to accept Richard Prince's *Untitled* as a substitute. Prince's work does not—and cannot—usurp the market for Graham's photograph. *See Google, Inc.*, 804 F.3d at 223–25 (holding that Google's creation of a "complete digital copy" of copyrighted books for use in the Google Books feature did not usurp the books' respective markets and was fair use).

*     *     *

Taken together, the fair use factors support a finding that Prince's use of Graham's original photograph was transformative, fair, and not infringing. Prince used the photograph as "raw material" in the creation of a novel work that, in a side-by-side comparison, presents new aesthetics, message, and meaning to an ordinary observer. In so doing, Prince used as much of the work as was necessary to accomplish this transformative purpose—*i.e.*, the same amount that actually appeared on Instagram in the user's original post. And while Graham's work is undoubtedly artistic in nature, Prince's transformative use of the photograph ensured that his new work would not serve as a substitute for Graham's artistic photography.

21

## II.     GRAHAM'S DAMAGES SHOULD BE LIMITED AS A MATTER OF LAW TO ANY PROFITS OBTAINED FROM THE SALE OF *UNTITLED*.

The artwork at issue here constitutes fair use as a matter of law, and Graham's complaint should be dismissed with prejudice. Barring this, the Court should at a minimum clarify the legal bounds of Graham's possible damage award by: (i) ruling as a matter of law that Mr. Graham's allegations cannot support a claim to damages beyond Defendants' profit on the sale of *Untitled*; and (ii) dismissing Graham's claims to statutory damages and attorney's fees. Graham's complaint includes expansive requests for relief that include statutory damages, attorney's fees, and "other advantages" outside of profits derived from the purported infringement (Compl. 17)—claims that will no doubt translate to fishing expeditions during discovery or damage calculations that are "too extravagant to be maintained." *Baker*, 254 F. Supp. 2d at 358 (quoting *Marbury v. Madison*, 5 U.S. 137, 179 (1803)). The Court should help manage expectations in terms of discovery and the upper bounds of potential recovery by making the foregoing rulings.

Section 504(b) of the Copyright Act entitles a copyright holder to recover "the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b). The only allegation that connects Defendants' purported profits with the alleged infringement is the complaint's reference to the sale of *Untitled*. Compl. ¶ 30. Graham seems to recognize that any profits he may claim are limited to those obtained from the sale of *Untitled*: in his February 12, 2015 cease-and-desist letter, he specifically requests Defendants deliver "all compensation Mr. Prince or Gagosian Gallery had received from each and every *sale* of any and all *works that contained the Copyrighted Work*." Compl. ¶ 33(f) (emphasis added).

Even if Graham's complaint could be construed as seeking profits outside of those earned from the sale of *Untitled*, such a claim would fail as a matter of law. Graham vaguely alleges that "[b]y encouraging and allowing Mr. Prince to publicly display, offer for sale and sell the Infringing Work" Gagosian "benefitted financially from the publicity and notoriety it received resulting from the Exhibition, as well as the resulting sale of the works displayed therein (in addition to other of Mr. Prince's works)." Compl. ¶¶ 49, 55. To the extent these allegations are meant to support a claim for profits *other than* those due to the sale of *Untitled* (and it is not clear that they are), such a claim is foreclosed by the Second Circuit's decision in *On Davis v. The Gap, Inc.*, 246 F.3d 152.[5] *On Davis* makes clear that profits under § 504(b) "should not be construed so broadly as to include revenue from lines of business that were unrelated to the act of infringement." *Id.* at 160. As it explains in one analogy:

> [I]f a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles, including trade books, textbooks, cookbooks, etc. In our view, the owner's burden would require evidence of the revenues realized from the sale of the anthology *containing the infringing poem*.

*Id.* (emphasis added); *see also, e.g.*, *Baker*, 254 F. Supp. 2d at 359 (limiting plaintiff's potential recovery to profits from sales of picture frames containing allegedly infringing paper insert). Similarly here, Graham cannot show a causal connection between the alleged infringement and

---

[5] If Graham is attempting such an allegation, the conclusory statements in the complaint are "'naked assertions' devoid of 'further factual enhancement'" and thus fail to satisfy the requirements of Fed. R. Civ. P. 8(a)(2). *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Such statements fail because they are "legal conclusion[s] couched as . . . factual allegation[s]." *Id.* at 678–79 (quoting *Twombly*, 550 U.S. at 555). Furthermore, the bald suggestion that the alleged infringement in *Untitled* somehow earned Defendants profits on *other works* both in the Exhibition *and beyond* does not "permit the court to infer more than a possibility of misconduct," and therefore it fails the plausibility requirement. *Id.* at 679.

any profits Defendants may have earned from works that did not contain Graham's work. *See On Davis*, 246 F.3d at 159–61.

