**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

DONALD GRAHAM,

                  Plaintiff,

    vs.

RICHARD PRINCE, GAGOSIAN
GALLERY, INC. and LAWRENCE
GAGOSIAN,

                Defendants.

**Case No. 1:15-cv-10160 (SHS)**

**DEFENDANTS GAGOSIAN GALLERY, INC. AND LAURENCE GAGOSIAN'S**
**MEMORANDUM OF LAW IN SUPPORT OF**
**MOTION FOR PARTIAL SUMMARY JUDGMENT**

**CONFIDENTIAL**
**REDACTED COPY**

**Table of Contents**

I.     INTRODUCTION ........................................................................................... 1

II.    STATEMENT OF FACTS ............................................................................ 3

    A.     Defendants and their Market Positions .................................................3

    B.     Plaintiff and his Market .........................................................................4

    C.     The New Portraits Series and the Exhibition at Gagosian Gallery.........5

    D.     The Lack of Advance Promotion or Advertising....................................5

    E.     All Exhibition Works Were Sold Prior to the Exhibition Opening .........6

    F.     The Exhibition Opens ............................................................................7

    G.     Other New Portraits Works Not in Exhibition........................................9

    H.     Mr. Gagosian Never Displayed the Rastajay Work After the Exhibition, and He Has Neither Appraised It nor Considered Offering It for Sale .......11

    I.     Plaintiff's Damages Expert ..................................................................11

III.   SUMMARY JUDGMENT STANDARD ..................................................... 13

IV.    ARGUMENT............................................................................................... 14

    A.     Plaintiff Has Not Shown a Causal Nexus Between the Rastajay Work and Indirect Profits from the Sales of Other Works ....................................14

        1.     Applicable Law ........................................................................... 15

        2.     The Rastajay Work Was Not Used to Promote or Advertise the Exhibition, and There Is No Evidence It Influenced Any Client's Decision to Purchase Any of the Other Works ............................ 16

        3.     Defendants Did Not Receive "Publicity and Notoriety" from the Rastajay Work Resulting in Profits................................................ 19

        4.     Other Alleged "Evidence" of a Causal Nexus Offered by Mr. Holzen Fails to Create a Factual Issue ................................................... 19

    B.     Larry Gagosian's Alleged "Unrealized Profit" on the Rastajay Work Should Be Excluded from any Measure of Infringer Profits .................20

        1.     Granting Plaintiff's Forfeiture Request and Awarding Unrealized Profits Would Be Double-Counting............................................... 20

        2.     Plaintiff Cannot Recover Unrealized Profits Arising from the Non-Infringing Acts of Purchasing or Possessing the Rastajay Work ............... 21

        3.     Plaintiff's Measure of Unrealized Profits Is Based Solely on the Secondary Sale Prices of Non-infringing Works, which Are—by Definition—Unrelated to the Alleged Infringement.................................... 23

        4.     Mr. Holzen's Opinion Is Insufficient to Demonstrate Gross Revenue, Even if Causation is Assumed .................................................. 25

V.     CONCLUSION...................................................................................................... 25

**Table of Authorities**

**Cases**

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................. 14

*Associated Residential Design v. Molotky*,
   226 F. Supp. 2d 1251 (D. Nev. 2002) ............................................... passim

*Baker v. Urban Outfitters, Inc.*,
   254 F. Supp. 2d 346 (S.D.N.Y. 2003) ................................................... 21

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) ............................................................................ 13, 14

*Cengage Learning, Inc. v. Globonline SDN*,
   No. 14 CIV. 3174 (DAB), 2018 WL 1989574 (S.D.N.Y. Apr. 25, 2018) ............................ 21

*Complex Sys., Inc. v. ABN Ambro Bank N.V.*,
   No. 08 Civ. 7497, 2013 WL 5970065 (S.D.N.Y. Nov. 8, 2013) ........................... 15, 16, 20, 22

*Eales v. Envtl. Lifestyles, Inc.*,
   958 F.2d 876 (9th Cir. 1992), *as amended* (May 11, 1992) .............................. 22-23

*Foreign & Domestic Music Corp. v. Licht*,
   196 F.2d 627 (2d Cir. 1952) ................................................................... 22

*Granger v. Gill Abstract Corp.*,
   566 F. Supp. 2d 323 (S.D.N.Y. 2008) ................................................... 16

*Hamil Am. Inc. v. GFI*,
   193 F.3d 92 (2d Cir. 1999) ..................................................................... 21

*Hunt v. Pasternack*,
   179 F.3d 683 (9th Cir. 1999) ................................................................. 23

*IBM Corp. v. BGC Partners, Inc.*,
   No. 10 Civ. 128, 2013 WL 1775437 (S.D.N.Y. Apr. 25, 2013) ............................ 16

*Joseph P. Carroll Ltd. v. Baker*,
   889 F. Supp. 2d 593 (S.D.N.Y. 2012) ................................................... 25

*Khandji v. Keystone Resorts Mgmt., Inc.*,
   140 F.R.D. 697 (D. Colo. 1992) ........................................................... 22

*Knight v. U.S. Fire Ins. Co.*,
   804 F.2d 9 (2d Cir.1986) ............................................................................. 13

*Lapham v. Porach*,
   No. 06-CIV-6861CM, 2007 WL 1224924 (S.D.N.Y. Apr. 25, 2007) ..................................... 22

*Lawton v. Melville Corp.*,
   116 F.3d 1472 (2d Cir. Jun. 24, 1997) ............................................................... 15

*Lyons P'ship, L.P. v. AAA Entm't Inc.*,
   No. 98CIV.0475DABMHD, 1999 WL 1095608 (S.D.N.Y. Dec. 3, 1999) ................................... 21

