[REDACTED PUBLIC VERSION]

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DONALD GRAHAM,

Plaintiffs,

v.

RICHARD PRINCE, GAGOSIAN GALLERY,
INC. AND LAWRENCE GAGOSIAN,

Defendants.

Case No. 1:15-cv-10160-SHS

---

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT
RICHARD PRINCE'S MOTION FOR SUMMARY JUDGMENT**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiff Donald Graham*

November 9, 2018

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................1

STANDARD OF REVIEW ....................................................................................................4

COUNTERSTATEMENT OF FACTS ...................................................................................5

ARGUMENT ..........................................................................................................................5

I.     PRINCE'S COPYING OF GRAHAM'S PHOTOGRAPH WAS NOT FAIR USE ...........5

    A.    The Purpose and Character Factor Weighs Against Fair Use .................................5

        1.    Prince's *Untitled* is Not Transformative As a Matter of Law ....................6

        2.    *Untitled* Is a Commercial Work, Which Weighs Against Fair Use ...........13

    B.    The Nature of the Work Factor Weighs Against Fair Use ....................................14

    C.    The Amount and Substantiality Factor Weighs Against Fair Use .........................15

    D.    The Market Effect Factor Weighs Against Fair Use ............................................16

        1.    The Market Effect Factor Is Not Entitled to Greater Weight than the Other Fair Use Factors ........................................................................16

        2.    *Untitled* Harms the Value of *Rastafarian Smoking a Joint* and Usurps Graham's Primary and Derivative Markets .................................16

        3.    Defendant's Additional Market-Related Arguments Do Not Bear Scrutiny ...................................................................................................19

    E.    None of Defendant's Extraneous Arguments Favor Fair Use ..............................20

II.    THE CATALOG, BILLBOARD AND TWITTER COMPILATION WERE ALSO NOT FAIR USE .................................................................................................21

    A.    Gagosian Exhibition Catalog ..............................................................................21

    B.    Billboard ............................................................................................................22

    C.    Twitter Compilation ...........................................................................................23

III.   GRAHAM DID NOT GRANT PRINCE AN IMPLIED LICENSE ...............................24

CONCLUSION .....................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Sagan*,
   No. 15 Civ. 4025 (ER), 2018 WL 1746564 (S.D.N.Y. Apr. 9, 2018) ....................................24

*Am. Geophysical Union v. Texaco Inc.*,
   60 F.3d 913 (2d Cir. 1994)........................................................................................................16

*Assoc. of Am. Med. Colleges v. Cuomo*,
   928 F.2d 519 (2d Cir. 1991)........................................................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
   448 F.3d 605 (2d Cir. 2006)..........................................................................................15, 21, 22

*Blanch v. Koons*,
   467 F.3d 244 (2d Cir. 2006)..........................................................................................10, 11, 15

*Bouchat v. Baltimore Ravens Ltd. Partnership*,
   619 F.3d 301 (4th Cir. 2010) ...............................................................................................21, 22

*Broad. Music, Inc. v. Peppermint Club, Inc.*,
   No. 83 Civ. 694, 1985 WL 6141 (N.D. Ohio 1985) .................................................................21

*Byrne v. British Broad. Corp.*,
   132 F. Supp. 2d 229 (S.D.N.Y. 2001)........................................................................................4

*Campbell v. Acuff-Rose Music, Inc.*,
   510 U.S. 569 (1994)..................................................................................................5, 6, 14, 16

*Cariou v. Prince*,
   714 F.3d 694 (2d Cir. 2013)............................................................................................. passim

*Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
   150 F.3d 132 (2d Cir. 1998)......................................................................................................10

*Cruden v. Bank of New York*,
   957 F.2d 961 (2d Cir. 1992)........................................................................................................4

*Design Options, Inc. v. BellePointe, Inc.*,
   940 F. Supp. 86 (S.D.N.Y. 1996) .............................................................................................25

*Direct Mktg. of Virginia, Inc. v. E. Mishan & Sons, Inc.*,
   753 F. Supp. 100 (S.D.N.Y. 1990) ...........................................................................................20

*Gaylord v. United States*,
595 F.3d 1364 (Fed. Cir. 2010)...................................................................................10, 15

*Graham v. Prince*,
265 F. Supp. 3d 366 (S.D.N.Y. 2017)........................................................................ passim

*Heyman v. Commerce & Indus. Ins. Co.*,
524 F.2d 1317 (2d Cir. 1975)..............................................................................................4

*Lennon v. Premise Media Corp.*,
556 F. Supp. 2d 310 (S.D.N.Y. 2008)...............................................................................14

*Maloney v. T3Media, Inc.*,
94 F. Supp. 3d 1128 (C.D. Cal. 2015) ...............................................................................19

*N. Jersey Media Grp. Inc. v. Pirro*,
74 F. Supp. 3d 605 (S.D.N.Y. 2015).......................................................................7, 9, 23

*On Davis v. The Gap, Inc.*,
246 F.3d 152 (2d Cir. 2001)..............................................................................5, 18, 23

*Penguin Random House LLC v. Colting*,
270 F. Supp. 3d 736 (S.D.N.Y. 2017)..............................................................................16

*Psihoyos v. Pearson Educ., Inc.*,
855 F. Supp. 2d 103 (S.D.N.Y. 2012)..............................................................................25

*Ringgold v. Black Entm't Television, Inc.*,
126 F.3d 70 (2d Cir. 1997).................................................................................................23

*Rogers v. Koons*,
960 F.2d 301 (2d Cir. 1992)................................................................................10, 12, 13

*TCA Television Corp. v. McCollum*,
839 F.3d 168 (2d Cir. 2016)........................................................................................6, 12

*Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993).............................................................................................6

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
92 F. Supp. 2d 349 (S.D.N.Y. 2000)...........................................................................18, 20

*United Feature Syndicate, Inc. v. Koons*,
817 F. Supp. 370 (S.D.N.Y. 1993) ...................................................................................12

*Viacom Int'l Inc. v. Fanzine Int'l Inc.*,
No. 98 CIV. 7448 (KMW), 2000 WL 1854903 (S.D.N.Y. July 12, 2000) ............................25

*Warner Bros. Inc. v. Am. Broad. Companies, Inc.*,
    720 F.2d 231 (2d Cir. 1983)..................................................................8

*Weinstein Co. v. Smokewood Entm't Grp., LLC*,
    664 F. Supp. 2d 332 (S.D.N.Y. 2009)..................................................24

*Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*,
    210 F. Supp. 2d 147 (E.D.N.Y. 2002) ..................................................8

## Statutes & Rules

17 U.S.C. § 107................................................................1, 5, 14, 16

Fed. R. Civ. P. 56...........................................................................4

Plaintiff Donald Graham ("Graham" or "Plaintiff") respectfully submits this memorandum of law in opposition to Defendant Richard Prince's ("Prince") motion for summary judgment.

