UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONALD GRAHAM,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>RICHARD PRINCE, GAGOSIAN GALLERY, INC., and LAWRENCE GAGOSIAN,<br><br>　　　　　　　　Defendants. | Case No. 1:15-cv-10160-SHS |
| ERIC MCNATT,<br><br>　　　　　　　　Plaintiff,<br><br>　　　　v.<br><br>RICHARD PRINCE, BLUM & POE, LLC, and BLUM & POE NEW YORK, LLC,<br><br>　　　　　　　　Defendants. | Case No. 1:16-cv-08896-SHS |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
THE MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN WALLIS,
LISA PHILLIPS, ALLAN SCHWARTZMAN, DANIEL WOLF,
ALICE MARWICK AND SANDRA MINOTT-PHILLIPS**

CRAVATH, SWAINE & MOORE LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000

*Attorneys for Plaintiffs Donald Graham
and Eric McNatt*

November 9, 2018

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

STATEMENT OF FACTS ..................................................................................................... 3

LEGAL STANDARD.............................................................................................................. 6

ARGUMENT ........................................................................................................................... 7

I.    DEFENDANTS' EXPERTS SHOULD BE PRECLUDED FROM OFFERING
      LEGAL CONCLUSIONS AND MAKING LEGAL ARGUMENTS .............................. 7

      A.    On Domestic Law ....................................................................................... 7

      B.    On Foreign Law .......................................................................................... 9

II.   DEFENDANTS' EXPERTS SHOULD BE PRECLUDED FROM OPINING ON
      PRINCE'S STATE OF MIND ..................................................................................... 10

III.  DEFENDANTS' EXPERTS SHOULD NOT BE PERMITTED TO ADDRESS
      TRANSFORMATIVENESS ........................................................................................ 12

IV.   DEFENDANTS SHOULD NOT BE PERMITTED TO INTRODUCE
      PREJUDICIAL NARRATIVE ..................................................................................... 16

      A.    On the History of Appropriation Art and Richard Prince ...................................... 16

      B.    On Common Social Media Usage............................................................... 19

      C.    On the History of the Internet .................................................................. 21

V.    DEFENDANTS' EXPERTS SHOULD NOT BE PERMITTED TO ADDRESS
      PRINCE'S ACCOMPLISHMENTS ............................................................................. 22

CONCLUSION...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)............................................................................................12, 15

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013)................................................................................................12

*Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*,
No. 14 Civ. 9270, 2016 WL 7507757 (S.D.N.Y. Dec. 30, 2016)..........................................10

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)........................................................................................1, 5, 6, 7

*EEOC v. Morgan Stanley & Co.*,
324 F. Supp. 2d 451 (S.D.N.Y. 2004)......................................................................................8

*Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*,
No. 11 Civ. 6201, 2014 WL 7234593 (S.D.N.Y. Dec. 18, 2014)..........................................22

*In re Fosamax Prods. Liab. Litig.*,
645 F. Supp. 2d 164 (S.D.N.Y. 2009)....................................................................................10

*Graham v. Prince*,
265 F. Supp. 3d 366 (S.D.N.Y. 2017)..........................................................................3, 4, 12

*Graham v. Prince, et al.*,
No. 1:15-cv-10160-SHS (S.D.N.Y.).........................................................................................1

*Great Am. Ins. Co. of N.Y., Inc. v. USF Holland, Inc.*,
No. 11 Civ. 6879, 2013 WL 1832185 (S.D.N.Y. May 1, 2013)..........................................8, 9

*In re Initial Pub. Offering Sec. Litig.*,
174 F. Supp. 2d 61 (S.D.N.Y. 2001).......................................................................................10

*Jonas v. Estate of Leven*,
116 F. Supp. 3d 314 (S.D.N.Y. 2015)......................................................................................9

*In re LIBOR-Based Fin. Instruments Antitrust Litig.*,
299 F. Supp. 3d 430 (S.D.N.Y. 2018)..........................................................................7, 16, 20

*Linde v. Arab Bank, PLC*,
920 F. Supp. 2d 282 (E.D.N.Y. 2011) ................................................................................9, 10

*LinkCo v. Fujitsu Ltd.*,
No. 16 Civ. 7242, 2002 WL 1585551 (S.D.N.Y. July 16, 2002) ......................................8, 24

*Lithuanian Commerce Corp. v. Sara Lee Hosiery*,
    177 F.R.D. 245 (D.N.J. 1997), *vacated in part on other grounds*, 179 F.R.D.
    450 (D.N.J. 1998)......................................................................................................10

*Lombardo v. Dr. Seuss Enters., L.P.*,
    279 F. Supp. 3d 497 (S.D.N.Y. 2017) *aff'd*, 729 F. App'x 131 (2d Cir. 2018).......................15

*Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*,
    No. 11 Civ. 681, 2015 WL 5459662 (S.D.N.Y. Sept. 16, 2015)..........................................6, 22

*In re Lyondell Chem. Co.*,
    558 B.R. 661 (S.D.N.Y. 2016)....................................................................................17

*Marvel Characters, Inc. v. Kirby*,
    726 F.3d 119 (2d Cir. 2013).......................................................................................19

*McNatt v. Prince, et al.*,
    No.1:16-cv-08896-SHS (S.D.N.Y.)................................................................................1

*In re Mirena IUD Prods. Liab. Litig.*,
    169 F. Supp. 3d 396 (S.D.N.Y. 2016).........................................................................6, 10

*N. Jersey Media Grp., Inc. v. Pirro*,
    74 F. Supp. 3d 605 (S.D.N.Y. 2015).......................................................................13, 14, 15

*Nichols v. Universal Pictures Corp.*,
    45 F.2d 119 (2d Cir. 1930) .......................................................................................12

*Nieves-Villanueva v. Soto-Rivera*,
    133 F.3d 92 (1st Cir. 1997).......................................................................................10

*Nimely v. City of New York*,
    414 F.3d 381 (2d Cir. 2005)......................................................................................6, 7

*R.B. Ventures, Ltd. v. Shane*,
    No. 91 Civ. 5678, 2000 WL 520615 (S.D.N.Y. May 1, 2000).........................................17, 18

*In re Rezulin Prods. Liab. Litig.*,
    309 F. Supp. 2d 531 (S.D.N.Y. 2004)..................................................................... passim

*Salem v. United States Lines Co.*,
    370 U.S. 31 (1962)....................................................................................................15

*Scott v. Chipotle Mexican Grill, Inc.*,
    315 F.R.D. 33 (S.D.N.Y. 2016) ............................................................................ passim

*SEC v. Tourre*,
    950 F. Supp. 2d 666 (S.D.N.Y. 2013)...........................................................................6

iii

*Estate of Smith v. Cash Money Records, Inc.*,
 253 F. Supp. 3d 737 (S.D.N.Y. 2017)..................................................................................16

*Smith v. Smith*,
 No. 02 Civ. 7308, 2003 WL 22290984 (S.D.N.Y. Sept. 29, 2003) .........................................19

*TCA Television Corp. v. McCollum*,
 151 F. Supp. 3d 419 (S.D.N.Y. 2015)..................................................................................19

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
 92 F. Supp. 2d 349 (S.D.N.Y. 2000)....................................................................................20

*United States v. Bilzerian*,
 926 F.2d 1285 (2d Cir. 1991)..........................................................................................6, 7

*United States v. Burrous*,
 934 F. Supp. 525 (E.D.N.Y. 1996) ......................................................................................19

