**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| DONALD GRAHAM,<br><br>                              Plaintiff,<br><br>vs.<br><br> RICHARD PRINCE, GAGOSIAN<br>GALLERY, INC., and LAWRENCE<br>GAGOSIAN,<br><br>                              Defendants. | No. 1:15-cv-10160-SHS |
| ERIC MCNATT,<br><br>                              Plaintiff,<br><br>vs.<br><br> RICHARD PRINCE, BLUM & POE,<br>LLC, and BLUM & POE NEW YORK,<br>LLC,<br><br>                              Defendants. | No. 1:16-cv-08896-SHS |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION TO EXCLUDE EXPERT TESTIMONY OF BRIAN WALLIS, LISA**
**PHILLIPS, ALLAN SCHWARTZMAN, DANIEL WOLF,**
**ALICE MARWICK AND SANDRA MINOTT-PHILLIPS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT ..........................................................................................1

LEGAL STANDARD..........................................................................................................1

ARGUMENT.......................................................................................................................2

I.     DEFENDANTS' EXPERTS' OPINIONS ON TRANSFORMATIVENESS ARE UNHELPFUL TO THE TRIER OF FACT .........................................................................2

II.    DEFENDANTS' EXPERTS IMPROPERLY OPINE ON PRINCE'S STATE OF MIND..........................................................................................................................5

III.   DEFENDANTS' EXPERTS' OPINIONS ON THE HISTORY OF APPROPRIATION ART AND RICHARD PRINCE ARE INADMISSIBLE UNDER RULE 403 .......................................................................................................7

IV.   DEFENDANTS' EXPERTS' OPINIONS ON THE HISTORY OF THE INTERNET AND SOCIAL MEDIA USAGE ARE UNHELPFUL TO THE TRIER OF FACT......................................................................................................8

V.    DEFENDANTS' EXPERTS IMPROPERLY OPINE ON LEGAL CONCLUSIONS AND MAKE LEGAL ARGUMENTS ....................................................9

VI.   TESTIMONY ABOUT PRINCE'S ACCOMPLISHMENTS IS PREJUDICIAL AND UNHELPFUL TO DEFINING THE RELEVANT MARKET...............................9

VII.  FOREIGN LAW EXPERT REPORTS ........................................................................10

CONCLUSION...................................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Blanch v. Koons*,
467 F.3d 244 (2d Cir. 2006)......................................................................................................3

*Broadspring, Inc. v. Congoo, LLC*,
No. 13 Civ. 1866, 2014 WL 4100615 (S.D.N.Y. Aug. 20, 2014) ...........................................6

*Cariou v. Prince*,
714 F.3d 694 (2d Cir. 2013)..................................................................................................2, 7

*Daubert v. Merrell Dow Pharm., Inc.*,
509 U.S. 579 (1993)..............................................................................................................1, 2

*Graham v. Prince*,
265 F. Supp. 3d 366 (S.D.N.Y. 2017).....................................................................................2

*Lombardo v. Dr. Seuss Enters., L.P.*,
279 F. Supp. 3d 497 (S.D.N.Y. 2017).....................................................................................3

*Meeropol v. Nizer*,
417 F. Supp. 1201 (S.D.N.Y. 1976)........................................................................................3

*In re Mirena IUD Prods. Liab. Litig.*,
169 F. Supp. 3d 396 (S.D.N.Y. 2016)...............................................................................2, 5, 7

*N. Jersey Media Grp., Inc. v. Pirro*,
74 F. Supp. 3d 605 (S.D.N.Y. 2015).......................................................................................4

*Nichols v. Universal Pictures Corp.*,
45 F.2d 119 (2d Cir. 1930).......................................................................................................2

*Nimely v. City of New York*,
414 F.3d 381 (2d Cir. 2005).....................................................................................................2

*Porter v. Quarantillo*,
722 F.3d 94 (2d Cir. 2013).......................................................................................................1