Nor does Graham seek an award for actual damages in his Prayer for Relief, and the complaint is devoid of allegations that would support an actual damages award. *See* Compl. 16–17. In fact, the opposite is true: the complaint affirmatively states that "Mr. Graham has never licensed the Copyrighted Photograph or made it available for any commercial purpose other than for sale . . . exclusively as a fine art print." Compl. ¶ 20. This allegation indicates that Graham lacks the evidence of fair market value which would be necessary to award damages based on a reasonable license fee. *See, e.g.*, *Antenna Television v. Aegean Video Inc.*, No. 95-CV-2328 ERK, 1996 WL 298252, at *5 (E.D.N.Y. Apr. 23, 1996) (declining to award actual damages based on lost licensing fees because they "would be speculative" given the lack of evidence showing the market value of those fees). Even assuming Graham could state a claim for a reasonable licensing fee, "the amount a plaintiff receives as a license fee for allowing a defendant to make the infringing sales necessarily overlaps with the profits the defendant receives from those same infringing sales," and § 504(b) prevents plaintiff from obtaining a "double recovery" to the extent of this overlap. *Baker*, 254 F. Supp. 2d at 358; *see also Hamil Am., Inc. v. GFI, Inc.*, 193 F.3d 92, 108 n.7 (2d Cir. 1999) (barring recovery of lost profits that overlapped defendant's profits). Because any reasonable license for the use of Mr. Graham's work in *Untitled* would necessarily be less than the profits garnered from the sale of the work, any award to Mr. Graham under § 504(b) still could not exceed the profits Defendants made on the sale of *Untitled*.

Finally, Mr. Graham asserts claims to statutory damages and attorney's fees. Compl. 17. But the Copyright Act precludes statutory damages and attorney's fees where "any infringement

24

of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work." 17 U.S.C. § 412(2). Thus, such recovery is barred "for infringement occurring after registration if that infringement is part of an ongoing series of infringing acts and the first act occurred before registration." *Troll Co.*, 483 F.3d at 158. Courts in this Circuit have routinely applied this rule even where plaintiffs have attempted to characterize events "as two separate infringements, rather than merely a 'series of ongoing discrete infringements.'" *Shady Records, Inc. v. Source Enterprises, Inc.*, No. 03 Civ. 9944, 2005 WL 14920, at *20 (S.D.N.Y. Jan. 3, 2005); *see also Fournier v. Erickson*, 202 F. Supp. 2d 290, 298 (S.D.N.Y. 2002); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F. Supp. 728, 736 (S.D.N.Y. 1996).

Here, Graham's requests for statutory damages and attorney's fees are precluded because the *New Portraits* exhibition commenced on September 19, 2014, well before the October 20, 2014 effective date of Graham's copyright registration. Compl. ¶¶ 17, 25, ex. C. Furthermore, the sale of the work occurred "prior to the conclusion of the Exhibition," Compl. ¶ 30; in any event, the sale, along with any advertising and promotional materials, was part of a "single, unified advertising campaign" inextricably intertwined with the exhibition, *Fournier*, 202 F. Supp. at 298. Accordingly, Mr. Graham's requests for statutory damages and attorney's fees must be dismissed. *See Ez-Tixz*, 919 F. Supp. at 736 (granting motion to dismiss statutory damages and attorney's fees on same grounds).

Accordingly, the Court should (i) rule as a matter of law that Mr. Graham's allegations cannot support a claim to damages beyond Defendants' profit on the sale of *Untitled*; and (ii) dismiss Mr. Graham's claims to statutory damages and attorney's fees.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be granted.

Dated:  New York, New York
          February 26, 2016


Respectfully submitted,


/s/ Matthew S. Dontzin
Matthew S. Dontzin
Tibor L. Nagy
Tracy O. Appleton
DONTZIN NAGY & FLEISSIG LLP
980 Madison Avenue
New York, New York 10075
Tel: (212) 717-2900
Fax: (212) 717-8088
mdontzin@dnfllp.com
tibor@dnfllp.com
tappleton@dnfllp.com


*Attorneys for Defendants Gagosian Gallery, Inc., and Lawrence Gagosian*


/s/ Joshua I. Schiller
Joshua I. Schiller
Matthew L. Schwartz
Frederick J. Lee
Benjamin Margulis
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, NY 10022
Tel: (212) 446-2300
Fax: (212) 446-2350
jischiller@bsfllp.com
mlschwartz@bsfllp.com
flee@bsfllp.com
bmargulis@bsfllp.com


*Attorneys for Defendant Richard Prince*