*Mackie v. Rieser*,
   296 F.3d 909 (9th Cir. 2002) ............................................................... 16, 17, 18, 22

*Mager v. Brand New Sch.*,
   No. 03 CIV. 8552 (DC), 2004 WL 2413978 (S.D.N.Y. Oct. 28, 2004) ............................... 16, 17

*Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*,
   262 F. Supp. 2d 923 (N.D. Ill. 2003) ................................................................ 21

*On Davis v. The Gap, Inc.*,
   246 F.3d 152 (2d Cir. 2001) ..................................................................... 15, 21

*Taylor v. Meirick*,
   712 F.2d 1112 (7th Cir. 1983) ....................................................................... 15

*Tu v. TAD Sys. Tech. Inc.*,
   No. 08-CV-3822 (SLTRM), 2009 WL 2905780 (E.D.N.Y. Sept. 10, 2009) ................................. 21

**Statutes**

17 U.S.C. § 504(b) .............................................................................. passim

Fed. R. Civ. P. 56(c) .............................................................................. 13

iv

Defendants Gagosian Gallery, Inc. ("Gagosian Gallery" or the "Gallery") and Laurence ("Larry") Gagosian (collectively the "Gagosian Defendants," and with Richard Prince, "Defendants") respectfully submit this memorandum of law in support of their motion for partial summary judgment on Plaintiff Donald Graham's claims to indirect profits pursuant to 17 U.S.C. § 504(b) (the "MPSJ").[1]

## I.   **INTRODUCTION**

Plaintiff copyright infringement claim stems from a single Richard Prince work (the "Rastajay Work") from Prince's New Portraits series.[2]  The Rastajay Work appeared in a Gagosian exhibition (the "Exhibition") with 36 other New Portraits works (collectively the "Exhibition Works").[3]  The image of the Rastajay Work was not used in any advertisements or other promotional material, and it was sold to Mr. Gagosian for $21,600.[4]

███████████████████████████████████████████████████

██████████████████████████████████████  His answer is to use this lawsuit regarding a single work to obtain a windfall of, in his words, "many millions of dollars" from Defendants.[6]  Plaintiff asserts he is entitled to—among other things: (1) Defendants' gross revenue from the sale of ██ *other* New Portraits works (the "Other Works"), totaling about ████████

---

[1] The Gagosian Defendants join in Mr. Prince's concurrently filed motion for summary judgment (the "Prince MSJ"). This case should be dismissed because: (1) Mr. Prince made fair use of Mr. Graham's photograph; and (2) the Defendants had an implied license to use Mr. Graham's photograph.  A ruling that grants summary judgment on either of these grounds would dispose of Mr. Graham's case in its entirety.  Accordingly, the Court need only consider this MPSJ if the Prince MSJ is denied.

[2] ¶ 27, Ex. 85 (Corrected Am. Compl.) ¶¶ 1-4, 31.  Citations to "¶ __" refer to the Gagosian Defendants' Rule 56.1 Statement of Facts in Support of its Motion for Partial Summary Judgment submitted with this memorandum. Citations to "Ex. __" refer to the records submitted with the Declaration of Tracy Appleton, Esq. in Support of the Gagosian Defendants' Motion for Partial Summary Judgment and Rule 56.1 Statement.  Unless otherwise noted, all emphasis in this memorandum has been added.

[3] ¶ 27.

[4] The total price for the Rastajay Work was $36,000, but Mr. Gagosian paid only the 60% of that price owed to Mr. Prince—*i.e.*, $21,600.  ¶ 50 n.56, Ex. 35 (Rastajay Work Invoice).

[5] ¶¶ 152-153, Ex. 89.

[6] ¶¶ 154-158, Ex. 88.

dollars— ████████████████████████████████████████████

████████████████████████████████; [7] and (2) Mr. Gagosian's

purported "unrealized profits" from Mr. Gagosian's purchase of the Rastajay Work. [8]

But Plaintiff's claims to these indirect profits are unsupported by law or evidence. These

two categories of indirect profits Plaintiff seeks should be dismissed on summary judgment:

*First*, the claim to over ████████ in indirect profits fails because Plaintiff has not—and

cannot—establish a causal nexus between the display of the Rastajay Work at the Exhibition and

the sales of any Other Works. The Gallery did not place advertisements for the Exhibition, [9] and

it did not even announce the Exhibition until after it opened. [10] In the days that followed, Gagosian

Gallery issued a simple press release and provided Exhibition information on its website and

through email—but the New Portraits work featured in these communications was *not* the Rastajay

Work. [11] ████████████████████████████████, [12] ████████

████████████████████████████████████████████

████ [13] There is no evidence in the record even suggesting that a Gallery client viewed the

Rastajay Work before choosing to purchase another Prince work. And even if there were such

evidence, Plaintiff cannot demonstrate that viewing the Rastajay Work caused any buyer to

purchase an entirely different Prince work. [14] Even assuming—against all logic—that in the

absence of viewing the Rastajay Work, one of the buyers might have decided not to purchase a

different Prince work, that decision would have had *no impact* on New Portrait sales. Rather, that

---

[7] ¶ 22, Ex. 15 (████████████████████████████████).
[8] ¶¶ 27, 119-147.
[9] ¶ 35.
[10] ¶¶ 36-37, 57-60.
[11] ¶¶ 61-65.
[12] ¶¶ 51-52.
[13] ¶¶ 84-87.
[14] ¶¶ 123-135.

buyer would quickly have been replaced ███████████████████████████████████
██████████████████████████████████.[15]  In short, no reasonable juror could conclude

that the Rastajay Work was causally connected to the sale of the Other Works.