## PRELIMINARY STATEMENT

"I know all the artists in the world, the relevant ones, the ones of any consequence, both dead and alive, those are the artists that I'm interested in.  And those are the artists that I respect."  (Ex. 38 (Prince Tr.) 48:13-18.)  Such is the philosophy of Richard Prince, self-proclaimed "appropriation" artist who has made his fortune taking the work of artists that he deems irrelevant and inconsequential and therefore not worthy of respect.  This case is about one such artist, Donald Graham, who invested his time, money and talent into the creation of a fine art photograph, only for it to be copied nearly in its entirety inside the frame of an Instagram post, printed on canvas, and sold for tens of thousands of dollars by Prince, without Prince ever asking Graham for his permission, paying a license fee, or giving Graham any credit whatsoever. This case is a paradigmatic example of the exploitive behavior the copyright laws were enacted to prevent, with the goal of ensuring that works of authorship are protected and creative endeavors are encouraged.

Of course, there are enumerated limits to the scope of an author's copyright protection, including fair use "for purposes such as criticism, comment, news reporting, teaching . . . scholarship, or research."  17 U.S.C. § 107.  Where an artist takes a copyrighted work and fundamentally alters it, such that it manifests an entirely different aesthetic than the original work, this secondary use may be considered transformative and thereby a fair use of the copyrighted work.  Prince argues that his use of Graham's photograph *Rastafarian Smoking a Joint* in his Instagram work *Untitled* constitutes fair use as a matter of law; that the related Catalog, Billboard and Twitter Compilation are also protected fair use; and that Prince was

granted an implied license by Graham.  Each of these arguments fails on the facts and the law.

Indeed, no reasonable jury could find that Defendant's use of Plaintiff's work was fair, such that

summary judgment should be granted in favor of Plaintiff.

 *First*, an analysis of the four statutory fair use factors demonstrates that Prince's

unauthorized commercial copying of nearly the entirety of Graham's photograph was not fair

use.  Prince's work is indisputably commercial, and Graham's copyrighted photograph is plainly

the kind of creative and expressive work entitled to heightened copyright protection.  Prince

copied nearly all of Graham's photograph, including the central features of the work embodying

Graham's creative decisions about the composition of his photograph.  The elements of these

three fair use factors (prong two of Factor 1 (commerciality); Factor 2 (nature of plaintiff's

work); and Factor 3 (amount and substantiality of copying)) are essentially uncontested, though

Prince seeks to downplay their importance to the analysis.  The evidence also demonstrates that

Factor 4 weighs against fair use, as Prince's infringement harms the value of Graham's

remaining limited edition prints, usurps the market for Graham's original work, and usurps the

market for derivative works.

 As for the transformativeness inquiry of the first factor, based on the "reasonable

observer" test and a side-by-side comparison of the two works, the minimal alterations made by

Prince are insufficient to render *Untitled* transformative.  Prince's unobstructed, unaltered,

wholesale copying of Graham's photograph, with the addition of a nonsensical comment and in

the context of Instagram iconography automatically generated by the platform, fails to materially

obscure or alter the original.  Indeed, the works are extremely similar in key aesthetic aspects,

such that no reasonable observer could conclude that *Untitled* imbues the original work with a

new expression, meaning or message.  Faced with this reality, Prince asks the Court to adopt his

newly-invented "reasonable observer with an appreciation of art" test and to consider his newly-invented subjective intent in creating *Untitled*.  However, the test Defendant asks this Court to adopt is not the law, and much of Prince's post hoc justification in his declaration is at odds with Prince's sworn testimony at his deposition.  Furthermore, Prince's belated effort to invoke a parody/satire defense fails under Second Circuit precedent, which makes clear that the copyrighted work itself must be the object of the parody, not merely a replaceable aspect of a broader social critique.

*Second*, Prince's copying of Graham's photograph in the Catalog and Billboard is also not fair use for the same reasons that *Untitled* does not constitute a fair use.  Prince's argument that the Catalog and Billboard are historical artifacts "of a significant art show" is unsupported by the caselaw he cites, which addresses works in museums and biographies, not exhibition-related materials displayed to promote awareness and sales of commercial artwork. Prince's argument that his copying on the Billboard and Twitter Compilation is *de minimis* is similarly unfounded, as the photograph on the Billboard was a massive reproduction displayed over a heavily trafficked Manhattan highway, and the Twitter Compilation was distributed to Prince's approximately 24,000 Twitter followers—hardly the trivial uses that the *de minimis* doctrine is designed to protect.

*Third*, Prince argues that by posting content on social media, Graham thereby granted a license to *every other user* on that platform to do what they wish with his copyrighted content.  This argument has no basis in the Terms of Use of these platforms or in the law of implied license, which limits such licenses to extremely narrow circumstances where there is a meeting of the minds between both parties and the copyright owner intends for the secondary user to copy his work without liability for infringement.

A review of the works themselves, coupled with the evidence adduced in discovery, makes clear that Prince's unauthorized, unlicensed copying of nearly the entirety of Graham's photograph is not fair use.  Prince's unsupported application of the wrong legal test and his inconsistent testimony on his subjective intent are insufficient to overcome this conclusion.  Accordingly, Plaintiff hereby asks the Court to enter summary judgment for Plaintiffs and against Defendant on the issue of fair use pursuant to Federal Rule of Civil Procedure 56(f).[1]  At an absolute minimum, Plaintiff has adduced ample evidence that *Untitled* is not transformative such that there are genuine issues of material fact foreclosing judgment in favor of Defendant, and Defendant's motion for summary judgment should be denied.

## **STANDARD OF REVIEW**

Under Rule 56(c) of the Federal Rules of Civil Procedure, a movant is entitled to summary judgment only if he can demonstrate that there is no genuine issue as to any material fact.  In considering a motion for summary judgment, the court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought." *Heyman v. Commerce & Indus. Ins. Co.*, 524 F.2d 1317, 1320 (2d Cir. 1975).  "Only when no reasonable trier of fact could find in favor of the nonmoving party should summary judgment be granted." *Cruden v. Bank of New York*, 957 F.2d 961, 975 (2d Cir. 1992).

Many courts have explained that, "as a mixed question of law and fact, the issue of whether an alleged infringement constitutes fair use is usually unsuited to summary disposition."  *Byrne v. British Broad. Corp.*, 132 F. Supp. 2d 229, 233 (S.D.N.Y. 2001).  As the Second Circuit has noted, "[e]valuation of the statutory fair use factors in a particular case is

---

[1] Fed. R. Civ. P. 56(f) states in pertinent part: "After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant".

obviously a fact specific inquiry for which summary judgment is ill-suited." *Assoc. of Am. Med. Colleges v. Cuomo*, 928 F.2d 519, 524 (2d Cir. 1991) (citation omitted).