*United States v. Caruso*,
 No. 99 Civ. 1172, 2000 WL 1134359 (2d Cir. Aug. 9, 2000) ................................................24

*United States v. DiDomenico*,
 985 F.2d 1159 (2d Cir. 1993)..............................................................................................24

*United States v. Duncan*,
 42 F.3d 97 (2d Cir. 1994)................................................................................................6, 9

*United States v. Edwards*,
 486 F. Supp. 673 (S.D.N.Y. 1980) ......................................................................................12

*United States v. Fowler*,
 932 F.2d 306 (4th Cir. 1991) .........................................................................................19, 21

*United States v. Jamil*,
 707 F.2d 638 (2d Cir. 1983)................................................................................................23

*United States v. Jiau*,
 734 F.3d 147 (2d Cir. 2013)..................................................................................6, 16, 20, 23

*United States v. Williams*,
 506 F.3d 151 (2d Cir. 2007)..................................................................................................6

*Victorinox AG, Victorinox Swiss Army, Inc. v. B&F Sys., Inc.*,
 No. 13 Civ. 4534, 2016 WL 4204167 (S.D.N.Y. Aug. 4, 2016) ............................................23

*Weiss v. La Suisse*,
 313 F. Supp. 2d 241 (S.D.N.Y. 2004)..................................................................................10

*Well-Made Toy Mfg. Corp. v. Goffa Int'l. Corp.*,
210 F. Supp. 2d 147 (E.D.N.Y. 2002), *aff'd*, 354 F.3d 112 (2d Cir. 2003),
*abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154
(2010) ................................................................................................................13

*Wills v. Amerada Hess Corp.*,
379 F.3d 32 (2d Cir. 2004) ................................................................................15

**Statutes & Rules**

17 U.S.C. § 107 (2012) .........................................................................................12

Copyright Act of 1976 ..............................................................................12, 13, 20

Fed. R. Civ. P. 26(a)(2)(D)(ii) ..............................................................................18

Federal Rule of Civil Procedure 44.1 .............................................................7, 9, 10

Federal Rule of Evidence 403............................................................................ passim

Federal Rule of Evidence 702............................................................................ passim

Plaintiffs Donald Graham ("Graham") and Eric McNatt ("McNatt") (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of Plaintiffs' Motion to Exclude Expert Testimony of Brian Wallis, Lisa Phillips, Allan Schwartzman, Daniel Wolf, Alice Marwick and Sandra Minott-Phillips.[1]

### PRELIMINARY STATEMENT

Defendants unlawfully copied nearly the entirety of *Rastafarian Smoking a Joint* and *Kim Gordon I* (collectively, "Plaintiffs' Works") and now seek to defend their conduct as fair use based on the testimony of six purported experts, most of whom have maintained a decades-long personal and professional relationship with each other and with Defendants. They praise Prince's "genius" and claim he is "one of the most original artists" in the last several decades. In so doing, they seek to legitimize Prince's Works and his infringement as the "natural" evolution of art.

However, Defendants' conduct was plainly not fair use (as explained in Plaintiffs' Opposition to Defendants' Motions for Summary Judgment), and their experts' opinions are inadmissible under Federal Rules of Evidence 702 and 403, and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993). Thus, the opinions of Defendants' experts should be stricken for one or more of the following reasons.

*First*, Defendants' experts offer legal conclusions and arguments. Defendants' fair use experts, Wallis and Phillips, impermissibly conclude that Prince's works are not copyright infringement, and Marwick incorrectly concludes that Plaintiffs gave a license to

---

[1] For purposes of this Memorandum, unless otherwise indicated, Plaintiffs refer to both *Graham v. Prince, et al.*, No. 1:15-cv-10160-SHS (S.D.N.Y.) and *McNatt v. Prince, et al.*, No.1:16-cv-08896-SHS (S.D.N.Y.) together as "this case" or "this action."

Instagram and Facebook, which in turn, authorized its users to copy and use Plaintiffs'

photographs.  Likewise, Minott-Phillips' expert report entails matters of Jamaican law entirely.

*Second*, Wallis and Phillips seek to divine Prince's motivation for creating

Prince's Works.  It is well established that an expert cannot speculate about a party's intent.

While an artist's intent behind creating the artwork may be relevant in determining fair use, such

intent is best derived from the artist's own testimony.

*Third*, the first fair use factor, transformativeness, is an improper topic for expert

testimony.  Expert testimony provides no value in determining fair use, because its determination

merely requires comparing the works at issue side-by-side.  The Second Circuit discourages

admission of expert testimony for this purpose, and most courts within this district engage in the

fair use analysis without the help of an expert.

*Fourth*, Defendants' experts engage in prejudicial factual narratives.  It is well

established that experts cannot be a vehicle for factual narratives.  In discussing the history of

appropriation art, Prince's artistic practice, the history of the Internet, and common social media

usage, Defendants' experts merely narrate the information that is readily available through the

articles that they cite and Prince's own testimony.  Their narrations are also rife with partisan

gloss, prone to mislead the jury.

*Fifth*, the opinions of Defendants' experts on Prince's accomplishments are an

improper topic for expert testimony and are merely duplicative of Prince's own testimony.

Wallis and Phillips attest to the museums that have showcased or own Prince's works, and

Wallis comments on the auction price for Prince's earlier work.  These statements are well

within a jury's understanding, and Prince's testimony covers the exact same topics.

2

In sum, Defendants' experts' opinions should be stricken insofar as they:  (1) state legal conclusions and arguments; (2) purport to describe Prince's state of mind; (3) express opinions on transformativeness; (4) constitute impermissible narratives; and (5) offer descriptions of Prince's accomplishments.  Should the Court grant this motion, certain of Plaintiffs' experts' opinions would likewise be unnecessary as they are merely responsive.

## STATEMENT OF FACTS

Donald Graham is a visual artist who created, and owns the copyright in, *Rastafarian Smoking a Joint*.  (Ex. 1 (Graham Compl.) ¶¶ 18-20.)[2]  Eric McNatt is a photographer who created, and owns the copyright in, *Kim Gordon 1*.  (Ex. 2 (McNatt Compl.) ¶¶ 12, 16-19.)  Defendants infringed Plaintiffs' copyrights in their works by showcasing them for over a month each, as a part of Prince's *New Portraits* exhibitions in New York and Tokyo (Ex. 1 (Graham Compl.) ¶¶ 4, 29; Ex. 2 (McNatt Compl.) ¶¶ 3, 33); erecting a billboard with *Rastafarian Smoking a Joint* (Ex. 1 (Graham Compl.) ¶¶ 7, 45); publishing books which included Plaintiffs' Works (Ex. 1 (Graham Compl.) ¶¶ 6, 42; Ex. 2 (McNatt Compl.) ¶¶ 38, 41-42); and posting Plaintiffs' Works on Prince's Twitter and Instagram accounts (Ex. 1 (Graham Compl.) ¶ 53; Ex. 2 (McNatt Compl.) ¶ 36.)  Plaintiffs have since brought this action to enforce their copyrights in their works.