*Restivo v. Hessemann*,
846 F.3d 547 (2d Cir. 2017).....................................................................................................2

*In re Rezulin Prods. Liab. Litig.*,
309 F. Supp. 2d 531 (S.D.N.Y. 2004)......................................................................................5

*SEC v. Tourre*,
  950 F. Supp. 2d 666 (S.D.N.Y. 2013)..................................................................................2

*Sheldon Abend Revocable Tr. v. Spielberg*,
  748 F. Supp. 2d 200 (S.D.N.Y. 2010)..................................................................................3

*Estate of Smith v. Cash Money Records, Inc.*,
  253 F. Supp. 3d 737 (S.D.N.Y. 2017)..................................................................................3

*United States v. Bradbury*,
  No. 14 Cr. 71, 2015 WL 4627018 (N.D. Ind. Jul. 31, 2015)..................................................8, 9

*United States v. Jiau*,
  734 F.3d 147 (2d Cir. 2013)..................................................................................2

**Statutes & Rules**

Fed. R. Civ. P. 44.1..................................................................................10

Fed. R. Civ. P. 56(c)(2)..................................................................................1

Fed. R. Evid. 702 ..................................................................................1, 2, 5

Fed. R. Evid. 403 ..................................................................................2, 7

**Other Authorities**

Hon. Denise Cote, *Making Experts Count*,
  58 J. Copyright Soc'y U.S.A. 223 (2011) ..................................................................................3

Plaintiffs Donald Graham ("Graham") and Eric McNatt ("McNatt") (collectively, "Plaintiffs") respectfully submit this reply memorandum of law in further support of Plaintiffs' Motion to Exclude Expert Testimony of Brian Wallis, Lisa Phillips, Allan Schwartzman, Daniel Wolf, Alice Marwick and Sandra Minott-Phillips.

## PRELIMINARY STATEMENT

Defendants oppose Plaintiffs' motion to exclude their fair use experts based on a mischaracterization of the applicable legal standard regarding the admissibility of expert testimony at summary judgment.  But the law is clear:  the requirements of admissible evidence remain the same at the motion for summary judgment stage as at trial—namely, that the evidence be helpful to the trier of fact.  Defendants also contend that their experts' testimony should be admitted based on an exaggerated reading of a non-binding decision in this district.  But in so doing, Defendants neglect the differences in the nature of the expert testimony admitted in that case and the Second Circuit's warning against excessive use of expert testimony in copyright infringement cases.  The remainder of Defendants' opposition plays fast and loose with both the record and the case law.  Plaintiffs' motion to exclude Defendants' experts should therefore be granted.

## LEGAL STANDARD

Trial courts are responsible for ensuring that expert testimony complies with the rules of evidence.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 592 (1993).  Contrary to Defendants' contentions (*see* Opp. at 1), "the principles governing admissibility of evidence do not change on a motion for summary judgment."  *Porter v. Quarantillo*, 722 F.3d 94, 97 (2d Cir. 2013) (citation omitted); Fed. R. Civ. P. 56(c)(2).  In addition to requiring that an expert be qualified and his or her testimony be based on reliable method and sufficient facts, Federal Rule of Evidence 702 requires that expert testimony "help the trier of fact to understand the evidence

1

or to determine a fact at issue." Fed. R. Evid. 702; *SEC v. Tourre*, 950 F. Supp. 2d 666, 674 (S.D.N.Y. 2013) (citing *Nimely v. City of New York*, 414 F.3d 381, 396-97 (2d Cir. 2005)). An expert's testimony is not helpful to the trier of fact when it "usurp[s] . . . the role of the jury," *In re Mirena IUD Prods. Liab. Litig.*, 169 F. Supp. 3d 396, 413 (S.D.N.Y. 2016), or addresses "lay matters which [the trier of fact] is capable of understanding and deciding without the expert's help," *United States v. Jiau*, 734 F.3d 147, 154 (2d Cir. 2013) (internal quotation marks and citation omitted).