*Second*, the claim to "unrealized profits" Mr. Gagosian allegedly earned in purchasing and

retaining the Rastajay Work falls short both legally and as an evidentiary matter.  Among other

things (a) it constitutes double counting because Plaintiff also seeks forfeiture of the work; (b) such

profit is attributable to Mr. Gagosian's purchase and possession of the work, neither of which is a

copyright violation; (c) ██████████████████████████████████████████████
██████████████████████ and thus fails to calculate unrealized profits reasonably

related to the alleged infringement; (d) Plaintiff's estimate of gross revenue is unreliable.

For these reasons, the Gagosian Defendants respectfully request that this Court grant the

MPSJ and limit Plaintiff's potential recovery for profits under 17 U.S.C. § 504(b) to those directly

obtained through the sale of the Rastajay Work to Mr. Gagosian—*i.e.*, $21,600.

## II.    STATEMENT OF FACTS

### A.    Defendants and their Market Positions

Richard Prince is a world-renowned, critically acclaimed visual artist whose works have

been exhibited in museums across the world.[16]  In 2013 he was identified as one of the "Most

Expensive Living Artists."[17]  Mr. Prince is included in the Artprice100 Index of "blue chip" artists,

"whose auction results are the most regular (constant) and the highest" over a five-year period.[18]

---

[15] ¶¶ 95-96.
[16] ¶¶ 1-2.
[17] ¶ 3, Ex. 4; *see also* ¶ 4.
[18] ¶ 5, Ex. 7.

Due to Mr. Prince's reputation and artistic contributions, his work has shown a consistent level of value over time regardless of its subject matter or the materials used.[19]

Gagosian Gallery and its affiliates represent a global network of sixteen exhibition spaces, with Gagosian Gallery ███████████████.[20]  Gagosian Gallery's founder ████████, Larry Gagosian, has been in the business since 1980.[21]  Over the years, Gagosian Gallery and its affiliates have exhibited many prominent artists[22] and a broad range of art, including contemporary, modern, and impressionist art.[23]  In 2011, the Wall Street Journal recognized Mr. Gagosian as "the most powerful art dealer in the world," noting the Gagosian Defendants' "global network of galleries," "blue-chip clients," and ability "to fetch ever higher prices for [their] artists."[24]

Gagosian Gallery has had an extensive and well-publicized working relationship with Mr. Prince for nearly two decades.[25]  Gagosian's galleries staged at least two dozen Prince exhibitions prior to the New Portraits Exhibition in September 2014.[26] █████████████████

███████████████████████████████████████

███████████████████████████████████[27]

**B.    Plaintiff and his Market**

Plaintiff Donald Graham is a photographer based in Beverly Hills.[28] █████████████

███████████████████████;[29] █████████████████████████████

---

[19] ¶ 6.
[20] ¶¶ 7-8.
[21] ¶¶ 9-10.   While Mr. Gagosian owns Gagosian Gallery, the ███████████████████████
███████████████████████████████████████.  ¶ 11.
[22] ¶ 12. These artists include, for example, Damien Hirst, Ellen Gallagher, Jeff Koons, Ed Ruscha, Richard Serra, Claude Monet, Jackson Pollock, Cy Twombly, Pablo Picasso, and Andy Warhol.  *Id.*
[23] ¶ 13.
[24] ¶ 14, Ex. 11.
[25] ¶¶ 15-16.
[26] ¶ 16.
[27] ¶ 17.
[28] ¶¶ 18-19.
[29] ¶ 20.

██████████████████████.[30] ████████████████████████████████

████████████████████████████████████████████████████.[31]  He has

never sold his fine art photography through a gallery in the United States, let alone in New York,[32]

nor through any major gallery.[33]  He has never had his own show at a major museum, and has not

exhibited more than a few works at a time.[34]

### C.    The New Portraits Series and the Exhibition at Gagosian Gallery

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

██████████████.[36]  But no one from Gagosian Gallery viewed the final 37 Exhibition Works until

they were delivered to the Madison Gallery on September 3, 2014, about two weeks before the

Exhibition opened.[37]  These 37 works included the Rastajay Work, which incorporated a post by

Instagram user @rastajay92, which in turn included a portion of the Graham Photo.[38]

### D.    No Advance Promotion or Advertising

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████  Gagosian Gallery did not place any advertisements for the Exhibition.[41]  █████████

████████████████████████████████████████████████████

---

[30] ¶ 21.
[31] ¶ 23.
[32] ¶ 24.
[33] *Id.*
[34] ¶ 25.
[35] ¶¶ 26-28.
[36] ¶ 29.
[37] ¶ 30.
[38] ¶ 27.
[39] ¶ 33.
[40] ¶ 34.
[41] ¶ 35.

██████████████████████████████.[42]  Thus, the Gallery did not share

information about the Exhibition through standard electronic outlets prior to the opening.[43]

### E.   All Exhibition Works Were Sold Prior to the Exhibition Opening



By the time Mr. Gagosian saw the Rastajay Work, there were very few works left, perhaps

less than five.[52]  At that point, some of the works Mr. Gagosian desired most had been sold, but

[42] ¶ 36.
[43] ¶ 37.
[44] ¶ 39.
[45] ¶ 40.
[46] ¶ 41.
[47] ¶ 42.
[48] ¶ 43.
[49] ¶ 44.
[50] ¶ 45. ██████████████████████████████. *Id.*
[51] ¶ 46.
[52] ¶ 47.

he purchased the Rastajay Work because he wanted to buy something from the Exhibition.[53]  If the Exhibition had not included the Rastajay Work, Mr. Gagosian would have purchased another Exhibition Work.[54]  Mr. Gagosian agreed to purchase the Rastajay Work on September 10, 2014.[55]