## COUNTERSTATEMENT OF FACTS

The facts pertinent to this memorandum of law are described in detail in Plaintiff's Response to Defendant Prince's Statement Under Local Civil Rule 56.1 and Counterstatement of Material Facts submitted herewith.[2]

## ARGUMENT

## I.    PRINCE'S COPYING OF GRAHAM'S PHOTOGRAPH WAS NOT FAIR USE

Not only should summary judgment not be entered in favor of Defendants on fair use grounds, but also Defendants' fair use defense fails as a matter of law.  An analysis of the four statutory fair use factors demonstrates that Prince's unauthorized commercial copying of nearly the entirety of Graham's photograph was not fair use.  *See* 17 U.S.C. § 107.  Accordingly, summary judgment should be entered in Plaintiff's favor on the issue of fair use.  At a minimum, genuine issues of material fact exist as to whether Prince's use of Graham's photograph constitutes fair use, and Defendant's motion for summary judgment should be denied.

### A.    The Purpose and Character Factor Weighs Against Fair Use

The first statutory factor examines the purpose and character of the secondary use, which lies at the "heart of the fair use inquiry."  *On Davis v. The Gap, Inc.*, 246 F.3d 152, 174 (2d Cir. 2001), as amended (May 15, 2001).  This factor assesses the extent to which a secondary work is "transformative," meaning that it manifests a "fundamentally different aesthetic" than the original work, *Cariou v. Prince*, 714 F.3d 694, 708 (2d Cir. 2013), and alters the original "with new expression, meaning, or message."  *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569,

---

[2] References to "COF" are to the Counterstatement of Material Facts contained in Plaintiff's Response to Defendant Prince's Statement Under Local Civil Rule 56.1 and Counterstatement of Material Facts.

579 (1994).  The first factor also examines whether the secondary use is of a commercial nature or for nonprofit educational purposes, assigning "a higher value to a use that serves 'nonprofit educational purposes' than to one of a 'commercial nature.'"  *Twin Peaks Prods., Inc. v. Publ'ns Int'l, Ltd.*, 996 F.2d 1366, 1374 (2d Cir. 1993).

### 1.  Prince's *Untitled* is Not Transformative As a Matter of Law

As the Second Circuit has noted, to be transformative a secondary work must in some way alter the character of the copyrighted work itself, "[o]therwise, any play that needed a character to sing a song, tell a joke, or recite a poem could use unaltered copyrighted material with impunity, so long as the purpose or message of the play was different from that of the appropriated material."  *TCA Television Corp. v. McCollum*, 839 F.3d 168, 180 (2d Cir. 2016), *cert. denied*, 137 S. Ct. 2175 (2017).  When "a substantial portion of the infringing work was copied verbatim from the copyrighted work," such use "may reveal a dearth of transformative character or purpose under the first factor."  *Campbell*, 510 U.S. at 587.

### (a)  *Untitled* Would Not Be Perceived as Transformative by a Reasonable Observer

As discussed further in the *McNatt* Opposition (page 11), Defendant argues that the *New Portraits* series is transformative because the works "'employ[] new aesthetics' through a variety of techniques".  (Graham Mot. at 10; McNatt Mot. at 20.)[3]  Defendant asserts that "given Prince's prominence in the art world, the *New Portraits* become much more about his comments than they do the images" (McNatt Mot. at 20), and that "Prince's comments and aesthetic changes further alter viewer reaction provoked by the Photograph."  (Graham Mot. at

---

[3] Citations to "Graham Mot." refer to the Memorandum of Law in Support of Defendant Richard Prince's Motion for Summary Judgment filed on October 5, 2018 in this action.  (*Graham* ECF 131.)  Citations to "McNatt Mot." are to the Memorandum of Law in Support of Defendants' Motion for Summary Judgment filed on October 5, 2018 in the *McNatt v. Prince* action.  (*McNatt* ECF 125.)

11.)  As to the "reasonable observer" test, Prince "submits"—without any legal authority—"that in the art context, the transformativeness of a work should be assessed through the lenses of a person who has general interest in and appreciation of, but not specialized knowledge of, the arts." (McNatt Mot. at 21.)  Prince contends that such an observer "would have no difficulty discerning Prince's messages related to the social medial phenomenon" in *Untitled*, and therefore *Untitled* should be considered transformative.  (Graham Mot. at 12.)

       Defendant seeks to rewrite the relevant legal standard of the "reasonable observer" test in this Circuit and attempts to aggrandize the minimal aesthetic alterations made to Plaintiff's copyrighted work in *Untitled*, which this Court previously found to be insufficiently transformative as a matter of law.  Both of these efforts fail on the law.  There is no legal basis for Prince's assertion that the "reasonable observer" should be defined as a person with an interest in and appreciation of the arts, and, tellingly, Defendant cites none in his Motion.  As the Second Circuit in *Cariou* made clear, "[w]hat is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work."  714 F.3d at 707.  The court noted that "[r]ather than confining our inquiry to Prince's explanations of his artworks, we instead examine how the artworks may 'reasonably be perceived' in order to assess their transformative nature."  *Id.*  Courts in this circuit employ the term "reasonable observer" interchangeably with "casual observer" and "average lay observer," not a subset of observers with any particular interest area or artistic appreciation.  *See N. Jersey Media Grp. Inc. v. Pirro*, 74 F. Supp. 3d 605, 615 (S.D.N.Y. 2015) (finding that the plaintiff's photograph "is the clearly predominant feature of the Combined Image.  Thus, *a casual observer* may believe that he is simply viewing the Work with only the hashtag added.  Second Circuit authority suggests that more is required to 'transform' an image." (emphasis added)); *see also*

*Warner Bros. Inc. v. Am. Broad. Companies, Inc.*, 720 F.2d 231, 244 (2d Cir. 1983) (framing the relevant test as the interpretation of an "average lay observer").[4]

       When the correct standard is applied, viewing the two works side-by-side, a reasonable observer would not conclude that *Untitled* fundamentally alters the aesthetics of *Rastafarian Smoking a Joint* such that it embodies an entirely different, transformative character. (COF ¶¶ 102-114; Ex. 9 (Bogre Rpt.) ¶ 47; *see also* Ex. 11 (Harrison Rpt.) at 8 (opining that "[a] reasonable observer would not derive some 'intellectual transformation' of Plaintiffs' Works by virtue of seeing them in the form presented by the Prince Works" (citation omitted).)  In Prince's *Untitled*, Graham's "original artistic expression remain[s] fundamentally intact to the reasonable observer because the physical alteration is so minimal and lacking in new meaning."  (Ex. 11 (Harrison Rpt.) at 9; COF ¶¶ 83-91.)  As this Court observed in its prior opinion, "*Untitled* is certainly no more transformative than the five works in *Cariou* that the Court of Appeals remanded to the district court."[5]  *Graham v. Prince*, 265 F. Supp. 3d 366, 380 (S.D.N.Y. 2017).  Based on a side-by-side comparison of Graham's photograph *Rastafarian Smoking a Joint* and Prince's *Untitled*, "it is evident that Prince's work does *not* belong to a class of secondary works that are so aesthetically different from the originals that they can pass the Second Circuit's 'reasonable viewer' test as a matter of law."  *Id.*; *see also id.* at 381 ("The primary image in both works is the photograph itself.  Prince has not materially altered the 'composition, presentation, scale, color palette, and media' originally used by Graham.  In fact, the 'alterations' Prince made in this case are materially less significant than those that were found to be insufficiently

---

[4] *Cf. Well-Made Toy Mfg. Corp. v. Goffa Int'l Corp.*, 210 F. Supp. 2d 147, 161 (E.D.N.Y. 2002) (explaining that the "test for determining whether two works are substantially similar for the purposes of infringement is that of the 'ordinary observer.'  This 'ordinary observer' is sometimes referred to as an 'average lay observer', or a 'reasonable observer.' . . . This is an objective criterion.  It invokes some supposedly general sensibility, rather than the perceptions of any particular audience.").