In an Opinion dated July 18, 2017 ("Opinion"), the Court denied Defendants' motion to dismiss, finding that Prince's Work is "not transformative as a matter of law." *Graham v. Prince*, 265 F. Supp. 3d 366, 382 (S.D.N.Y. 2017).  The Court remarked that "[g]iven Prince's use of essentially the entirety of Graham's photograph, defendants will not be able to

---

[2] In support of this opposition, Plaintiffs submit the Declaration of Caitlin Fitzpatrick. Exhibits to the Fitzpatrick Declaration are cited herein as "Ex. __".

establish that *Untitled* is a transformative work without substantial evidentiary support [which] may include art criticism, such as *the articles* accompanying defendants' briefing [and evidence of] an artist's *stated* intent . . . ." *Id.* (emphasis added). Specifically, the Court preferred facts that were "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned" such that it may take judicial notice. *Id.* (internal quotation marks and citation omitted). Defendants have since served opening and reply reports from six experts. Defendants' experts include: Alice Marwick (Ex. 17 (Marwick Rpt.); Ex. 18 (Marwick Reply Rpt.)); Sandra Minott-Phillips (Ex. 29 (Minott-Phillips Rpt.); Ex. 30 (Minott-Phillips Reply Rpt.)); Lisa Phillips (Ex. 27 (Phillips Rpt.); Ex. 28 (Phillips Reply Rpt.)); Allan Schwartzman (Ex. 19 (Schwartzman Rpt.); Ex. 20 (Schwartzman Reply Rpt.)); Brian Wallis (Ex. 21 (Wallis Rpt.); Ex. 22 (Wallis Reply Rpt.)); and Daniel Wolf (Ex. 25 (Wolf Rpt.); Ex. 26 (Wolf Reply Rpt.)).[3]

Defendants' experts purport to opine as follows:

1. Brian Wallis, the Curator of the Walther Collection in New York, provides "an evaluation of Mr. Prince's artwork and its significance." (Ex. 21 (Wallis Rpt.) ¶¶ 2, 10.)

2. Lisa Phillips, the director of the New Museum, provides "an expert opinion regarding [Prince's Works] and to give context about appropriation as an art practice . . . ." (Ex. 27 (Phillips Rpt.) ¶¶ 1, 10.)

3. Allan Schwartzman, the Chairman and Co-Head of the Fine Art Division of Sotheby's, opines on the market value of Prince's Works and Plaintiffs' Works. (Ex. 19 (Schwartzman Rpt.) ¶¶ 1, 12.)

4. Daniel Wolf, an art collector and dealer, opines on appropriation art, Prince's artistic practice, and Prince's Works' impact on Plaintiffs' Works' market value. (Ex. 25 (Wolf Rpt.) ¶¶ 1, 13, 15, 19.)

---

[3] Defendants offer Christian Tregillis as their damages expert. Plaintiffs expect to submit a separate motion to address the admissibility of Tregillis' report, on a schedule to be set by the Court for *Daubert* motions.

5.      Alice Marwick, an assistant professor of Communication at the University of North Carolina at Chapel Hill, opines on "[t]he history of social media," "[w]hy and how people use social media to communicate," and "[t]he social photo-sharing site Instagram in particular."  (Ex. 17 (Marwick Rpt.) ¶¶ 1, 7.)

6.      Sandra Minott-Phillips, an attorney admitted to practice in Jamaica, opines on the right of publicity under Jamaican law.  (Ex. 29 (Minott-Phillips Rpt.) ¶¶ 2, 9.)

Again, many of these experts have a personal and professional relationship with Defendants. (*See* Ex. 43 (Phillips Dep.) 76:2-3, 74:4-75:17; Ex. 46 (Wallis Dep.) 234:10-235:14; Ex. 44 (Schwartzman Dep.) 280:6-281:3, 295:2-5, 15-17, 295:18-296:3; Ex. 47 (Wolf Dep.) 125:8-126:18.)  Phillips, Wallis and Schwartzman's relationships with one another also extend for decades.  (*See* Ex. 43 (Phillips Dep.) 36:16-25; Ex. 44 (Schwartzman Dep.) 297:2-301:24.)

Plaintiffs expected to challenge the admissibility of these opinions on a schedule to be set by the Court for *Daubert* and other pretrial motions, but submitted responsive experts' reports in case those motions were denied.  However, Defendants forced the issue by seeking to exclude nearly all of Plaintiffs' experts' opinions in connection with Defendants' motion for summary judgment.  Because the admissibility of Plaintiffs' experts' opinions depends at least in part on the admissibility of Defendants' experts' opinions, Plaintiffs respectfully seek to exclude most of the testimony of Defendants' experts.  If this motion is granted, the majority of Plaintiffs' experts' opinions will be unnecessary (as Plaintiffs' experts are rebuttal experts).

Defendants' experts' opinions consist of:  (1) legal conclusions and arguments; (2) inadmissible statements about the differences between Prince's Works and Plaintiffs' Works; (3) inadmissible statements about Prince's statement of mind; (4) inadmissible factual narratives about the history of appropriation art and the Internet, and common social media usage; and (5) inadmissible and redundant statements about Prince's accomplishments.  These opinions should be excluded as they fail to meet the requirements of Federal Rules of Evidence 702 and 403, and *Daubert*, 509 U.S. at 597.

## LEGAL STANDARD

Trial courts are responsible for ensuring that expert testimony complies with the rules of evidence. *Daubert*, 509 U.S. at 592. Under Federal Rule of Evidence 702, expert testimony is admissible where:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The proponent of expert testimony bears the burden of establishing by a preponderance of evidence that the requirements of Rule 702 are satisfied. *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007) (citing *Daubert*, 509 U.S. at 593 n.10); *accord Scott v. Chipotle Mexican Grill, Inc.*, 315 F.R.D. 33, 43 (S.D.N.Y. 2016). To meet this burden, the proponent must show, among other things, that the proposed testimony would be "helpful to the trier of fact." *SEC v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)).

An expert's testimony is not helpful to the trier of fact when it: (1) addresses "lay matters which [the] jury is capable of understanding and deciding without the expert's help," *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (internal quotation marks and citation omitted); (2) "undertakes to tell the jury what result to reach, and thus attempts to substitute the expert's judgment for the jury's," *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016) (internal quotation marks omitted) (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2d Cir. 1994)); or (3) usurps the province of the court in instructing on the law, *Luitpold Pharms., Inc. v. Ed. Geistlich Sohne A.G. Fur Chemische Industrie*, No. 11 Civ. 681, 2015 WL 5459662, at *3 (S.D.N.Y. Sept. 16, 2015) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1294 (2d Cir. 1991)). Furthermore, the "knowledge" requirement of Rule 702 "guards

6

against the admission of subjective or speculative opinions." *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 541 (S.D.N.Y. 2004) (citing *Daubert*, 509 U.S. at 590).

"In addition to the requirements of Rule 702, expert testimony is subject to Rule 403, and 'may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.'" *Nimely*, 414 F.3d at 397 (quoting Fed. R. Evid. 403); *accord Scott*, 315 F.R.D. at 44. "[G]iven the unique weight [expert] evidence may have in a jury's deliberations," *Nimely*, 414 F.3d at 397, district courts exercise "more control over experts than over lay witnesses" under Rule 403, *Daubert*, 509 U.S. at 595 (citation omitted).

## ARGUMENT

### I. DEFENDANTS' EXPERTS SHOULD BE PRECLUDED FROM OFFERING LEGAL CONCLUSIONS AND MAKING LEGAL ARGUMENTS

Defendants' experts should not be permitted to offer testimony about legal issues. Marwick, a purported expert on social media and the Internet, offers testimony as to express and implied copyright licenses. Similarly, Phillips and Wallis, purported experts on post-modern art, make conclusions about Defendants' liability under copyright law. Finally, Minott-Phillips, an attorney licensed to practice in Jamaica, offers legal conclusions about copyright infringement and copyright license under Jamaican law. All of these statements are inadmissible under Federal Rule of Evidence 702 and Federal Rule of Civil Procedure 44.1.