Furthermore, Rule 403 plays a "uniquely important role" in the scrutiny of expert testimony. *Nimely*, 414 F.3d at 397. Because "[e]xpert evidence can be both powerful and quite misleading," the court "exercise[s] more control over experts than over lay witnesses [under Rule 403]." *Id.* (citing *Daubert*, 509 U.S. at 595); *accord In re Mirena IUD Prods.*, 169 F. Supp. 3d at 421. Therefore, expert testimony should be excluded if its probative value is substantially outweighed by a danger of "misleading the jury" or "needlessly presenting cumulative evidence." Fed. R. Evid. 403; *accord Restivo v. Hessemann*, 846 F.3d 547, 573 (2d Cir. 2017).

## ARGUMENT

I.    **DEFENDANTS' EXPERTS' OPINIONS ON TRANSFORMATIVENESS ARE UNHELPFUL TO THE TRIER OF FACT**

The Second Circuit and courts within this district have discouraged the use of experts in copyright infringement cases, where, as in the test for transformativeness, the legal standard is based on the observations of the "ordinary observer."[1] In *Nichols v. Universal*

---

[1] Defendants cite the *Cariou* dissent for the proposition that expert testimony may aid the trier of fact in assessing fair use. (Opp. at 11 n.6.) But this dissenting opinion in fact acknowledges that the Second Circuit in *Cariou* saw no need for an expert's assistance in assessing transformativeness. *See Cariou v. Prince*, 714 F.3d 694, 712-13 (2d Cir. 2013) (Wallace, J., dissenting in part, concurring in part). Defendants also cite to this Court's motion to dismiss opinion for the same proposition. (Opp. at 11 n.6.) But in its opinion, this Court noted that the "articles accompanying defendants' briefing" may be helpful in aiding its fair use analysis and said nothing about the admissibility of expert testimony. *Graham v. Prince*, 265 F. Supp. 3d 366, 382 (S.D.N.Y. 2017).

*Pictures Corp.*, 45 F.2d 119, 123 (2d Cir. 1930) (Hand, J.), *cert. denied*, 282 U.S. 902 (1931), the

Second Circuit stated that expert testimony in copyright infringement cases "ought not to be

allowed at all [because] it cumbers the case and tends to confusion." *Cf. Sheldon Abend*

*Revocable Tr. v. Spielberg*, 748 F. Supp. 2d 200, 204 n.4 (S.D.N.Y. 2010) (declining to consider

the "voluminous submissions of expert reports, similarity comparisons and other materials"

because determination of substantial similarity depends on that of an ordinary observer).  This is

particularly true in cases where the works at issue are non-technical in nature.  In *Meeropol v.*

*Nizer*, the court excluded expert testimony on transformativeness because it was not helpful to

the trier of fact, holding that "[a]lthough there may be fair use cases in which, because of the

technical nature of the materials or other factors, such testimony is useful, this court does not

believe that expert testimony . . . would assist the trier of fact in determining the fair use

question, and therefore it would not admit such testimony at trial."  417 F. Supp. 1201, 1211

(S.D.N.Y. 1976), *aff'd in part and rev'd in part on other grounds*, 560 F.2d 1061 (2d Cir. 1977),

*cert. denied*, 434 U.S. 1013 (1978).  In cases where expert testimony has been introduced on

transformativeness, those decisions have been criticized for allowing expert testimony that "was

largely superfluous" and "almost comical in its unhelpfulness."  Hon. Denise Cote, *Making*

*Experts Count*, 58 J. Copyright Soc'y U.S.A. 223, 237 (2011) (critiquing the use of expert

testimony in copyright cases "as to matters that could be easily determined by the trier of fact

without assistance from an expert").[2]  Here, given that the task at hand—a side-by-side