███████████████████████████████████████████ ████

███████████████████████████████.[57]  There is no evidence that any of the purchasers saw the Rastajay Work and were inspired as a result to buy a different Exhibition Work.[58]

For approximately one week prior to the Exhibition, a handful of clients were brought to an annex space closed off to the public, where Gagosian Gallery employees had staged the Exhibition Works to get a sense of what they looked like.[59]  There is no evidence that any of these clients saw the Rastajay Work prior to coming to the annex, or that they viewed it in the annex space.[60]  There is no evidence that the Rastajay Work played any role in these clients' decisions to purchase, or not to purchase, any particular Exhibition Work.[61]

F.    The Exhibition Opens

The Exhibition opened to the public on September 19, 2014.[62]  At this point, Gagosian Gallery still had not provided any information about the Exhibition via email, social media, or its website.[63]  In the days that followed, Gagosian Gallery issued information about the Exhibition through these electronic outlets, ████████████████████████████.[64]

---

[53] ¶ 48.
[54] ¶ 49.  Mr. Gagosian expressed no opinion on whether the Graham Photo constituted art, and he would not have chosen to purchase the Graham Photo if it were offered to him. ¶ 49 n.54.
[55] ¶ 50.  Mr. Gagosian paid Mr. Prince $21,600—his share of the $36,000 purchase price—and did not pay anything to Gagosian Gallery.  ¶ 50 n.56; Ex. 35.
[56] ¶ 51.
[57] ¶ 52.
[58] ¶ 53.
[59] ¶ 54.
[60] ¶ 55.
[61] ¶ 56.
[62] ¶ 57.
[63] ¶ 58.
[64] ¶ 59.

Importantly, the work that was featured in Gagosian Gallery's announcements of the show was *not* the Rastajay Work, but rather a work incorporating a post by "@nightcoregirl" (the "Nightcoregirl Work").[65]  Specifically:

- On or after September 20, 2014, a subpage regarding the Exhibition was created on Gagosian.com, featuring prominently an image of the Nightcoregirl Work.[66]

- On September 23, 2014, a press release containing the Nightcoregirl Work was added to the Exhibition subpage.[67]

- Also on September 23, 2014, an email was sent out to a Gagosian Gallery mailing list, again featuring the Nightcoregirl Work.[68]

None of these announcements featured the Rastajay Work.[69]

On or after September 20, 2014, four "installation shots" (photographs documenting the Exhibition that included groups of Exhibition Works) were linked on the subpage for the Exhibition.[70]  Over 20 of the Exhibition Works were visible in the installation shots, including the Rastajay Work, though no piece received any particular focus.[71]  There is no evidence that any New Portraits buyers saw these installation shots prior to agreeing to purchase a work, much less that such a viewing played any role in their purchase decisions.[72]

Sometime after the opening, an informational "zine" or pamphlet containing pictures of all 37 Exhibition Works (the "Zine") was made available for free at the Exhibition.[73]  The Rastajay Work appeared on page 7 of 37.[74]  The Zines were in a stack on the receptionist's desk in the

---

[65] ¶ 61.
[66] ¶ 62.
[67] ¶ 63.
[68] ¶ 64.
[69] ¶¶ 60, 65.
[70] ¶ 66.
[71] ¶ 67.
[72] ¶¶ 68-69.
[73] ¶ 70.
[74] ¶ 71.

Madison Gallery, where Exhibition attendees could take one.[75]  The Zine was not sold and it was

not available at any other location.[76]  Only 2,000 copies were printed.[77]  There is no evidence that

the Zine was sent to any New Portraits buyers who did not attend the Exhibition.[78]

### G.      Other New Portraits Works Not in Exhibition



---

[75] ¶ 72.
[76] ¶ 73.
[77] ¶ 74.
[78] ¶ 75.
[79] ¶ 84.
[80] ¶ 85.
[81] ¶ 86.
[82] ¶ 87.

The Rastajay Work played no role in any of
these sales.  ¶ 93.

[83] ¶ 95.
[84] ¶ 96.
[85] ¶¶ 97-98.

¶ 92; *see* note 82 *supra*.



.[90] There is no indication that receiving the installation shots had any impact on the ▮▮▮▮ decision.[91]

In fact, there is no evidence that the Rastajay Work was a factor in *any* client's decision to purchase ▮▮▮▮▮▮▮▮.[92] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

There is no evidence that any ▮▮▮▮▮▮ buyers viewed the Rastajay Work prior to making a decision to purchase.[95] And even if they had, there is no evidence even suggesting such a viewing played a role in their purchase decisions.[96]

---

[86] ¶ 99.
[87] ¶ 100.
[88] ¶ 101.
[89] ¶¶ 102-103.
[90] ¶ 104.
[91] ¶ 105.
[92] ¶¶ 110-111. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ¶¶ 93, 107.
[93] ¶ 108.
[94] ¶ 109.
[95] ¶ 110.
[96] ¶ 111.

**H.**     **Mr. Gagosian Never Displayed the Rastajay Work After the Exhibition, and He Has Neither Appraised It nor Considered Offering It for Sale**

After the Exhibition ended, the Rastajay Work was delivered to Mr. Gagosian.[97]  Since the

Exhibition, neither he nor Gagosian Gallery have displayed the work publicly, ████████████

██████████████████████████████.[98]  Mr. Gagosian made no profit on his purchase

of the Rastajay Work and has not profited from the work since then.[99] ████████████████

█████████ and has no interest in selling it.[100]

**I.**     **Plaintiff's Damages Expert**

████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

---

[97] ¶ 114.
[98] ¶¶ 115-116.
[99] ¶ 117.
[100] ¶ 118.
[101] ¶ 119.
[102] ¶ 120.
[103] ¶ 123. ████████████████████████████████████████████████████
████████████████████████ ¶ 121.  The Gagosian Defendants understand that Plaintiff is not claiming
entitlement to $1 billion in gross revenue—a number drawn ████████████████
████████████████████ of Gagosian affiliates across the globe.  *Id.*
████████████████████████████████████. ¶ 122.
[104] ¶ 124.
[105] ¶ 125.