[5] See *McNatt* Opposition at page 14, footnote 6 for a discussion of the *Cariou* decision and its implications for the fair use analysis in this case.

transformative to clearly warrant a finding of fair use in *Cariou*.") (citation omitted).

The discovery record confirms that the Court's statements at the motion to dismiss stage remain just as accurate and dispositive now on Prince's motion for summary judgment.  (COF ¶¶ 59-114.)  Discovery has confirmed that the "contribution" Prince made to *Untitled* was simply his nonsensical comment (COF ¶ 63), and that every other element in the work—the photograph of *Rastafarian Smoking a Joint*, Rastajay92's profile picture and username, Rastajay92's comment, the number of "likes" and the "3W"—already existed when Prince came upon the image on Rastajay92's Instagram page.  (Ex. 38 (Prince Tr.) 119:1-121:4.) Prince testified that the comment he made on Instagram was "gobbledygook" (COF ¶ 93), and confirmed that he made no physical alterations to the work after it was printed.  (COF ¶ 63.)  The words Prince added to the *New Portraits*, "in all their ambiguous if not nonsensical phrasing, are secondary to the Graham photograph."  (COF ¶ 85.)  The "core visual identity" of Prince's work is Graham's photograph (COF ¶ 134), and the fact that Prince "printed his screen grabs to canvas does not change the fact that the dominant image[] in the Prince Work[]" is *Rastafarian Smoking a Joint*.  (COF ¶ 82.)  As Defendants' expert observes, the "photograph[] is unobscured by any other mark, element, collage, words . . . on the surface of the image." (COF ¶ 67.)

The "minimal alterations" that Prince claims to have made in *Untitled*, including adding a comment, printing the image "out of focus", using a "color tint" and changing the scale of Graham's *Rastafarian Smoking a Joint*, have all been found to be insufficient to establish that a secondary work is transformative as a matter of law.  *See Cariou*, 714 F.3d at 711 (finding blue tint, soft focus, and various other elements which "make the subject appear anonymous" and "change the tenor of the piece" insufficient to render secondary works transformative as a matter of law); *see also Pirro*, 74 F. Supp. 3d at 615 (finding that Defendant's post and comment on

-9-

social media containing a "(1) cropped, (2) lower-resolution version of [plaintiff's] Work,
(3) which was juxtaposed with Raising the Flag on Iwo Jima and (4) in a smaller scale than the
Work, and (5) added the phrase '# neverforget'" was not transformative as a matter of law).[6]
And the distinction between the media of the completed works (inkjet printing on canvas vs.
photograph) is of no consequence, as courts have routinely discounted far more pronounced
distinctions in rejecting fair use arguments.  *See, e.g.*, *Rogers v. Koons*, 960 F.2d 301, 304, 309-
10 (2d Cir. 1992) (sculpture copying postcard); *Castle Rock Entm't, Inc. v. Carol Pub. Grp., Inc.*,
150 F.3d 132, 143 (2d Cir. 1998) (trivia book copying television series); *Gaylord v. United
States*, 595 F.3d 1364, 1368 (Fed. Cir. 2010) (postage stamp copying sculpture).

      Viewed from the perspective of a reasonable observer conducting a side-by-side
assessment of the two works, the evidence is clear that no reasonable jury could find *Untitled* to
be transformative, and summary judgment should be entered in Plaintiff's favor.  At an absolute
minimum, there exist genuine issues of material fact as to whether Prince's minimal alterations
of Graham's photograph in *Untitled* constitutes a fair use of *Rastafarian Smoking a Joint*.

      **(b)**    **Prince's Post Hoc Rationalization of the Purpose of *Untitled*
Contradicts His Testimony and Fails Under Prevailing Second
Circuit Law**

      In his motion, Prince seeks to imbue *Untitled* with a transformative meaning and
purpose, claiming that the intent of the *New Portraits* series was to "provide commentary on the
manner in which people today communicate, present themselves, and relate to one another
through social media" (McNatt Mot. at 17 (citation omitted)), and that this purpose is "a world
away from Graham's purpose in making the Photograph."  (Graham Mot. at 9.)  Prince's

---

[6] Prince's slight alterations in *Untitled* stand in stark contrast to the secondary work in *Blanch v. Koons*, 467
F.3d 244 (2d Cir. 2006), where the copyrighted image was incorporated into a "massive collage painting featuring
three other pairs of women's legs" and Koons had also altered the image's "colors, the background against which it
is portrayed, the medium, the size of the objects pictured, [and] the objects' details."  As this Court previously noted,
"No similar aesthetic alterations are present in *Untitled*."  *Graham*, 265 F. Supp. 3d at 381.

subjective intent is insufficient to transform Graham's photograph, and his newfound parody defense fails as a matter of law.  *See Graham*, 265 F. Supp. 3d at 382 (noting that an artist's stated intent, while not irrelevant, is "not dispositive"); *see also Blanch*, 467 F.3d at 255 n.5 (an artist's justification is not the "*sine qua non* for a finding of fair use").  Moreover, the tension between Prince's declaration and his prior testimony undermines the credibility of his post hoc justification.

The pre-litigation statements made by Prince about his *New Portraits*, as well as his deposition testimony in this case, stand in stark contrast to the declaration Prince submitted in support of his summary judgment motion—with its verbose description of Prince's process in creating the *New Portraits* and its explanation of the significance and satire embodied in Prince's commentary.  While Prince now claims that his comments on the Instagram posts are "imbued with layers of meaning" (COF ¶ 92), Prince previously testified that his comments were merely "gobbledygook" (*id.* ¶ 93); ██████████████████████████████ ██; and conceded that, "It sounds like it means something.  What's it mean?  I don't know." (*Id.*)  Similarly, Prince now describes his purpose in creating the *New Portraits* was "to make people think about the way we present ourselves to the world through social media" (COF ¶ 92), to "confront the broader truths of this new world" (*id.*), and to "satirize and provide commentary on the manner in which people today – all people – communicate, present themselves, and relate to one another through the new technology of social media" by making "a parody of the entire post".  (*Id.*)  However, when asked at his deposition whether he was "making any comment on the image of the Rastafarian" in the Instagram post or "offering any criticism of social media by his work" in *Untitled*, Prince testified unequivocally that he was not.  (Ex. 38 (Prince Tr.) 143:2-5; COF ¶ 94.)  Instead, Prince testified that the message he was trying to convey through *Untitled*

was "to have fun" and "to make people feel good."  (Ex. 38 (Prince Tr.) 143:11-17; COF ¶ 94.)
These fundamental discrepancies raise genuine issues of material fact.