### A. On Domestic Law

Expert testimony encompassing an ultimate legal conclusion based on the facts of the case is not admissible. *Bilzerian*, 926 F.2d at 1294; *accord In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 299 F. Supp. 3d 430, 498 (S.D.N.Y. 2018). "[C]ourts exclude expert testimony that provides legal opinions, legal conclusions, or interprets legal terms . . . ." *Scott*,

7

315 F.R.D. at 48 (internal quotation marks and citation omitted).  Relatedly, expert testimony that supplants the role of the counsel in making legal arguments is also excluded.  *Id.* at 49 (excluding an expert's testimony that reads like a "lawyer's argument").

Here, Marwick, Phillips and Wallis assert impermissible legal conclusions and make impermissible legal arguments.  Marwick's statements that:  (1) Plaintiffs are "*bound* by the [Facebook and Instagram] sites' terms of use" (Ex. 17 (Marwick Rpt.) ¶ 17 (emphasis added)); and (2) others can use Plaintiffs' images because Plaintiffs signed onto Instagram's and Facebook's terms of use, which grant the sites a non-exclusive, royalty-free license, and posted their images publicly (*id.* ¶¶ 14, 17, 20-28, 74; Ex. 18 (Marwick Reply Rpt.) ¶¶ 10-12), should be stricken as legal conclusions.  *See, e.g.*, *Great Am. Ins. Co. of N.Y., Inc. v. USF Holland, Inc.*, No. 11 Civ. 6879, 2013 WL 1832185, at *2 n.2 (S.D.N.Y. May 1, 2013) (finding that an expert's statement that "[t]he Plaintiff is bound by the terms of the Pricing Agreement" is an inadmissible legal conclusion); *In re Rezulin*, 309 F. Supp. 2d at 558 (excluding an expert opinion on the "basic rights of patients" because it "communicates a legal standard").

Marwick's conclusion that where images circulate widely on social media without attribution, anyone can use them without permission, should also be stricken as impermissible legal argument.  (Ex. 17 (Marwick Rpt.) ¶¶ 14, 19-22, 26, 74.)  This is an argument as to the implied license issue.[4]  *See, e.g.*, *LinkCo v. Fujitsu Ltd.*, No. 16 Civ. 7242, 2002 WL 1585551, at *2 (S.D.N.Y. July 16, 2002) (excluding an expert opinion that "does no more than counsel for plaintiff will do in argument") (internal quotation marks and citation omitted); *EEOC v. Morgan Stanley & Co.*, 324 F. Supp. 2d 451, 467 (S.D.N.Y. 2004) (excluding expert testimony where the

---

[4] Defendants make this implied license argument *verbatim* in their motion for summary judgment.  (Defs.' Mem. in Supp. of Mot. for Summ. J. (Graham) at 24-25, ECF No. 131.)

expert's "arguments would be more appropriate when presented by defense counsel themselves, rather than by an expert") (citing *Duncan*, 42 F.3d at 101).

That Marwick's testimony defers to the jury to make the final inference as to the implied license issue, or that her testimony does not cite law, is no bar to its exclusion. *See, e.g.*, *Scott*, 315 F.R.D. at 48-49 (excluding an expert opinion because, "deference notwithstanding, . . . [the expert's] testimony reads more like lawyer's argument"); *Great Am. Ins. Co. of N.Y.*, 2013 WL 1832185, at *2 n.2 (excluding an expert opinion for making legal conclusions even though it does not cite any law).

Finally, Phillips' and Wallis' statements that Prince's Works are not "stealing" or "piracy," that they are instead a "parody," and that appropriation art will not negate authorship, (*see* Ex. 28 (Phillips Reply Rpt.) ¶¶ 8, 11; Ex. 21 (Wallis Rpt.) ¶ 54; Ex. 22 (Wallis Reply Rpt.) ¶ 10), should be stricken as impermissible legal conclusions. *See, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 547 (excluding an expert opinion, which stated that "[the defendant]'s conduct with respect to clinical trial data potentially constituted 'negligence' or 'something more serious,'" for offering legal conclusions).

### B.    On Foreign Law

Defendants' attempt to introduce Minott-Philllips' testimony on Jamaican law is equally without merit.  Under Federal Rule of Civil Procedure 44.1, a court "may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."  Fed. R. Civ. P. 44.1; *accord Jonas v. Estate of Leven*, 116 F. Supp. 3d 314, 330 (S.D.N.Y. 2015).  However, because a determination of foreign law "must be treated as a ruling on a question of law," it should not be presented to the jury. *Linde v. Arab Bank, PLC*, 920 F. Supp. 2d 282, 286 (E.D.N.Y. 2011) (quoting Fed. R. Civ. P.

9

44.1); *accord Weiss v. La Suisse*, 313 F. Supp. 2d 241, 244 (S.D.N.Y. 2004) ("It is the province of the court to decide what foreign law is.").[5]

Because Minott-Phillips' opinion goes entirely to matters of Jamaican law (*see generally* Ex. 29 (Minott-Phillips Rpt.)), the court should preclude it from reaching the jury.  *See, e.g.*, *Linde*, 920 F. Supp. 2d at 286 (excluding a foreign law expert report because "questions of foreign law are not to be determined through a proffer of expert testimony given to the jury"); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 177 F.R.D. 245, 264 (D.N.J. 1997), *vacated in part on other grounds*, 179 F.R.D. 450 (D.N.J. 1998) (excluding a foreign law expert report because "[a]llowing this report to go before a jury will result in a misappropriation of the court's function in determining foreign law" (citing Fed. R. Civ. P. 44.1)).[6]

## II.   DEFENDANTS' EXPERTS SHOULD BE PRECLUDED FROM OPINING ON PRINCE'S STATE OF MIND

Expert testimony on a party's state of mind is inadmissible as speculative under Rule 702.  *See, e.g.*, *In re Rezulin*, 309 F. Supp. 2d at 546; *In re Mirena*, 169 F. Supp. 3d at 466 (excluding expert opinion because it "is impermissible speculation as to the state of mind of the FDA"); *In re Fosamax Prods. Liab. Litig.*, 645 F. Supp. 2d 164, 192 (S.D.N.Y. 2009)

---

[5] *In re Initial Pub. Offering Sec. Litig.*, 174 F. Supp. 2d 61, 65 (S.D.N.Y. 2001), could be read to suggest that a foreign law expert may be presented to the jury.  However, this is not the majority approach in this district, *see, e.g.*, *Creazioni Artistiche Musicali, S.r.l. v. Carlin Am., Inc.*, No. 14 Civ. 9270, 2016 WL 7507757, at *5 (S.D.N.Y. Dec. 30, 2016) (reviewing foreign law expert reports in the absence of the jury); *Linde*, 920 F. Supp. 2d at 286 (barring foreign law expert report from reaching the jury), nor is it the approach recommended by *Nieves-Villanueva v. Soto-Rivera*, 133 F.3d 92, 99 (1st Cir. 1997), a case cited therein.  *See Nieves-Villanueva*, 133 F.3d at 99 ("Even in the case of foreign law, under modern practice the [foreign law expert] testimony is generally given to the judge, outside the presence of the jury . . . .") (citation omitted).