---

[2] In this circuit, where the works at issue are non-technical in nature, expert testimony on transformativeness is often not even proffered.  *See, e.g.*, *Blanch v. Koons*, 467 F.3d 244, 251-53 (2d Cir. 2006) (comparing the works at issue side-by-side without an expert's aid in fair use analysis); *Lombardo v. Dr. Seuss Enters., L.P.*, 279 F. Supp. 3d 497, 505 (S.D.N.Y. 2017) (finding that "all that is needed is the parties' pleadings, copies of Grinch and the Play, and the relevant case law" to evaluate fair use defense), *aff'd*, 729 F. App'x 131 (2d Cir. 2018); *Estate of Smith v. Cash Money Records, Inc.*, 253 F. Supp. 3d 737, 750 (S.D.N.Y. 2017) (same, in the context of music).

comparison of the works at issue—is non-technical, Defendants' expert testimony should be excluded as it usurps the role of the jury and is unhelpful. (*See* Mot. 14-15.)

The primary case Defendants cite to support the admission of their experts' testimony on transformativeness is *North Jersey Media Group, Inc. v. Pirro*, 74 F. Supp. 3d 605 (S.D.N.Y. 2015). Defendants rely heavily on the fact that in *Pirro*, the court partially admitted the defendants' expert testimony. (Opp. at 11-13.) However, the technical content and specificity of the admitted testimony in *Pirro* was markedly different from the testimony offered by Defendants' experts here, such that Defendants' reliance on that decision is misplaced. In *Pirro*, Defendants' expert, Dr. Sinnreich, testified about technical specifications of the works at issue in detail, such as the pixel counts and digital data loss, which were *outside* the knowledge of a lay juror. (*See* Dr. Sinnreich Rpt. at 6, *N. Jersey Media Grp., Inc. v. Pirro*, No. 13 Civ. 07153 (S.D.N.Y. 2015), ECF No. 115-1 (explaining, *inter alia*, that "The digital version of this photograph offered for licensing by Getty . . . which has a resolution of 2,036 x 3,000 pixels, captures many of these details though even this image is slightly degraded relative to the higher-resolution version of the photo hosted on NJMG's servers, which has a resolution of 2801 x 3972.").) The court partially admitted the expert's testimony because it found "that his testimony regarding the image's resolution and the pixel count *goes beyond the knowledge of most jurors*." (*Pirro* Tr. 36:7-10, *Graham* ECF No. 168-7 (emphasis added).) This testimony stands in stark contrast to the opinions of Defendants' five fair use experts who opine on non-technical matters squarely within a lay juror's understanding—for example, that Prince's Work is "blurry" and "slightly out of focus" (Ex. 21 (Wallis Rpt.) ¶¶ 23, 47);[3] and that printing on

---

[3] Exhibits to the Fitzpatrick Declaration in support of Plaintiffs' opening motion are cited herein as "Ex. __", and exhibits to the Fitzpatrick Declaration in support of Plaintiffs' reply are cited herein as "Reply Ex. __".

canvas makes "the *New Portraits* slightly out of focus from what a person would see on a smart phone" (Ex. 27 (Phillips Rpt.) ¶ 32)—and who opine on the ultimate issues of transformativeness and fair use.  (*See* Mot. 14-15.)  Indeed, in *Pirro*, the court excluded the proffered expert's testimony "to the extent that [] Dr. Sinnreich opines on how the fair use factors should be weighed vis-à-vis one another or whether the uses at issue are fair . . . *because it would usurp the role of the jury.*"  (*Pirro* Tr. 30:16-22, *Graham* ECF No. 168-7.)  Given the non-technical, generic nature of Defendants' expert opinions, their observations are plainly within the knowledge of a lay trier of fact and therefore inadmissible under Rule 702.  *See In re Mirena IUD Prods.*, 169 F. Supp. 3d at 413 (where expert testimony "usurps . . . the role of the jury," it is unhelpful and inadmissible) (citation omitted).