---

[106] ¶ 126.
[107] ¶ 127.
[108] ¶ 129.
[109] *Id.*  As noted above, the Specialty Works became available after September 26, 2014, but they were given to specific clients who bought them for reasons unrelated to the Rastajay Work.  *See* note 82 *supra*; ¶¶ 89-94.
[110] ¶ 130.
[111] *Id.*
[112] ¶ 131.
[113] *Id.*
[114] ¶ 132.
[115] *Id.*



## III.  **SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted if the record "show[s] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of "demonstrat[ing] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  However, the non-moving party may not "rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986).

---

[116] ¶ 133.
[117] *Id.*
[118] ¶¶ 134-135.
[119] ¶ 136.
[120] ¶ 137.
[121] ¶ 146.
[122] ¶ 147.

Rather, the non-moving party must produce specific facts sufficient to establish that there is a genuine factual issue for trial. *Celotex*, 477 U.S. at 322-23.  If the evidence offered is "merely colorable" or "not significantly probative," summary judgment may be granted.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-52 (1986) ("[T]here must be evidence on which the jury could reasonably find for the [non-moving party].").

## IV.   <u>ARGUMENT</u>

The Gagosian Defendants strongly contest all of Plaintiff's damage claims—but this MPSJ targets those damages measures that are legally impermissible or so lacking in evidence that no reasonable juror could award them to Plaintiff.  After almost a year of exhaustive discovery, Plaintiff has found no evidence to support his claim to indirect profits from the Rastajay Work.

### A.   **Plaintiff Has Not Shown a Causal Nexus Between the Rastajay Work and Indirect Profits from the Sales of Other Works.**

Any attempt to establish a causal connection between the Rastajay Work and the sale of Other Works amounts to unwarranted speculation at best. ████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ ████████████████████████████ Plaintiff cannot show that any one purchaser saw the Rastajay Work and then purchased a different New Portraits work.  Even if he could, there is no evidence of a causal connection between viewing the Rastajay Work and any client's decision to purchase a completely different ████████ work of art.  Finally, even if Plaintiff could somehow marshal evidence of such a causal connection to one or more Other Works purchases, such a showing would be immaterial. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████

███████████████████████████████████

██████████

### 1.  *Applicable Law*

For purposes of Section 504(b), it is the copyright owner's burden to present proof of the infringer's gross revenue "reasonably related to the infringement, *not unrelated revenues*."  *On Davis v. The Gap, Inc.*, 246 F.3d 152, 160 (2d Cir. 2001).  Thus, "a copyright owner cannot simply show gross revenues from the sale of everything the defendant sells, the copyright owner must show some nexus between the gross revenues and the infringement."  *Lawton v. Melville Corp.*, 116 F.3d 1472, 1997 WL 346129, at *2 (2d Cir. Jun. 24, 1997).  As *On Davis* observes, "If a publisher published an anthology of poetry which contained a poem covered by the plaintiff's copyright, we do not think the plaintiff's statutory burden would be discharged by submitting the publisher's gross revenue resulting from its publication of hundreds of titles . . . . [T]he owner's burden would require evidence of the revenues realized from the sale of the anthology containing the infringing poem."  246 F.3d at 160.[123]

While both "direct" and "indirect" profits may be recoverable under the Copyright Act under appropriate circumstances, Section 504(b) "'creates a two-step framework for recovery of indirect profits: (1) the copyright claimant must first show a causal nexus between the infringement and the gross revenue; and (2) once the causal nexus is shown, the infringer bears the burden of apportioning the profits that were not the result of infringement.'"  *Complex Sys., Inc. v. ABN Ambro Bank N.V.*, No. 08 Civ. 7497, 2013 WL 5970065, at *2 (S.D.N.Y. Nov. 8, 2013); *see also*

---

[123] Similarly, in *Taylor v. Meirick*, 712 F.2d 1112 (7th Cir. 1983) (cited by *On Davis*, 246 F.3d at 160), the defendant map maker allegedly sold three maps that infringed plaintiff's copyright, out of 150 total maps as well as other merchandise.  *Taylor* ruled that the plaintiff's burden was to show "gross revenues from the sale of the infringing maps. It was not enough to show [the defendant's] gross revenues from the sale of everything he sold."  *Taylor*, 712 F.2d at 1122.

*Granger v. Gill Abstract Corp.*, 566 F. Supp. 2d 323, 332 (S.D.N.Y. 2008) ("Plaintiff is required to establish a 'causal link' between . . . profits and the infringement.")

"[T]o survive summary judgment on a demand for indirect profits pursuant to § 504(b), a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Mackie v. Rieser*, 296 F.3d 909, 915-16 (9th Cir. 2002). "The copyright laws do not allow speculative recovery." *Mager v. Brand New Sch.*, No. 03 CIV. 8552 (DC), 2004 WL 2413978, at *4 (S.D.N.Y. Oct. 28, 2004) (dismissing profit damages on summary judgment); *see also Complex Sys., Inc.*, 2013 WL 5970065, at *2 ("Damages only remotely or speculatively attributable to the infringement should be precluded."). "Because of the at-best highly speculative nature of all indirect profits claims" such as those at issue here, the decision to "send[] such claims to a jury should be extremely rare." *IBM Corp. v. BGC Partners, Inc.*, No. 10 Civ. 128, 2013 WL 1775437, at *3 (S.D.N.Y. Apr. 25, 2013). Here, it is not even a close question: The evidence is plainly insufficient to allow Plaintiff to claim indirect profit damages from the sales of Other Works.