        The Second Circuit rejected this very type of post hoc rationalization of social
critique under the guise of satire or parody in *Rogers v. Koons*, 960 F.2d 301, 309 (2d Cir. 1992).
In that case, Jeff Koons copied a photograph entitled "Puppies," taken by photographer Art
Rogers, to create his sculpture "String of Puppies."  *Id.* at 304-05.  Koons argued that his
sculpture was "a satire or parody of society at large.  [Koons] insists that 'String of Puppies' is a
fair social criticism and asserts to support that proposition that he belongs to the school of
American artists who believe the mass production of commodities and media images has caused
a deterioration in the quality of society."  *Id.* at 309.  In assessing whether Koons' copying of the
photograph was fair use, the court explained that while the secondary work may be a "parody of
modern society," it is "the rule in this Circuit" that the copied work *itself* must also be an object
of the parody:  "We think this is a necessary rule, as were it otherwise there would be no real
limitation on the copier's use of another's copyrighted work to make a statement on some aspect
of society at large.  If an infringement of copyrightable expression could be justified as fair use
solely on the basis of the infringer's claim to a higher or different artistic use—without insuring
public awareness of the original work—there would be no practicable boundary to the fair use
defense."  *Id.* at 310.  Thus, the court found that while "String of Puppies" may have been "a
satirical critique of our materialistic society," because the copyrighted photograph itself was not
the object to the alleged parody, Koons' copying did not constitute fair use.  *Id.*; *see also McNatt*
Opp. at 19-20 (discussing *United Feature Syndicate, Inc. v. Koons*, 817 F. Supp. 370, 383-84
(S.D.N.Y. 1993) and *TCA Television*, 839 F.3d at 179, 182).

        Here, Prince's attempt to defend his infringement of Graham's copyrighted

photograph under the guise of social commentary and parody is similarly unavailing.  As

discussed above, Prince's current justification of the purpose of his work is contradicted by his

sworn deposition testimony and other statements in the record, in which Prince disavowed that

*Untitled* was a commentary on social media ███████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████  But even assessing Prince's

current declaration on its face, Prince concedes that he "could have used many other images of

Rastafarians that exist online in my painting and it would have had the same visual impact or

value."  (Ex. 51 (Prince Decl.) ¶ 28; COF ¶ 96.)  Prince in no way contends that he is parodying

*Rastafarian Smoking a Joint*, the copyrighted work at issue, and indeed admits that "I did not

always make a parody of the underlying image."  (Ex. 51 (Prince Decl.) ¶ 31; COF ¶ 97.)  Under

controlling Second Circuit precedent, Prince's fair use defense of social commentary and parody

fail as a matter of law, as the photograph itself is not the object of the parody and Prince claims

only to have used the photograph to "make a statement on some aspect of society at large."

*Rogers*, 960 F.2d at 310.[7]

> ### 2. *Untitled* Is a Commercial Work, Which Weighs Against Fair Use

The second prong of the first factor clearly weighs in favor of Graham, as

Prince's *Untitled* is undisputedly a commercial work (COF ¶ 115), and Prince concedes that he

"profited" from its sale.  (Graham Mot. at 13.) ████████████████████████████████

███████████████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

---

[7] Finally, as discussed in Plaintiffs' Motion to Strike filed herewith, Plaintiff contends that expert testimony is not necessary to resolve the question of transformativeness in this case, as it is evident from a side-by-side review of the works that Prince's *Untitled* is not transformative.  However, to the extent the Court finds that the opinions of Defendants' experts are admissible, the opinions of Plaintiffs' responsive experts should properly be considered as well, as each of Plaintiffs' experts responds to and rebuts the opinions proffered by Defendants' experts.

████████████████████████████

Given the limited public benefit derived from this short exhibition, the second part of the first factor weighs against fair use.

### B.      The Nature of the Work Factor Weighs Against Fair Use

The second statutory factor also weighs in Graham's favor and against a finding of fair use.  This factor assesses the "nature of the copyrighted work", 17 U.S.C. § 107(2), and courts have explained that fair use is "more difficult to establish" when a copy is made of works that are expressive or creative, and thereby closer to the "core of intended copyright protection". *Campbell*, 510 U.S. at 586.  Defendant argues that *Rastafarian Smoking a Joint* is intended to "authentically captur[e] its subject" and that this goal in some way renders the photograph "largely factual." (Graham Mot. at 14-15.)  However, it is clear to any viewer that Graham's photograph is expressive and creative—indeed, Defendants assert that none of their experts have opined "that plaintiffs' works are 'not art' or are 'not creative or expressive'" (Dkt. 121 at 5), and "Prince does not dispute that the Photograph is worthy of copyright protection." (Graham Mot. at 14.)  *Rastafarian Smoking a Joint* embodies the creative decisions and artistic efforts of a professional photographer, who made authorial choices about its black and white composition and the mood he was seeking to create through the photograph.  (Ex. 31 (Graham Tr.) 233:23-234:17; COF ¶¶ 118-124, 126, 128-132.)  The photograph shows "pathos, interesting artistic choices in subject, lighting, framing, and intact-ness." (COF ¶ 128.)  The fact that Graham seeks truth and authenticity from his subjects, aiming to create a portrait of "a person when they are not trying to be something for the camera," does not deprive Graham's work of creativity and expressiveness.  (*Id.*)[8]

---

[8] The published nature of a work of art is afforded only "a bit" of weight in the fair use analysis.  *Lennon v. Premise Media Corp.*, 556 F. Supp. 2d 310, 325 (S.D.N.Y. 2008).  Where the original work is creative and

C.     <u>The Amount and Substantiality Factor Weighs Against Fair Use</u>

The third fair use factor also weighs against fair use, as it is undisputed that Prince used a significant amount—nearly the entirety—of Graham's photograph in *Untitled*.  (COF ¶ 61.)  As this Court previously noted, "[v]erbatim copying of an entire copyrighted work militates against a finding of fair use."  *Graham*, 265 F. Supp. 3d at 383.  In his motion, Defendant argues that use of the "entire source photograph[s]" can still be found to be fair use depending on the transformativness and purpose of the secondary work, relying on the Second Circuit's decision in *Cariou*.  (Graham Mot. at 15 (citing *Cariou*, 714 F.3d at 710).)  What Defendant omits, however, is that the *Cariou* court went on to explain that critical to its reasoning was the fact that "the entire source photograph is used but is also heavily obscured and altered to the point that Cariou's original is *barely recognizable*".  *Cariou*, 714 F.3d at 710 (emphasis added).  The court found that in another work where Prince used Cariou's photograph "in whole or substantial part" but "did not alter the source photograph very much at all," Prince's copying did not constitute fair use.  *Id.*  The other cases Defendant relies on are similarly distinguishable.  (*See McNatt* Opp. at 24-25 (distinguishing *Bill Graham Archives* and *Blanch*).)