[6] To the extent the Court wishes to consider Minott-Phillips' expert report in the absence of the jury under Rule 44.1, Plaintiffs offer Roxanne Miller's and June Besek's Rebuttal Reports in response.  (*See* Ex. 8 (Miller Rpt.); Ex. 12 (Besek Rpt.).)

(precluding experts from "testifying as to the knowledge, motivations, intent, state of mind, or purposes" of the parties because "[t]his is not a proper subject for expert or even lay testimony").

Here, Wallis and Phillips' testimony is replete with statements speculating about Prince's motivation. (*See* Ex. 21 (Wallis Rpt.) ¶¶ 34-43; Ex. 22 (Wallis Reply Rpt.) ¶ 11; Ex. 27 (Phillips Rpt.) ¶¶ 19-29; Ex. 28 (Phillips Reply Rpt.) ¶ 8.) For example, Phillips discusses Prince's goal in his general artistic pursuit (Ex. 27 (Phillips Rpt.) ¶ 20 (stating that Prince sought to question "the nature of reality, of fact and fiction, of the image world around us")) and his motivation in creating his past works, such as the *Nurse* series and the *Velvet Beach* work (*id.* ¶ 26). These statements are purely speculative. (*See* Ex. 43 (Phillips Dep.) 137:5-17; 137:18-138:4; 138:16-25; 139:2-20; 139:25-141:12; 143:4-21 (admitting that her statements about Prince's motivation are not based on any statements attributable to Prince).)

Similarly, Wallis opines on the message Prince intended to communicate through the *New Portraits* series (Ex. 21 (Wallis Rpt.) ¶ 43); Prince's thought process when creating the *New Portraits* (*id.* ¶¶ 38, 42); and what Prince did *not* intend in engaging in appropriation art (*id.* ¶ 36). In making these statements, Wallis not only speculates (Ex. 46 (Wallis Dep.) 234:20-25 (admitting that he has not spoken to Prince in years)), but also his divination as to Prince's intended message behind the *New Portraits* series is incorrect. (*Compare* Ex. 21 (Wallis Rpt.) ¶ 43 ("[I]t seems clear that one of Mr. Prince's key purposes in the *New Portraits* . . . was to comment on the culture of the Internet itself . . . .") *with* Ex. 38 (Prince Dep.) 143:2-20 (stating that *Untitled* was made to "make people feel good" and was not a comment on social media).)

Moreover, these statements are merely duplicative of Prince's own testimony. Prince elaborates extensively about his goal in his art practice (*see* Ex. 38 (Prince Dep.) 46:3-18; 247:15-20); his thought process behind his past works, including the *Nurse* series and the *Velvet*

11

*Beach* work (*see id.* at 62:8-68:24; 72:13-73:7; 74:15-78:6); and his intention and creative process behind the *New Portraits* series (*see, e.g.*, *id.* at 101:23-102:14; 186:3-25; 198:18-200:12; 126:5-127:7). *See, e.g.*, *United States v. Edwards*, 486 F. Supp. 673, 674 (S.D.N.Y. 1980) (excluding expert testimony as cumulative where the same information could be obtained through cross-examination of another witness).

## III.    DEFENDANTS' EXPERTS SHOULD NOT BE PERMITTED TO ADDRESS TRANSFORMATIVENESS

Defendants' experts should not be permitted to opine on transformativeness.[7]  In determining whether an infringing work is transformative, "[w]hat is critical is how the work in question appears to the reasonable observer, not simply what an artist might say about a particular piece or body of work." *Cariou v. Prince*, 714 F.3d 694, 707 (2d Cir. 2013).  Much of this task involves comparing the works at issue side-by-side. *See, e.g.*, *id.* at 706-07 (conducting a "side-by-side" comparison of Cariou's "serene and deliberately composed" photographs and Prince's "crude and jarring" artworks); *Graham*, 265 F. Supp. 3d at 380 ("[v]iewing Graham's *Rastafarian Smoking a Joint* and Prince's *Untitled* side-by-side"). As such, courts have traditionally discouraged the admission of expert testimony in copyright infringement cases. *See Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930) (Hand, J.) (finding that in copyright infringement cases, "[expert testimony] ought not to be allowed at all" and that "the

---

[7] The Copyright Act of 1976 provides that "the fair use of a copyrighted work . . . is not an infringement of copyright."  17 U.S.C. § 107 (2012).  The determination of fair use depends on four non-exclusive factors:  "(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; (4) the effect of the use upon the potential market for or value of the copyrighted work."  *Cariou*, 714 F.3d at 705 (citing 17 U.S.C. § 107).  "[T]he first factor, and in particular a sub-factor called 'transformativeness,' is at '[t]he heart of the fair use inquiry.'"  *Graham*, 265 F. Supp. 3d at 377 (quoting *Blanch v. Koons*, 467 F.3d 244, 251 (2d Cir. 2006)).

12

case [should be] confined to the actual issues; that is, whether the defendant copied [the copyrighted work]"); *Well-Made Toy Mfg. Corp. v. Goffa Int'l. Corp.*, 210 F. Supp. 2d 147, 151 (E.D.N.Y. 2002) (evaluation of copyright infringement uses "an objective criterion. It invokes some supposedly general sensibility, rather than the perceptions of any particular audience."), *aff'd*, 354 F.3d 112 (2d Cir. 2003), *abrogated on other grounds by Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010).

For example, in *N. Jersey Media Grp., Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015), the plaintiff alleged copyright infringement against Fox News for posting on Facebook, the plaintiff's copyrighted photograph combined with another photograph, along with the comment "# neverforget." *Id.* at 609-11. The defendants moved for summary judgment, arguing that their use of the copyrighted photograph was a protected "fair use" under the Copyright Act. *Id.* at 609. In evaluating this motion, the court compared the two works at issue side-by-side. *Id.* at 615. In denying the motion, the court remarked that these alterations "are 'barely discernable' unless the viewer is *specifically prompted to look for them*" and that "a *casual observer* may believe that he is simply viewing the [copyrighted work] with only the hashtag added." *Id.* (emphasis added). Ahead of the trial, Fox News then sought to introduce an expert on social media to opine that the allegedly infringing work was transformative. (Ex. 94 (Mem. in Supp. of Pl. Mot. in Lim., No. 13 Civ. 7153, ECF No. 114) at 1.) The court excluded Fox News' expert to the extent he opined on "whether the uses at issue are fair" (Ex. 96 (Order, No. 13 Civ. 7153, ECF No. 188) at 1),[8] barring Fox News from introducing an expert to "specifically prompt [the jury] to look for" alterations between the two works. *Pirro*, 74 F. Supp. 3d at 615.