## II.    DEFENDANTS' EXPERTS IMPROPERLY OPINE ON PRINCE'S STATE OF MIND

Expert testimony on a party's state of mind is inadmissible as speculative under Rule 702.  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp. 2d 531, 546 (S.D.N.Y. 2004).  Defendants do not dispute this; they instead seek to twist their experts' references to Prince's "purpose" or "meaning" as not speculation, but rather as first-hand insight into Prince's intent through their own review of the works.  (Opp. at 14.)  This game of semantics should be disregarded.  Defendants' experts plainly speculate on Prince's state of mind, purpose and intent.  For example, Wallis states that "it seems clear that one of Mr. Prince's key purposes in the *New Portraits*—not lost on critics or audiences—was to comment on the culture of the Internet itself." (Ex. 21 (Wallis Rpt.) ¶ 43.)  Likewise, Phillips states that "the purpose and meaning of [Prince's Works are] completely different from the original photograph; 100 percent different."  (Reply

Ex. 1 (Phillips Dep.) 108:5-9.)[4]

Furthermore, Defendants' explanation of their experts' references to Prince's state of mind is filled with inconsistencies.  Phillips testified that Prince's own statement about his intention would not change her analysis of his works (Reply Ex. 1 (Phillips Dep.) 146:21-147:2), but she also testified that the analysis to determine whether Plaintiffs' works have been transformed depends in part on Prince's "intention and purpose" (*id.* 107:22-24).  Likewise, Wallis testified that Prince's stated intention "might not be relevant to [his] interpretation" of Prince's Works (Reply Ex. 2 (Wallis Dep.) 185:14-18), but he also stated that "artistic motivations" is "a piece of information that [he] can use" in interpreting an artwork (*id.* 258:16-20).  Defendants' arguments in their opposition brief also do not withstand scrutiny—Defendants argue that Prince's intention as to the meaning of his work is relevant only if it is "visible in the work" (Opp. at 14), but at the same time contend that Wallis' opinions are helpful and admissible even though he "sees a 'meaning' in Prince's Works that may differ from [what] Prince says he was 'trying to do.'"  (*Id.* at 14-15.)  Plainly, an expert's speculative conjecture about an artist's purpose or intent—which *does not even comport* with the articulated intent of the artist himself—is unhelpful and confusing, and should not be admitted.[5]

---

[4] Defendants' reliance on *Broadspring, Inc. v. Congoo, LLC*, No. 13 Civ. 1866, 2014 WL 4100615, at *16 (S.D.N.Y. Aug. 20, 2014), is unavailing.  In *Broadspring*, only a negligible portion of the expert testimony was challenged for opining on a programmer's state of mind, for using terms such as "surreptitious" and "inconsideration."  The court concluded that these statements were not about a programmer's state of mind, because there was no evidence as to *who* that programmer was.  *Id.*  Here, in contrast, a substantial portion of the experts' testimony is devoted to Prince's supposed motivation for creating his works; the experts' reports and their deposition testimony are replete with terms such as "purpose," "intention," and "motivation;" and the identity of the person whose state of mind is being described—Prince—is clearly known.

[5] Defendants' litigation position in their motions for summary judgment relies heavily on the contention that Prince's Work was allegedly a "commentary on the nature of social media" and that "Prince's intended meaning and purpose behind the *New Portraits* series is of record and undisputed. . . . Thus, despite facially 'minimal' alterations to the photographic element of [*Untitled*], Prince's use of the Photograph is sufficiently transformative as a matter of law."  (*Graham* ECF No. 131 at 2, 13; *McNatt* ECF No. 125 at 2, 24.)  However, in their opposition brief to the instant motion, Defendants change course and concede that Prince's "message of *Untitled* is 'to have fun, I wanted to make people feel good'" and that "Prince's stated intent is not controlling" in conducting the transformativeness

6

### III. DEFENDANTS' EXPERTS' OPINIONS ON THE HISTORY OF APPROPRIATION ART AND RICHARD PRINCE ARE INADMISSIBLE UNDER RULE 403