> **2.**     **The Rastajay Work Was Not Used to Promote or Advertise the Exhibition, and There Is No Evidence It Influenced Any Client's Decision to Purchase Any of the Other Works.**

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████ This assertion, however, has no basis in fact. The work was not selected for use in any "promotion[s]," and as for the "media coverage" ███████████, this amounts to a single online article that incidentally included general installation shots with no focus on the Rastajay Work, which was

---

[124] ¶ 31. ████████████████████████████████████████████████████████. ¶ 32. ███████████

posted no more than three days before the sale process for the Secondary Works was complete.[125] The idea that any potential buyer saw and was influenced by the Rastajay Work before making a purchase decision is unduly speculative. *See*, *e.g.*, *Mager*, 2004 WL 2413978, at *4.

By comparison, in *Mackie* the plaintiff showed that his sculpture appeared in a "promotional brochure" for the Seattle Symphony, in a montage "design[ed]" to promote their "Pops" performance series, which was mailed to "*150,000* individuals." *Id.* at 912. The court concluded that Mackie "has not proffered nonspeculative evidence that is sufficient" to support a causal link between infringement of his work and any revenues from the Pops series. *Id.* at 916 (citing "virtually endless permutations to account for an individual's decision to subscribe to the Pops series," and characterizing plaintiff's causal link allegations as "[r]ank speculation"). Mr. Graham's purported evidence of causation through promotional use is even more attenuated.

███████████████████, no advertisements were placed for the Exhibition, and any Exhibition announcements were withheld until after it opened on September 19, 2014.[126] As all Exhibition Works were spoken for ██████████, the only opportunities for the buyers of those works to even see the Rastajay Work were (a) ███████████████████ ████████████████████████████, and (b) in a private annex where a handful of buyers of other Exhibition Works might or might not have seen the Rastajay Work.[127] Under these circumstances, no serious argument for causation can be made.

---

[125] ¶¶ 60, 65, 76-83. ████████████████████
████ ¶ 80, ████████████████████, ¶ 87 & n.95. The vast majority of articles written about the Exhibition on or before September 26, 2014, used installation photographs and other images that did not contain the Rastajay Work. *See, e.g.*, ¶ 81 (13 examples of such articles); *see also, e.g.*, ¶ 82 (12 articles written after September 26, 2014 that did not use an image containing the Rastajay Work).
[126] ¶¶ 33-37.
[127] ¶¶ 45, 54-56. Mr. Holzen was unable to cite any facts showing that someone saw the Rastajay Work in the annex and then bought another work as a result. ¶¶ 55-56, 131.

After the September 19, 2014 opening, the Rastajay Work was displayed at the Exhibition and in a free pamphlet—the Zine—made available onsite, which simply included images of the same 37 Exhibition Works.[128] █████████████████████████████████████

███████ ████████████████████████████████████████

███████████████████████████████████ █ ██████████████████

█████████████████████████████████████████████████

█████████████████████████████████████████████████

█████████████████████ It is "[r]ank speculation" that the Rastajay Work influenced the purchase decisions of any client who bought the Other Works.  *See Mackie*, 296 F.3d at 916.

In the days after the show opened, the Gallery sent out an email announcement, used social media, created a website subpage for the Exhibition, and issued a press release.  Several of these announcements included prominent images of the Nightcoregirl Work, but the Rastajay Work was not featured.[132] ███████████████████████████████████████

█████████████████████████████████████████████████

██████████████████████ But there were many other articles at the time that did not include the Rastajay Work image.[134] █████████████████████████████████████

████████████████████████████ Again, there is no evidence that the installation shots contained in Mr. Saltz's article had any impact on those sales.[136]

---

[128] ¶¶ 70-75.  Thus, the Zine can hardly be characterized as having a "promotional" impact on the Exhibition—it added nothing to what any Exhibition visitor might have already seen.
[129] ¶¶ 84-85.
[130] ¶¶ 100-101.
[131] ¶¶ 102-105.
[132] ¶¶ 60-65.
[133] ¶¶ 76-79.
[134] At least 13 articles written on or before September 26, 2014 did not contain the Rastajay Work.  ¶ 81; *see also* ¶ 82 (12 articles written after September 26, 2014 that did not contain the Rastajay Work).
[135] ¶¶ 86-87.
[136] ¶ 83.



Accordingly, these later public displays of the Rastajay Work could not be causally linked to the previous sales of the Other Works. ████████████████████████████████████

████████████████████████████████████[139]

### 3. Defendants Did Not Receive "Publicity and Notoriety" from the Rastajay Work Resulting in Profits.

Plaintiff's complaint alleges that the Gagosian Defendants "benefited financially from the publicity and notoriety [they] received resulting from the Exhibition."[140]  But Plaintiff has not unearthed any facts to support a causal connection between the Rastajay Work and any financially beneficial publicity and notoriety the Gagosian Defendants received.[141]  Plaintiff has not identified any purported Exhibition profits he seeks outside of those from the New Portraits sales—virtually all of which were made within the first week of the Exhibition's opening.[142]

### 4. Other Alleged "Evidence" of a Causal Nexus Offered by Mr. Holzen Fails to Create a Factual Issue.



---

[137] ¶ 80.

[138] ¶ 132.

[139] ¶ 134; *see also* ¶ 135.

[140] ¶ 148; Ex. 85 (Corr. Am. Compl.) at ¶¶ 78, 84.