No extraction, alteration, or minimization of expressive value occurred in this case.  (COF ¶¶ 134, 136.)  Here, Prince copied nearly the entirety of Graham's photograph, capturing the subject's face, hair, cigarette, hands and torso, as well as the negative white space behind the subject.  *Rastafarian Smoking a Joint* is completely and undeniably recognizable in Prince's *Untitled*, constituting the majority of Prince's work and including wholesale reproduction of the aspects of the photograph "whose power lies in" Graham's "individualized expression", including printing it in approximately the same size and scale as Graham's original work.  *Blanch*, 467 F.3d at 257-58.

expressive, publication does not alter the analysis and this factor weighs against fair use.  *Gaylord*, 595 F.3d at 1374.

**D.**   <u>**The Market Effect Factor Weighs Against Fair Use**</u>

The fourth factor of the fair use analysis examines "the effect of the use upon the potential market for or value of the copyrighted work".  17 U.S.C. § 107(4).  "Under current law, plaintiffs need not show that their [works] have suffered an actual drop in sales.  To negate fair use one need only show that if the challenged use should become widespread, it would adversely affect the *potential* market for the copyrighted work," including both original and derivative markets. *Penguin Random House LLC v. Colting*, 270 F. Supp. 3d 736, 752 (S.D.N.Y. 2017) (quotation omitted; emphasis added).

**1.**   **The Market Effect Factor Is Not Entitled to Greater Weight than the Other Fair Use Factors**

As discussed in the *McNatt* Opposition (page 26), the Second Circuit has explained that the market effect factor is no longer given any greater weight in the fair use analysis.  *See Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 926 (2d Cir. 1994) (citing *Campbell*, 510 U.S. at 578).  Furthermore, the market effect factor is informed by the transformativeness inquiry, as "[t]he more transformative the secondary use, the less likelihood that the secondary use substitutes for the original." *Cariou*, 714 F.3d at 709.  Accordingly, where the transformativeness factor—the "heart of the fair use inquiry"—and the weight of the other factors compel a finding that defendant's use was not fair, summary judgment should be entered in plaintiff's favor.  *Graham*, 265 F. Supp. 3d at 377.

**2.**   ***Untitled* Harms the Value of *Rastafarian Smoking a Joint* and Usurps Graham's Primary and Derivative Markets**

Prince's unauthorized copying of nearly the entirety of Graham's photograph harms the value of Graham's copyrighted work, usurps the market for Graham's limited edition prints, and usurps potential derivative markets Graham may pursue by licensing his work.  *See Campbell*, 510 U.S. at 587-88 ("[A] work composed primarily of an original, particularly its

heart, with little added or changed, is more likely to be a merely superseding use, fulfilling demand for the original.").  At a minimum, summary judgment cannot be entered in Defendant's favor, as there are genuine issues of material fact regarding the market effect of Prince's work.

First, Graham committed to creating a limited edition of only eight prints of his fine art photograph in a 4-feet by 5-feet scale.  (COF ¶ 14.)  Prince's wholesale copying of Graham's photograph and his creation of additional prints harms the value of Graham's original limited edition prints, as a potential buyer who sees Prince's work may believe that Graham agreed to license the work and authorized additional prints.  (COF ¶ 139.)  This conclusion by a reasonable observer can harm not only Graham's reputation but also the value of his prints.  (*See* Graham Decl. ¶ 11; Ex. 34 (Bogre Tr.) 343:14-344:24; 346:23-25 ("in the art world when you edition something, you are verifying that you are never going to print more than that" and "if I were considering buying one of Mr. Graham's limited edition prints, which in my understanding as, say an art buyer, is only an edition of 8 and I see suddenly this image on the wall in a Richard Prince piece . . . I would not necessarily want to buy that picture."); COF ¶ 139.)[9]

Second, *Untitled* usurps the market for Graham's photograph, as Prince's work on canvas is nearly identical in size to Graham's 4-foot by 5-foot series of prints, with the largest, most prominent image in both being the unobscured black and white photograph of *Rastafarian Smoking a Joint*.  *See* Ex. 9 (Bogre Rpt.) ¶ 40; *see also Graham*, 265 F. Supp. 3d at 385 (noting the potential substitutability of Prince's *Untitled* and the Catalog for *Rastafarian Smoking a Joint* because "they present the entirety of Graham's photograph in the same sizes in which the

---

[9] The value of Graham's fine art photograph has also "been compromised by the notoriety of Mr. Prince's unauthorized derivative work."  (COF ¶ 147.)  Prince claims not to copy from real artists and that he knows "every artist in the world of any consequence" (Ex. 38 (Prince Tr.) 48:13-18; 229:23-230:9; COF ¶ 140), so his copying of Graham's work and the implied statement on the value of Graham's photograph "could certainly have the effect of depressing the market value of [this work] in particular and [Graham's] past, present, and future creative outputs in general."  (Ex. 10 (Coleman Rpt.) ¶ 48; *see McNatt* Opp. at 26-27.)

photograph is sold by Graham, without obstructing or distorting it in any physical sense"). Graham and Prince both exhibit their fine artwork in art galleries and museums, and sell their works to fine art collectors. (Graham Decl. ¶ 10; COF ¶ 161.) Graham has sold limited edition prints from his own studio and at A. Galerie, a "noted Paris-based gallery for contemporary photography and an off-shoot of the more well-known Acte 2 gallery, created 'to present the most influential photography masters.'" (COF ¶ 147.) One of the limited edition prints of *Rastafarian Smoking a Joint* was sold to Henry Buhl, a prominent collector of fine art. (*Id.*; Graham Decl. ¶ 10.) Accordingly, in the market for fine art photography, Prince's infringing work has the potential to usurp the original market for Graham's prints. (COF ¶¶ 147, 158-161.)

Third, Defendant's "activities on their face invade plaintiffs' statutory right to license their copyrighted [work] to others for reproduction." *UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352 (S.D.N.Y. 2000). As the Second Circuit has explained, a non-transformative secondary work causes market harm through the failure of the infringer to pay a licensing fee. *On Davis*, 246 F.3d at 176. Graham testified that had Prince asked to license Graham's photograph in his *New Portraits*, "we would have entered into a negotiation, and if we had reached a fair negotiation, I would have – I would have allowed it." (COF ¶ 162; *see also* Graham Decl. ¶ 14.) Accordingly, Prince's unauthorized taking of Graham's photograph usurped the market for a license to the photograph, which Graham confirmed he would have been willing to grant to Prince had he been asked.[10]

---

[10] Prince's copy also "usurps the derivative use market for [Graham's] Works as screen shots of an Internet post, should a curator consider producing an exhibition of work posted on Instagram." (COF ¶ 152; Graham Decl. ¶ 15.) The harm to Graham's potential market for derivative works is cognizable "even if the copyrightholder had not yet entered the new market in issue, for a copyrightholder's 'exclusive' rights, derived from the Constitution and the Copyright Act, include the right, within broad limits, to curb the development of such a derivative market by refusing to license a copyrighted work or by doing so only on terms the copyright owner finds acceptable." *UMG*, 92 F. Supp. 2d at 352.