---

[8] The Order addresses two identical motions *in limine* as to the same expert in related actions, No. 13 Civ. 7153 and No. 14 Civ. 7630, while solely referring to the docket number in the latter action. ECF No. 123 in No. 13 Civ. 7153 (Ex. 95) is an order granting the defendants'

Here, Defendants attempt to do the same.  Even though "transformation is not a word that's commonly used in critical art theory" (Ex. 46 (Wallis Dep.) 92:6-24), five of six Defendants' experts opine on whether Prince's Works are "transformative."  (*See* Ex. 21 (Wallis Rpt.) ¶¶ 10, 21-24, 32, 37, 39-50, 55; Ex. 22 (Wallis Reply Rpt.) ¶¶ 7-14, 21; Ex. 27 (Phillips Rpt.) ¶¶ 14, 15, 29-34; Ex. 28 (Phillips Reply Rpt.) ¶¶ 3-5, 7-9; Ex. 17 (Marwick Rpt.) ¶¶ 59-61, 79, 84-87; Ex. 18 (Marwick Reply Rpt.) ¶¶ 14, 15, 21; Ex. 19 (Schwartzman Rpt.) ¶ 25; Ex. 20 (Schwartzman Reply Rpt.) ¶ 2; Ex. 25 (Wolf Rpt.) ¶ 18; Ex. 26 (Wolf Reply Rpt.) ¶ 4.) Defendants' experts even coach the viewer on how to look at the works at issue.  (*See* Ex. 21 (Wallis Rpt.) ¶ 50; Ex. 22 (Wallis Reply Rpt.) ¶ 13; Ex. 27 (Phillips Rpt.) ¶ 15 (stating that the viewer must look at Prince's Works in a series but Plaintiffs' Works as stand-alone portraits).)

For example, Defendants' experts state the following:

- "[B]ecause the images have been rephotographed (and reproduced slightly out of focus), removed from their original context . . . , inserted into a new context (Instagram frame with irreverent users' comments and emojis), reproduced as an altered image in an entirely new medium (as inkjet paintings on canvas), recreated as a wholly new painting using a special canvas (and special inks that do not absorb into the canvas), colorized . . . , cropped, and publicly presented . . ., the original images have been *substantially transformed* . . . ."  (Ex. 21 (Wallis Rpt.) ¶ 23 (emphasis added).)

- "Prince has *substantially altered* the source images in the two works in question, *transforming* the scale and medium, ink-jetting them onto canvas as paintings, and presenting the entire screenshots . . . , including both the text, cropped image and surrounding field."  (Ex. 27 (Phillips Rpt.) ¶ 14 (emphasis added).)

- "Oftentimes, the nature of an artist's transformation of the source material is subtle.  In the case of the *New Portraits* works, quite simply turning a screen from someone's Instagram page into a large-scale painting and exhibiting it in the

---

request for an extension of a deadline, but ECF No. 123 in No. 14 Civ. 7630 (Ex. 97) is the motion *in limine* to preclude the social media expert testimony.  This motion is identical to the motion filed in No. 13 Civ. 7153 as ECF No. 113 (Ex. 93).  This does not change the substantive analysis of Plaintiffs' motion to exclude Defendants' experts.

14

context of art as a painting . . . is the *transformation.*"  (Ex. 19 (Schwartzman Rpt.) ¶ 25 (emphasis added).)

- "[T]he same piece of content can have radically different meanings depending on where, when, and by whom it is deployed. . . . Prince is using [Prince's Works] to express a sentiment that differs—perhaps radically—from the intent of the original creators."  (Ex. 17 (Marwick Rpt.) ¶ 61.)

The jury does not need an expert to coach them on how to compare two works side-by-side.[9]  That determination can be made by any reasonable observer.  *See, e.g.*, *Pirro*, 74 F. Supp. 3d at 615 (in evaluating the works at issue as a "casual observer," the court noted that the defendants had used a "(1) cropped, (2) lower-resolution version of the [copyrighted work], (3) which was juxtaposed with *Raising the Flag on Iwo Jima* and (4) in a smaller scale than the [copyrighted work], and (5) added the phrase '# neverforget'"); *Wills v. Amerada Hess Corp.*, 379 F.3d 32, 46 (2d Cir. 2004) ("It is well settled that expert testimony is unnecessary in cases where jurors 'are as capable of comprehending the primary facts and of drawing correct conclusions from them as are witnesses possessed of special or peculiar training.'" (quoting *Salem v. United States Lines Co.*, 370 U.S. 31, 35 (1962))); *Blanch*, 467 F.3d at 252-53 (2d Cir. 2006) (comparing the works at issue side-by-side without an expert's aid in fair use analysis); *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017) (finding that "all that is needed is the parties' pleadings, copies of *Grinch* and the Play, and the relevant case law" to evaluate fair use defense) *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Estate of Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737, 750 (S.D.N.Y. 2017) (same, in the context of music).

---

[9] Notably, Defendants seek to exclude Plaintiffs' experts Barbara Sussman, Michelle Bogre and Nate Harrison on the same ground, for making statements about whether Prince's Works are transformative.  (*See* Defs.' Mot. to Exclude at 12, 18-20, ECF No. 145.)

15

## IV.   DEFENDANTS SHOULD NOT BE PERMITTED TO INTRODUCE PREJUDICIAL NARRATIVE

Defendants' attempt to introduce expert testimony concerning the history of appropriation art and Richard Prince's artistic practice, and social media usage and the history of the Internet, is likewise without merit. (*See* Defs.' Mot. to Exclude at 3-5, ECF No. 145.) Defendants' experts impermissibly seek to buttress Defendants' theory of the case—that Prince's actions are commonplace in both art and social media, so they should be legal—but the proposed testimony does not meet the requirements of Federal Rules of Evidence 702 and 403.

### A.   On the History of Appropriation Art and Richard Prince

Defendants introduce Wallis, Phillips, Schwartzman, and Wolf to purportedly opine on the history of appropriation art and Richard Prince as an artist. (*See* Ex. 21 (Wallis Rpt.) ¶¶ 32-37; Ex. 27 (Phillips Rpt.) ¶¶ 16-27, 30; Ex. 19 (Schwartzman Rpt.) ¶¶ 24, 29, 30; Ex. 20 (Schwartzman Reply Rpt.) ¶¶ 4, 6; Ex. 25 (Wolf Rpt.) ¶¶ 13, 15.) However, these experts' opinions should be barred because they: (1) are improper factual narrative; (2) risk jury confusion through a battle of experts; and (3) tend to mislead the jury.

*First*, factual narratives are inadmissible as expert evidence in the Second Circuit. *In re LIBOR*, 299 F. Supp. 3d at 469 (collecting cases); *accord Jiau*, 734 F.3d at 154. Expert testimony cannot narrate the existing record with "simple inferences drawn from uncomplicated facts that serve only to buttress [a party's] theory of the case" while purporting to provide background. *In re Rezulin*, 309 F. Supp. 2d at 551 (excluding expert testimony on "historical commentary of what happened [in developing Rezulin]" because it narrated information found in documentary evidence while interpolating partisan glosses). The opinions of Wallis, Phillips, and Wolf do exactly that. Wallis and Wolf purport to explain the historical post-modernism movement, chronicling from Marcel Duchamp to conceptual artists of the 1980s, and to describe

16

appropriation art. (Ex. 21 (Wallis Rpt.) ¶¶ 32-33, 37; Ex. 25 (Wolf Rpt.) ¶ 15.) Wallis also lauds Prince's Works and Prince, at times by quoting other art critics' articles. (Ex. 21 (Wallis Rpt.) ¶¶ 27-31, 39.) Likewise, Phillips dedicates the bulk of her report to the history of appropriation art and Prince's status within it. (*See* Ex. 27 (Phillips Rpt.) ¶¶ 16-27.) But all of this information is a hodge-podge of the sources Defendants' reports extensively cite and Prince's deposition testimony. Wallis and Phillips conclude their narration by stating that appropriation art is legitimate, and by extension, so are Prince and his artwork. (*See* Ex. 21 (Wallis Rpt.) ¶ 33 ("Most histories of modern art and most museums of modern art acknowledge [appropriation art] as a key development and devote serious attention to this passage in contemporary art history."); Ex. 27 (Phillips Rpt.) ¶ 19 ("Richard Prince follows in this tradition [of appropriation art], carrying Duchamp's gestures to another level.").) These are precisely the kinds of "glosses" that an expert is not permitted to interpolate into his narrative. *In re Rezulin*, 309 F. Supp. 2d at 551; *see, e.g. In re Lyondell Chem. Co.*, 558 B.R. 661, 668 (S.D.N.Y. 2016) (excluding the expert's factual narrative on the chronology of events because "it intersperses excerpts from e-mails and other documents in the discovery record with [the expert's] own interpretations").