The probative value of Defendants' experts' opinions on the history of appropriation art and Richard Prince are substantially outweighed by their prejudicial effect, and they should therefore be excluded. *In re Mirena IUD Prods.*, 169 F. Supp. 3d at 421 (citing Fed. R. Evid. 403).[6] Defendants' experts here do more than merely offer "background knowledge or context" (Opp. at 17 (citation omitted))—they seek to define the outer limits of fair use based on the practices of *other* artists and *other* works. The critical inquiry for the fair use analysis is whether Prince's Works are transformative to a reasonable observer based on a side-by-side visual comparison of the works at issue. *Cariou*, 714 F.3d at 707. That famous artists, such as Pablo Picasso, Georges Braque and Andy Warhol, incorporated other artists' works into their work and that "Richard Prince follows in this tradition" (Ex. 27 (Phillips Rpt.) ¶¶ 17-19) does not bear on this inquiry. (*See* Mot. at 19.) Such testimony will instead distract the jury by creating the impression that because other famous artists have engaged in a similar practice, and because certain high profile art experts, such as Wallis, Phillips and Schwartzman, find Prince's Works legitimate, that Prince's use of Plaintiffs' Works must be fair use. (*See id.* at 18-19.) Any probative value of this narrative is outweighed by its prejudicial effect, and this testimony should be excluded.

---

inquiry. (Opp. at 15.)

[6] Defendants' experts' testimony on the history of appropriation art and Richard Prince should also be excluded as improper factual narrative. (*See* Mot. at 16-17.) Prince has testified at length about his past and present works in relation to the history of appropriation art. (Ex. 38 (Prince Dep.) 28:8-33:25, 38:9-48:21; *see* Mot. at 17.)

**IV.    DEFENDANTS' EXPERTS' OPINIONS ON THE HISTORY OF THE INTERNET AND SOCIAL MEDIA USAGE ARE UNHELPFUL TO THE TRIER OF FACT**

Marwick's fifty-five paragraph discussion of the history of the Internet is of marginal relevance to this action.  That "the Internet began as a two-way message and file-sharing service for research institutions," (Opp. at 20; Ex. 17 (Marwick Rpt.) ¶¶ 29-62), that "the advent of the smart phone in the mid-2000s revolutionized social media," (Ex. 17 (Marwick Rpt.) ¶ 47) and that Plaintiffs do not have a large number of followers on their Instagram accounts (*id.* ¶¶ 23, 28), among other discourse, do not provide a "helpful backdrop for the trier of fact," (Opp. at 20) in comparing Prince's Works with Plaintiffs' photographs.  Indeed, Marwick's testimony is not needed to understand Prince's Works, because her testimony largely concerns lay matters.  Marwick's opinions that "Facebook and LinkedIn are the most popular sites devoted to social networking" (Ex. 17 (Marwick Rpt.) ¶ 42); that "once [an image] is posted [on the Internet,] . . . it is taken up by a variety of individuals for their own needs" (*id.* ¶ 22); and that "people use Instagram to document their lives and express themselves" (*id.* ¶ 80 (citation omitted)) are not beyond an ordinary fact finder's understanding and need not be presented through thirty pages of expert opinion.

Defendants reliance on *Pirro* to support the admission of Marwick's testimony is unavailing; in *Pirro*, the expert opined on the definition of a "meme" and the "memeification" process, not merely "on how a Facebook audience perceived [the] allegedly infringing work" (Opp. at 21; *see* Dr. Sinnreich Rpt. at 4-5, *N. Jersey Media Grp., Inc. v. Pirro*, No. 13 Civ. 07153 (S.D.N.Y. 2015), ECF No. 115-1.)  *United States v. Bradbury*, No. 14 Cr. 71, 2015 WL 4627018 (N.D. Ind. Jul. 31, 2015), an out-of-circuit case, is also inapposite.  The court in *Bradbury* admitted expert testimony on how Facebook users interact with the platform, because the case involved a plaintiff who was charged for making threats on Facebook and the court sought to

8

determine the plaintiff's intent in so doing.  *Id.* at *1-3.  Unlike in *Bradbury*, where "[t]he way people interact with Facebook was *central* to the case," *id.* at *3, expert opinion about the common usage of Instagram, Facebook and the Internet at large is unhelpful and unnecessary to comparing the works at issue here.