[141] ¶¶ 149-151.

[142] ¶¶ 149-150.  The Specialty Works were sold after the first week of the Exhibition, but all were bought for reasons unrelated to any "publicity and notoriety" the Rastajay Work allegedly inspired.  *See* note 82 *supra*.

███.[143]  The date of payment is irrelevant, however.  Plaintiff is tasked with showing that the Rastajay Work has a causal connection to the *decisions to purchase* Other Works made in ███████.  There is no evidence that those decisions were altered by later events—for example, that any committed buyers later backed out and were replaced by others.[144]

████████████████████████████████████

████████████████████████████████████

████████████████████████████.[145]  It is woefully insufficient to show that the works are "related" to one another artistically:  Plaintiff must show a "causal nexus" between the alleged infringement and the indirect profits earned on the Other Works.  *See, e.g., Complex Sys., Inc.*, 2013 WL 5970065, at *2.  Ms. Phillips' report cites no facts showing that the Rastajay Work caused the sale of any of the Other Works.[146]

For all these reasons, this Court should dismiss Plaintiff's claim to indirect profits from the sale of the Other Works.

> **B.**  **Larry Gagosian's Alleged "Unrealized Profit" on the Rastajay Work Should Be Excluded from Any Measure of Infringer Profits.**

Plaintiff's claim for alleged "unrealized profits" on Mr. Gagosian's purchase of the Rastajay Work is likewise defective and should be dismissed for several independent reasons.

> *1.  Granting Plaintiff's Forfeiture Request and Awarding Unrealized Profits Would Be Double-Counting.*

One of the remedies Plaintiff seeks is "the seizure and forfeiture to Mr. Graham . . . of the Infringing Portrait."[147]  Granting this relief, however, would deprive Mr. Gagosian of the alleged source of his purported "unrealized profits."  Repeatedly, "courts have recognized the bar to double

---

[143] ¶ 129.
[144] ¶ 94.
[145] ¶ 133.
[146] ¶ 133 & n.151.
[147] ¶ 158.

recovery in the intellectual property context." *Tu v. TAD Sys. Tech. Inc.*, No. 08-CV-3822 (SLTRM), 2009 WL 2905780, at *3 (E.D.N.Y. Sept. 10, 2009) (collecting cases).[148] If this Court were to remove the Rastajay Work from Mr. Gagosian's possession, it would necessarily be double-counting to order him to pay unrealized profits from a work he no longer possesses. Thus, Plaintiff should not be permitted to seek both forfeiture of the Rastajay Work and unrealized profits from that work. The claim for unrealized profits should be dismissed for this reason alone.

### 2. *Plaintiff Cannot Recover Unrealized Profits Arising from the Non-Infringing Acts of Purchasing or Possessing the Rastajay Work.*



In *Molotky*, ████████████████, the defendant homeowners used copyrighted architectural drawings without permission to construct their home. Under these circumstances, the court ruled that plaintiff might claim defendants' unrealized profits in the home, assuming he could demonstrate causation. *Id.* at 1255. Even assuming that the *Molotky* approach should be adopted in this Circuit,[150] Plaintiff must still show a causal nexus between the "unrealized profits"

---

[148] Thus, plaintiffs have been barred from recovering (1) actual damages and infringer's profits to the extent they overlap, *see, e.g., On Davis*, 246 F.3d at 159 (2d Cir. 2001); *Hamil Am. Inc. v. GFI*, 193 F.3d 92, 108 (2d Cir. 1999); *Baker v. Urban Outfitters, Inc.*, 254 F. Supp. 2d 346, 359 (S.D.N.Y. 2003); (2) statutory and actual damages, *Lyons P'ship, L.P. v. AAA Entm't Inc.*, No. 98CIV.0475DABMHD, 1999 WL 1095608, at *8 (S.D.N.Y. Dec. 3, 1999); and (3) damages under both the Copyright Act and Lanham Act arising from the same injury, *Cengage Learning, Inc. v. Globonline SDN*, No. 14 CIV. 3174 (DAB), 2018 WL 1989574, at *2-*3 (S.D.N.Y. Apr. 25, 2018).

[149] ¶ 136.

[150] This is not a foregone conclusion. The *Molotky* approach has not been used outside the context of architectural design, where a completed sale of the infringing product (a home) at time of trial may be less common than in cases involving smaller, more salable products. Even in the architectural context, other courts have rejected the *Molotky* approach, reasoning that the infringer's profits are the saved acquisition costs for the plans, not the profits (or losses) obtained upon developing the land based on those plans. In one case denying the request for discovery on the defendants' development of real estate parcels using the plaintiff's plans, the court observed that "once the developer pays for the acquisition of the architectural plans, whether he makes profits or loses money in constructing the building is of no concern to the copyright owner." *Ocean Atl. Woodland Corp. v. DRH Cambridge Homes, Inc.*, 262 F. Supp. 2d 923, 927-29 (N.D. Ill. 2003). Applying *Molotky* to secondary art sales is a further step removed—a copyright holder who licenses the use of the holder's work in a piece of art would not be concerned with the profits from the initial sale of that artwork—and still less would the holder have an interest in the art purchaser's profits or losses from the later secondary sale of that work.

and an infringing act.  *Complex Sys., Inc.*, 2013 WL 5970065, at *2; *Mackie*, 296 F.3d at 915-16; *see also Molotky*, 226 F.Supp.2d at 1255 (referencing need for causal relationship to infringement).