### 3.   Defendant's Additional Market-Related Arguments Do Not Bear Scrutiny

Defendant attempts to bolster his market harm-related arguments with additional contentions about Graham's rights to sell the photograph and about the sale price of Graham's prints.  Neither of these contentions is supported by the evidence or the law.

### (a)   Graham Obtained Permission from the Model to Take and Sell His Photograph

Defendant contends that Graham lacks the necessary rights to sell his photograph and that "any alleged harm caused by Prince's use of the Photograph would be to an illegitimate market."  (Graham Mot. at 17.)  Defendant is mistaken.  Putting aside the question of whether such permission is necessary, the man pictured in *Rastafarian Smoking a Joint* gave Graham his permission to take his photograph as part of body of work that Graham was creating, with the understanding that the photograph would be made available for publication and sale.  (COF ¶ 163.)  As Graham has explained, "We had a conversation and he agreed to be photographed under the conditions that I explained to him."  (Ex. 31 (Graham Tr.) 116:25-117:2.)[11]  As Defendants' expert concedes, a non-written release is enforceable under Jamaican law (COF ¶ 165), and Defendant offers no evidence that the model did not understand what he discussed with Graham or in any way refused his consent to be photographed.  (COF ¶ 166.)

### (b)   Prince's Impact on Sales of Graham's Photograph Is Irrelevant and Unsupported by Evidence

Defendant's arguments that Graham earned more for sales of his work after Prince's infringement is irrelevant to the market impact analysis, and it says nothing about whether there is any causal relationship between these events.  Defendants' expert concedes that

---

[11] Graham testified that he specifically recalls telling the man that one of the purposes of taking the photograph was to re-sell the photo for money, the man understood that Graham would publish and sell the photograph, and the man gave Graham permission to photograph him with that understanding.  (COF ¶ 164.)  *See also* McNatt Opp. 29-30 discussing a copyright owner's right to "use of plaintiffs' likenesses" where it does "not extend beyond the use of the copyrighted material."  *Maloney v. T3Media, Inc.*, 94 F. Supp. 3d 1128, 1137 (C.D. Cal. 2015).

he has no "evidence that any purported increase in Mr. Graham's . . . fame has led to an increase

in sales of [his] work." (COF ¶ 167.)  Indeed, as Graham testified at his deposition, the increase

in price of later prints is a function of the pre-set tiered pricing structure of editions (COF ¶ 168),

and has nothing to do with Prince or his infringement.  In any event, "[a]ny allegedly positive

impact of defendant's activities on plaintiffs' prior market in no way frees defendant to usurp a

further market that directly derives from reproduction of the plaintiffs' copyrighted works."

*UMG*, 92 F. Supp. 2d at 352.

E.    **None of Defendant's Extraneous Arguments Favor Fair Use**

Defendant's argument that *Rastafarian Smoking a Joint* was posted online

without a copyright notice or watermark is irrelevant to the fair use inquiry.  As an initial matter,

as discussed in Plaintiff's Counterstatement of Material Facts, Donald Graham's websites

portraying *Rastafarian Smoking a Joint* very clearly include a copyright notice on each webpage

containing the photograph.  (COF ¶ 16.)  But even if the photograph did not include a notice or

watermark, Defendant's argument has been flatly rejected with respect to works that were

published after the Berne Convention Implementation Act of 1988, which eliminated the notice

requirement completely.  *See Direct Mktg. of Virginia, Inc. v. E. Mishan & Sons, Inc.*, 753 F.

Supp. 100, 104 n.8 (S.D.N.Y. 1990) ("works first published after March 1, 1989 need not bear a

notice of copyright as a precondition to copyright protection").  *Rastafarian Smoking a Joint* was

first published in 1998, and as such its digital reproduction without a notice in no way impacts its

protection under copyright law or the fair use analysis.  (COF ¶ 13.)

Similarly, Graham's decision not to pursue an infringement action against

Instagram users like Indigoochild or Rastajay92 has no bearing on his rights in his photograph or

his ability to prosecute Prince's commercial exploitation of his work.  *See UMG*, 92 F. Supp. 2d

at 352-53 ("plaintiffs have reasonably exercised their right to determine which infringers to

pursue, and in which order to pursue them"). There is no requirement in copyright law "that a plaintiff must sue all infringers who may be liable," *Broad. Music, Inc. v. Peppermint Club, Inc.,* No. 83 Civ. 694, 1985 WL 6141, at *4 (N.D. Ohio Dec. 16, 1985), and Graham's direction of resources at the most flagrant offenders who profited off of his work in no way impacts the fair use analysis.

## II.   THE CATALOG, BILLBOARD AND TWITTER COMPILATION WERE ALSO NOT FAIR USE

Defendant's arguments as to the three additional instances of infringement also fail and summary judgment should be granted in Plaintiff's favor. At the least, genuine issues of material fact preclude the entry of summary judgment in Defendant's favor.

### A.   Gagosian Exhibition Catalog

During the approximately one month exhibition of Prince's New Portraits, the Gagosian Gallery created and distributed copies of a Catalog to the *New Portraits* Exhibition, containing an image of Prince's *Untitled* alongside images of the 36 other *New Portraits* works. (COF ¶ 45.) The reproduction of *Rastafarian Smoking a Joint* in the Catalog does not constitute fair use for the same reasons as *Untitled* fails the fair use test. Defendant's further argument that the Catalog constitutes a fair use because of its status as part of "a historical record" is also without merit. Defendant's reliance on *Bouchat v. Baltimore Ravens Ltd. Partnership* is misplaced, as in that case a team logo was found to be fair use when reproduced in a historical "museum-like setting" that was "dedicated to the history of the team", was free of charge and had no commercial purpose. 619 F.3d 301, 313-14 (4th Cir. 2010). The other case Defendant relies on, *Bill Graham*, is also clearly distinguishable, as the secondary work in that case was a "biographical work" and in finding fair use, the court explained that "courts have frequently afforded fair use protection to the use of copyrighted material in biographies." 448 F.3d at 609.