*Second*, Defendants' experts' testimony risks jury confusion through a battle of experts. In *R.B. Ventures, Ltd. v. Shane*, No. 91 Civ. 5678, 2000 WL 520615 (S.D.N.Y. May 1, 2000), the court excluded expert testimony on the prevalence of oral agreements for commissions in the real estate brokerage industry, because whether such an oral agreement took place was the very issue in dispute. *Id.* at *4. The court noted that if these experts were introduced, then the opposing party "would be entitled to counter with experts of his own," which would lead to "[a] full blown battle of the experts on the question of industry practices

17

[posing] the clear danger of confusing the issues in minds of the jurors and misleading them as to the determinative issue of fact." *Id.* The court noted that the opposing party had already prepared rebuttal experts who would testify that written agreements, instead of oral agreements, are the industry norm. *Id.*

Similarly, Defendants' experts do more than contextualize Prince's Works within the appropriation art movement; they seek to define its outer limit—the wholesale taking of another artist's work:

- "Prince's borrowing and appropriating of imagery is no different than what artists have done since the beginning of art history." (Ex. 25 (Wolf Rpt.) ¶ 15.)

- According to Phillips, Pablo Picasso, Georges Braque, and Andy Warhol have engaged in incorporating others' works, and "Richard Prince follows in this tradition, . . . taking appropriation into a new era." (Ex. 27 (Phillips Rpt.) ¶¶ 17-19.)

- Wallis notes that both Graham and McNatt have "posted photographs taken by other photographers on Instagram, without permission from those photographers," (Ex. 21 (Wallis Rpt.) ¶¶ 15, 17), that other artists have copied Prince's work, and that Prince "applauded this other artist's reuse and recontextualization of his work." (*Id.* ¶ 36.)

However, whether appropriation art and, by extension, Prince's Works follow a legitimate artistic tradition, and are therefore "transformative," is the very issue upon which this case turns. Just as the court in *R.B. Ventures* cautioned, allowing Defendants' experts to testify as to whether Prince's Works follow an artistic tradition would entitle Plaintiffs to provide their own rebuttal experts. 2000 WL 520615, at *4; *see also* Fed. R. Civ. P. 26(a)(2)(D)(ii). Plaintiffs have indeed identified three rebuttal experts who are prepared to testify that appropriation art and Prince's Works have failed to gain universal acceptance in art criticism. (*See, e.g.*, Ex. 10 (Coleman Rpt.) ¶¶ 16-21; Ex. 11 (Harrison Rpt.) at 5; Ex. 13 (Whitaker Rpt.) ¶¶ 17-20.) Such a battle of experts will only mislead the jury away from the task at hand—comparing Prince's Works and Plaintiffs' works, side-by-side. *See Smith v. Smith*, No. 02 Civ. 7308, 2003 WL 22290984, at *13

(S.D.N.Y. Sept. 29, 2003) (finding that courts have been reluctant to admit expert evidence where "trials would be prolonged by battles of experts; and that such testimony created undue opportunity for confusing and misleading the jury" (citation omitted)); *United States v. Burrous*, 934 F. Supp. 525, 527-28 (E.D.N.Y. 1996) ("Because this was to be a short trial with relatively uncomplicated evidence, a lengthy battle of experts would be distracting and confusing to the jury.").

*Third*, Defendants' experts tend to mislead the jury by reference to unrelated artists. Through their experts, Defendants seek to distract the jury with not only the experts' and Defendants' stature in the art world but also the reputation of unrelated, yet universally famous, artists with mass appeal, such as Pablo Picasso. For instance, according to Wolf, "[f]or [Bernard Picasso], too, it is fundamental to the history of art, and very much a part of Picasso (his grandfather), who often copied the work of others." (Ex. 25 (Wolf Rpt.) ¶ 13.)[10] That Picasso may have engaged in similar artistic practice as Prince should not be given any weight in determining fair use. *See TCA Television Corp. v. McCollum*, 151 F. Supp. 3d 419, 433 (S.D.N.Y. 2015) ("It is well-established in this Circuit that fair use analysis always calls for a case-by-case analysis.") (internal quotation marks omitted) (collecting cases); *cf. United States v. Fowler*, 932 F.2d 306, 315-16 (4th Cir. 1991) (affirming the district court's decision to exclude expert testimony about "the irrelevant claims . . . [related to] 'the everybody does it' defense").

### B.   On Common Social Media Usage

Defendants should be similarly precluded from using expert testimony to address common social media usage. Marwick dedicates thirty-seven paragraphs to discussing "Why

---

[10] This statement should also be excluded as inadmissible hearsay. *Marvel Characters, Inc. v. Kirby*, 726 F.3d 119, 136 (2d Cir. 2013).

and how people use social media to communicate" and "The social photo-sharing site Instagram in particular." (Ex. 17 (Marwick Rpt.) ¶¶ 7, 46-83.)  Marwick's testimony should be excluded because:  (1) it concerns a lay matter; and (2) it is misleading.

*First*, the basic functions of social media, including the public's ability to view and repost images posted on a public Instagram account, is a "lay matter[] which the trier of fact is capable of understanding and deciding without the expert's help" and therefore inadmissible under Federal Rule of Evidence 702(a).  *In re LIBOR*, 299 F. Supp. 3d at 469 (quoting *Jiau*, 734 F.3d at 154); *see also* Ex. 18 (Marwick Reply Rpt.) ¶¶ 5, 23 (acknowledging that her report speaks about the expectations and experiences of the vast majority of people).

*Second*, Marwick's testimony tends to mislead the jury into believing that because reposting images on Instagram without permission is prevalent, such conduct must also be legal. For example, Marwick concludes that in "adhering only to their interpretations of copyright law, [Plaintiffs' experts] are overlooking significant cultural practices that are part of life for the vast majority of Americans."  (Ex. 18 (Marwick Reply Rpt.) ¶ 23.)  But in seeking the protection of copyright law, Plaintiffs need not defer to social norms.  That many people engage in potential copyright infringement without repercussion reflects, perhaps, discretion in enforcement, but has no bearing on what is and should be legal.  *See UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 352-53 (S.D.N.Y. 2000) (finding that plaintiffs have the "right to determine which infringers to pursue, and in which order to pursue them" under the Copyright Act) (internal quotation marks and citation omitted).  Such prejudicial statements should be excluded under Rule 403.  *Cf. Fowler*, 932 F.2d at 315-16 (affirming the district court's decision to exclude testimony related to "'the everybody-does-it' defense" under Rule 403).

20

## C.    On the History of the Internet

Finally, the Court should preclude Marwick's proposed testimony regarding the history of the Internet.  Marwick dedicates a substantial portion of her expert report (fifty-five paragraphs out of eighty-eight) to the history of Internet and social media.  (*See* Ex. 17 (Marwick Rpt.) ¶¶ 29-84.)  These statements should be excluded because they:  (1) provide factual narratives; and (2) waste the jury's time.