## V.    DEFENDANTS' EXPERTS IMPROPERLY OPINE ON LEGAL CONCLUSIONS AND MAKE LEGAL ARGUMENTS

Defendants do not challenge that conclusions of law or legal arguments are inadmissible; they contend instead that their experts do not make such statements.  (*See* Opp. at 13 n.9, 21-23.)  But a review of their experts' opinions belies Defendants' contention.  For example, Marwick's statement as to the binding effect of Facebook's user agreement is a legal conclusion.  (Opp. at 22 n.19.)  Marwick also makes legal arguments about the implications of failing to add a watermark or append a copyright notice to images posted online.  (Ex. 17 (Marwick Rpt.) ¶ 72.)  Wallis similarly makes legal conclusions:  for example, Wallis states that Prince's wholesale incorporation of Plaintiffs' Works is "integral to the function of parody" (Ex. 22 (Wallis Reply Rpt.) ¶ 10); and "that parody is generally considered allowable fair use" (Ex. 21 (Wallis Rpt.) ¶ 37.)  In addition, Wallis' statements that Prince's Works are not piracy or knock off replications, like "fake Chanel handbags," constitute impermissible legal arguments. (Opp. at 23; Ex. 21 (Wallis Rpt.) ¶ 54.)

## VI.    TESTIMONY ABOUT PRINCE'S ACCOMPLISHMENTS IS PREJUDICIAL AND UNHELPFUL TO DEFINING THE RELEVANT MARKET

Defendants' attempt to recharacterize Defendants' experts' praise of Prince's accomplishments as testimony about the relevant market for his artworks should be disregarded. (Opp. at 22-23.)  Wallis and Phillips purport to opine only as to the history of appropriation art and Prince's artistic practice, and not the relevant market for Prince's Works compared to

9

Plaintiffs' Works.  (*See* Ex. 21 (Wallis Rpt.) ¶¶ 10-11; Ex. 27 (Phillips Rpt.) ¶¶ 10-12.)

Schwartzman purports to opine on the relevant market for Prince's Works and Plaintiffs' Works

(Ex. 19 (Schwartzman Rpt.) ¶ 12), but he can easily do so without making prejudicial references

to Prince's alleged "genius."  (Ex. 44 (Schwartzman Dep.) 195:15.)  To the extent that the list of

museums that retained or showcased Prince's Works and the past sale figures of Prince's Works

are relevant to defining the relevant market, Defendants can elicit the same information through

Prince.  (*See* Mot. at 23-24.)

## VII.    FOREIGN LAW EXPERT REPORTS

The parties agree that the expert testimony on foreign law should not be

introduced to the jury but may be considered by the Court.  (*See* Opp. at 24); Fed. R. Civ. P.

44.1.  To the extent the Court wishes to consider Minott-Phillips' expert report in the absence of

the jury under Rule 44.1, Plaintiffs offer Roxanne Miller's and June Besek's Rebuttal Reports in

response.

**CONCLUSION**

For the foregoing reasons, Plaintiffs' motion to exclude Defendants' experts'

opinions should be granted.  Should the Court grant this motion, Plaintiffs' experts' opinions

would likewise be unnecessary as they are merely responsive.

10

Dated:  December 11, 2018

Respectfully submitted,

CRAVATH, SWAINE & MOORE LLP,

by

_____
David R. Marriott
David J. Kappos

Worldwide Plaza
825 Eighth Avenue
New York, NY 10019
(212) 474-1000
*dmarriott@cravath.com*
*dkappos@cravath.com*