Here, there is no connection between the "unrealized profits" earned by Mr. Gagosian in purchasing the Rastajay Work and an allegedly infringing act.  Mr. Gagosian was not involved in the creation of the Rastajay Work, which he saw for the first time the day he purchased it.[151]  The only action Mr. Gagosian took to earn the alleged unrealized profits was to purchase the Rastajay Work: ███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████████ ■  However, neither purchasing nor possessing a copyrighted item in itself infringes copyright.  *See, e.g., Lapham v. Porach*, No. 06-CIV-6861CM, 2007 WL 1224924, at *6 (S.D.N.Y. Apr. 25, 2007) ("Defendant's mere possession of a copyrighted item does not infringe the copyright."); *Foreign & Domestic Music Corp. v. Licht*, 196 F.2d 627, 629 (2d Cir. 1952) ("[O]ne does not infringe a copyright by buying an infringing copy of the 'work' . . . ."); *Khandji v. Keystone Resorts Mgmt., Inc.*, 140 F.R.D. 697, 700 (D. Colo. 1992) ("The Copyright Act, however, says nothing about an exclusive right to *possession* of a copyrighted work." (emphasis in original)).  Therefore, there is no causal connection between an alleged infringing act and Mr. Gagosian's unrealized profits.

*Molotky* itself supports the conclusion that unrealized profits are not recoverable under these circumstances.  In *Molotky* the defendant homeowners *themselves* used the plaintiff's copyrighted architectural drawings to design the home they were building.  *Molotky*, 226 F. Supp. 2d at 1252 In holding these defendants liable for their unrealized profits, *Molotky* distinguished the case of *Eales v. Environmental Lifestyles, Inc.*, where the defendant homeowners were held not liable because they were not involved in obtaining the copyrighted plans at issue or using them to

---

[151] ¶ 112.  In fact, Mr. Gagosian had no knowledge of the source of the portrait included in the piece.  ¶ 113.
[152] ¶ 137.

construct their home—even though the plaintiff informed them *during construction* that the use of her plans infringed on her copyright. *Id.* at 1255; *see Eales v. Envtl. Lifestyles, Inc.*, 958 F.2d 876, 877-79 (9th Cir. 1992), *abrogated on other grounds by Hunt v. Pasternack*, 179 F.3d 683 (9th Cir. 1999). Their mere purchase of the home was not enough to hold them liable for damages. *Eales*, 958 F.2d at 879.

Hypothetically, if Mr. Gagosian were to sell the Rastajay Work, Plaintiff could claim that this sale was an infringing act and that he was entitled to any profits from the sale. But Mr. Gagosian has made no attempt to sell the Rastajay Work, ████████████████████ ██████████████████████████████████████ Nor does he have any intent to sell it in the future.[154] Accordingly, Plaintiff has no basis on which to claim Mr. Gagosian's purported unrealized profits.

### 3. *Plaintiff's Measure of Unrealized Profits Is Based Solely on the Secondary Sale Prices of Non-infringing Works, Which Are—By Definition—Unrelated to the Alleged Infringement.*

Even if Plaintiff could claim unrealized profits arising from the purchase of the Rastajay Work, his expert's method of calculating those profits precludes the possibility that those profits are attributable to the alleged infringement of the Graham Photo. As *Molotky* recognizes, unrealized profits are not direct, but rather "indirect damages" which are "frequently unsuccessful because profits must be attributable to the infringement." *Molotky*, 226 F. Supp. 2d at 1255. In other words, the infringing acts must "ha[ve] an effect on profits. At the summary judgement stage, a copyright holder must proffer sufficient non-speculative evidence to support a causal relationship between the infringement and the profits generated indirectly from such an infringement." *Id.* (citation and internal quotation marks omitted).

---

[153] ¶¶ 116-118.
[154] ¶ 118.



155 ¶¶ 120, 138-139.
156 ¶ 140.
157
141.
158 ¶¶ 142-143.
159 ¶ 144.
160 ¶ 145, Ex. 5 ¶ 100; *see also* Ex. 5 ¶¶ 100-112.

**4.**   ***Mr. Holzen's Opinion Is Insufficient to Demonstrate Gross Revenue, Even if Causation is Assumed.***

To shift the burden of proof to Defendants, Plaintiff must "demonstrate[] both [1] the defendant's gross revenue, and [2] a causal relationship between the infringement and the defendant's profits." *Molotky*, 226 F. Supp. 2d at 1255. Even assuming Plaintiff satisfies the second element, Mr. Holzen's opinion is insufficient to demonstrate the amount of gross revenue Mr. Gagosian could derive from the sale of the Rastajay Work. *See Bus. Trends Analysts, Inc. v. Freedonia Grp., Inc.*, 887 F.2d 399, 407 (2d Cir. 1989) ("Where there is no evidence at all allowing an assessment of the value of . . . an enhancement [of good will or market recognition], establishment of the fact of enhancement will not support an award.").



## V.   <u>CONCLUSION</u>

For all the foregoing reasons, the Gagosian Defendants respectfully request that this Court grant the MPSJ and enter an order limiting Plaintiff's potential recovery for infringer profits to those direct profits obtained through the sale of the Rastajay Work to Mr. Gagosian.

---

[161] ¶¶ 146-147.

Dated:  October 5, 2018
        New York, New York

                                      DONTZIN NAGY & FLEISSIG LLP

                          By:  _____
                                      Matthew S. Dontzin, Esq.
                                      Tibor L. Nagy, Jr., Esq.
                                      Tracy O. Appleton, Esq.
                                      980 Madison Avenue
                                      New York, New York 10075
                                      Tel: (212) 717-2900
                                      Fax: (212) 717-8088
                                      mdontzin@dnfllp.com
                                      tibor@dnfllp.com
                                      tappleton@dnfllp.com

                                      *Attorneys for Defendants Gagosian Gallery,
                                      Inc. and Laurence Gagosian*