███████████████████████████████████████████████████████

████████████████████████████████████████████ ▪

**B.** **Billboard**

█████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████████████████ Again, the

fair use analysis of the Billboard turns on the analysis of *Untitled*, and again, Defendant

unsuccessfully attempts to pass off the Billboard as fair use on the ground that it was a

"historical representation." (Graham Mot. at 23.)  For the same reasons articulated above,

*Bouchat* and *Bill Graham* do not support Defendant's argument, given that those cases addressed

fair use in the context of a historical museum and a biography, respectively.  Through the

Billboard, Price re-displayed his commercial artwork, drawing further attention to the *New

Portraits* collection.  (*See* Ex. 36 (Harrison Tr.) 180:20-181:5, 181:23-182:3 (testifying that the

Billboards appear to be "pure promotion" to increase the "brand awareness" of Prince amidst the

"buzz" of the *New Portraits*); COF ¶ 49.) █████████████████████████

███████████████████████████████████████████████████

Defendant also argues that the copying on the Billboard should be protected as *de

minimis* use based on the contention that Graham's *Rastafarian Smoking a Joint* "comprises

approximately less than 10% of the Billboard." (Graham Mot. at 23.)  This argument misses the

point of the *de minimis* doctrine.  The *de minimis* doctrine protects insignificant instances of

copying where there is "a technical violation of a right so trivial that the law will not impose

legal consequences" or where the copying falls "below the quantitative threshold of substantial

---

██ ████████████████████████████████████████████████
█████████████████████████████████████

similarity." *Ringgold v. Black Entm't Television, Inc.*, 126 F.3d 70, 74 (2d Cir. 1997).  Here,

Prince included 100% of the image of *Untitled* (which, as previously discussed, includes the vast

majority of *Rastafarian Smoking a Joint*) as one of only seven portraits that Prince chose to

feature on a huge billboard above a heavily trafficked New York City thoroughfare.  This very

large, very public display of a significant portion of Graham's copyrighted work does not fall

within the category of a "*de minimis* act of copying to which the law attaches no consequence."

*On Davis*, 246 F.3d at 173.

       **C.**     **Twitter Compilation**

       Defendant argues that the Twitter Compilation was a "non-commercial

commentary, over social media" and therefore the type of "'trifle' which is not actionable

copying."  (Graham Mot. at 21.)  This argument is ironic, given that it appears to downplay the

importance of communication via social media outlets, while Prince simultaneously attempts to

portray *Untitled* as a deeply meaningful commentary on this groundbreaking form of

communication.  Putting that contradiction aside, Defendant's argument that the tweet is *de

minimis* fails on the law, as the public display of the heart of Graham's photograph to Prince's

approximately 24,000 Twitter followers cannot plausibly be said to constitute a trivial "technical

violation" of Graham's rights.  *See* COF ¶ 51; *c.f. Ringgold*, 126 F.3d at 74.[13]

       Defendant also seeks to defend the Twitter Compilation as a fair use for the

reasons they contend *Untitled* is fair use, and separately as a "comment on the instant lawsuit."

(Graham Mot. at 22.)  First, as Prince concedes, the Twitter Compilation contains a "copy of a

portion of the *Rastafarian Smoking a Joint* photograph" (COF ¶ 50), not a copy of *Untitled*, and

---

[13] Indeed, the entire case of *North Jersey Media Group Inc. v. Pirro* involved a "non-commercial commentary, over social media"—a Facebook post by Fox News of Plaintiff's photograph combined with another photograph, along with the comment "# neverforget".  74 F. Supp. 3d at 610-11.  Far from finding that Defendant's use in that case was *de minimis*, the court denied Defendant's motion for summary judgment on fair use.  *Id.* at 623.

none of the Instagram iconography contained in *Untitled* is visible in the Tweet. Accordingly, Prince's arguments about the transformativeness or fair use of *Untitled* do not apply to the Twitter Compilation. Second, once again Prince's current declaration conflicts with his sworn deposition testimony. While Prince now claims that "[t]he tweet was my way of commenting on the current lawsuit" (Ex. 51 (Prince Decl.) ¶ 35), at his deposition Prince testified that he was not aware of having "tweeted about the subject matter of the lawsuits" and that through this Twitter Compilation he was "making a comment on the fact that I didn't make the montage," saying nothing about commenting on the instant lawsuit. (COF ¶ 53.) Again, while summary judgment should be granted in Plaintiff's favor on each of these three infringements, at the least Prince's conflicting testimony creates a genuine issue of material fact.

## III.   GRAHAM DID NOT GRANT PRINCE AN IMPLIED LICENSE

Finally, Defendant argues that Prince's use of Graham's photograph was "pursuant to a non-exclusive implied license" because Graham had previously posted his photograph on Facebook. (Graham Mot. at 24-25.) This argument has no basis in the law of implied license in this Circuit, nor in the language of Facebook's and Instagram's Terms of Use. The Second Circuit has made clear that an implied license "should be found only in narrow circumstances" where a plaintiff created the work at defendant's request and gave it to the defendant, intending that the defendant copy and distribute it. *ABKCO Music, Inc. v. Sagan*, No. 15 Civ. 4025 (ER), 2018 WL 1746564, at *18 (S.D.N.Y. Apr. 9, 2018) (citation omitted).[14] Even in cases where courts have not required that the work be created at Defendant's request, there must be evidence "that *both parties* to the transaction, not just the defendant, intended that

---

[14] *See also Weinstein Co. v. Smokewood Entm't Grp., LLC*, 664 F. Supp. 2d 332, 344 (S.D.N.Y. 2009) ("[O]ur Circuit has followed the lead of other appeals courts and cautioned that implied non-exclusive licenses should be found only in narrow circumstances where one party created a work at [the other's] request and handed it over, intending that [the other] copy and distribute it.") (quotations omitted).

the defendant could use or copy the plaintiff's work without liability for copyright infringement."
*Design Options, Inc. v. BellePointe, Inc.*, 940 F. Supp. 86, 92 (S.D.N.Y. 1996).  As the case
Defendant relies on states, "Ultimately, whichever test is applied, the question comes down to
whether there was a 'meeting of the minds' between the parties to permit the particular usage at
issue."  *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d 103, 124 (S.D.N.Y. 2012).[15]

Plainly, there was never a "meeting of the minds" between Graham and Prince
that Prince could copy Graham's photograph, and nothing in the user policies of Facebook or
Instagram alters this analysis.  As Defendant's own expert concedes, the terms of use for both
Instagram and Facebook "state that any user who posts content on either site grants *the*
*platform*"—*i.e.*, Instagram and Facebook only—a non-exclusive license to host and display
users' content without risk of infringement.  (COF ¶ 174.)  Nowhere do those platforms state that
a user thereby grants a license to *every other user* on any of those websites, and there is no
evidence that Facebook or Instagram sublicensed the content to Prince.  Indeed, the Facebook
Terms of Use explicitly state, "You own the content you create and share on Facebook and the
other Facebook Products you use, and nothing in these Terms takes away the rights you have to
your own content."  (COF ¶ 176.)  Defendant asks this Court to find that any copyright holder
who displays its copyrighted material on a social media platform waives its copyright in the
work—that is plainly not the law, and the Court should not countenance such a sweeping and
unsupported argument.

## **CONCLUSION**

For the foregoing reasons, the Court should grant summary judgment for Plaintiff.
At a minimum, Defendant's motion for summary judgment should be denied.

---

[15] *See also Viacom Int'l Inc. v. Fanzine Int'l Inc.*, No. 98 CIV. 7448 (KMW), 2000 WL 1854903, at *3
(S.D.N.Y. July 12, 2000) (an implied license "protects the licensee only to the extent the copyright owners intended
that their copyrighted works be used in the manner in which they were eventually used" by the defendant).

Dated:  November 9, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

David R. Marriott
David J. Kappos

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
*dmarriott@cravath.com*
*dkappos@cravath.com*

*Attorneys for Plaintiff Donald Graham*