*First*, Marwick's opinions concerning the history of the Internet is a factual narration.  Marwick states that "[t]he internet was originally developed by the Advanced Research Projects Agency of the United States Department of Defense to facilitate knowledge-sharing and collaboration between scientists," but this information could be directly obtained from the article that Marwick cites (Ex. 17 (Marwick Rpt.) ¶ 29); in fact, her report is replete with descriptions of secondary sources.  After spending thirty paragraphs discussing the history of the Internet and common uses of Facebook and Instagram, (*see id.* ¶¶ 29-61), Marwick concludes:

> When Prince posted a "mash-up" (a remix which combines two or more disparate pieces of content to create a new work) of the Graham photograph and what appears to be a blurry photograph of an advertisement, . . . Prince is using [the Graham Work] to express a sentiment that differs—perhaps radically—from the intent of the original creators.

(*Id.* ¶ 61.)  This is precisely the kind of "gloss[] that [an expert] interpolates into his narrative . . . that serve[s] only to buttress [a party's] theory of the case," which the court in *In re Rezulin* sought to exclude.  309 F. Supp. 2d at 551.[11]  *See, e.g.*, *Scott*, 315 F.R.D. at 45 (finding that

---

[11] Even if the Court should find that transformativeness is a proper subject for expert opinion, Marwick is not qualified to offer such an opinion because she purports to be an expert on social media and the Internet, not art.  Therefore, her opinions should be excluded on this additional ground.

21

expert testimony cannot be introduced "solely for the purpose of constructing a factual narrative based upon record evidence") (internal quotation marks and citation omitted).

*Second*, Marwick's proposed testimony concerning the history of the Internet wastes the jury's time. Defendants contend her testimony is relevant because Prince took the images at issue from Instagram. (*See* Defs.' Mot. to Exclude at 5, ECF No. 145.) However, how the Internet or social media first developed is of no real relevance to the jury's task at hand—comparing Prince's Works and Plaintiff's Works side-by-side. Whatever lay knowledge the jury possesses as to the Internet and social media is sufficient to make this assessment. Despite its tangential relevance, Marwick's expert report is the lengthiest of the expert reports, replete with academic jargon, and will likely add to the length of trial. *See, e.g.*, *Luitpold Pharm.*, 2015 WL 5459662, at *16 (excluding expert testimony consisting of "lengthy deposition designations" for lacking probative value and wasting the jury's time); *Fed. Hous. Fin. Agency v. Nomura Holding Am., Inc.*, No. 11 Civ. 6201, 2014 WL 7234593, at *3 (S.D.N.Y. Dec. 18, 2014) (excluding minimally relevant evidence that will lengthen the trial).

## V.   DEFENDANTS' EXPERTS SHOULD NOT BE PERMITTED TO ADDRESS PRINCE'S ACCOMPLISHMENTS

Finally, statements about Prince's accomplishments are not a proper topic for expert testimony and are cumulative. Phillips, Wallis and Schwartzman extol Prince's accomplishments as an artist. (*See* Ex. 21 (Wallis Rpt.) ¶¶ 27-31; Ex. 27 (Phillips Rpt.) ¶ 19; Ex. 28 (Phillips Reply Rpt.) ¶¶ 8, 12; Ex. 19 (Schwartzman Rpt.) ¶¶ 24, 29-30; Ex. 20 (Schwartzman Reply Rpt.) ¶ 5; Ex. 46 (Wallis Dep.) 182:11-17; Ex. 43 (Phillips Dep.) 149:2-7, 156:8-16; Ex. 44 (Schwartzman Dep.) 195:14-24; 234:15-21). For example, Phillips describes Prince as "one of the most original artists of the last 30 or 40 years." (Ex. 43 (Phillips Dep.) 149:2-7.) These

22

statements are "lay matters which the jury is capable of understanding and deciding without the expert's help." *Jiau*, 734 F.3d at 154 (internal quotation marks and citation omitted).

In addition, statements about Prince's accomplishments are cumulative. "Evidence is cumulative when it replicates other admitted evidence." *Victorinox AG, Victorinox Swiss Army, Inc. v. B&F Sys., Inc.*, No. 13 Civ. 4534, 2016 WL 4204167 at *3 (S.D.N.Y. Aug. 4, 2016) (quoting *United States v. Jamil*, 707 F.2d 638, 643 (2d Cir. 1983)). Defendants' experts praise Prince's accomplishments by listing the museums that hold his works and referring to his works' past sale figures. However, all of these statements merely duplicate Prince's own testimony. For example, Wallis lists the museums that have showcased or own Prince's works, such as the Whitney Museum of American Art, the Solomon R. Guggenheim Museum, and the Los Angeles County Museum of Art. (Ex. 21 (Wallis Rpt.) ¶¶ 27-28.) Phillips also explains that the Whitney Museum held a retrospective on Prince. (Ex. 27 (Phillips Rpt.) ¶ 3.) But Prince himself attests to the same in his deposition and could do so at any trial. (*See* Ex. 38 (Prince Dep.) 47:10-13, 230:15-19 (explaining that the Los Angeles County Museum of Art holds his retrospective and that his works have been featured in the Whitney Museum and the Guggenheim Museum).)

Likewise, Wallis mentions that Prince's work was "the first photograph to publicly sell for over a million dollars" and that "[i]n 2016, Richard Prince's Untitled (Cowboys) was chosen by Time magazine for their series '100 Photos: The Most Influential Images of All Time.'" (Ex. 21 (Wallis Rpt.) ¶ 28.) Prince testifies to the same. (Ex. 38 (Prince Dep.) 42:9-15 ("[I]t's interesting . . . to get a call from Time magazine, just maybe four years ago, to say your -- one of your Cowboy pictures has been chosen as one of the most -- as one of the 100 most important photographs ever taken in the last 100 years."); *id.* at 43:7-11 ("I got a phone call, and

23

it simply said Richard, one of your Cowboy photographs just went for over $1 million.  I was the first artist to sell a photograph for more than $1 million.").)  Wallis' and Phillips' testimony as to Prince's stature in the art industry and other accomplishments should therefore be excluded as duplicative.  *See, e.g.*, *United States v. Caruso*, No. 99 Civ. 1172, 2000 WL 1134359,  at \*2 (2d Cir. Aug. 9, 2000) (excluding evidence for being cumulative where the same information is already available to the jury through other evidence); *United States v. DiDomenico*, 985 F.2d 1159, 1163 (2d Cir. 1993) (same); *LinkCo*, 2002 WL 1585551, at \*2 (excluding expert testimony that "merely cites deposition testimony from the [defendant's] employees to support generalizations regarding their lack of experience").

In the end, that Prince has purportedly "attained a level of fame and name recognition [which few other artists have achieved]" (Ex. 44 (Schwartzman Dep.) 234:15-21) is minimally, if at all, relevant to the reasonable observer's task at hand of comparing the works at issue.  These experts' statements seek to lay the foundation for the argument that copyright law should not stifle Prince's "genius."  (*Id.* at 195:15).  But genius or not, Prince is not above the law.

24

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion to exclude Defendants' experts' opinions should be granted. Should the Court grant this motion, the rebuttal opinions of Plaintiffs' experts would likewise be unnecessary as they are merely responsive.

Dated:  November 9, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

David R. Marriott
David J. Kappos

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
   *dmarriott@cravath.com*
   *dkappos@cravath.com*

*Attorneys for Plaintiffs Donald Graham and Eric McNatt*

25