```
J9JVGRAC

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

DONALD GRAHAM,

                Plaintiff,

        v.                              15 CV 10160 (SHS)

RICHARD PRINCE, et al,

                Defendants.
------------------------------x

ERIC McNATT,

                Plaintiff,

        v.                              16 CV 8896 (SHS)

RICHARD PRINCE, et al,

                Defendants.             DECISION
------------------------------x

                                        New York, N.Y.
                                        September 19, 2019
                                        3:06 p.m.

Before:

                    HON. SIDNEY H. STEIN,

                                        District Judge

                        APPEARANCES

CRAVATH SWAINE & MOORE
     Attorneys for Plaintiffs
BY:  CAITLIN N. FITZPATRICK

GREENBERG TRAURIG
     Attorneys for Defendant Richard Prince
BY:  IAN C. BALLON
     ALENA M. MARKLEY
     NINA D. BOYAJIAN (appearing telephonically)
```

J9JVGRAC

APPEARANCES (continued)

DONTZIN NAGY & FLEISSIG
     Attorneys for Defendants Gagosian Gallery, Inc.
       and Lawrence Gagosian
BY:  TRACY O. APPLETON

J9JVGRAC

        (Case called)

        MS. FITZPATRICK:  Caitlin Fitzpatrick, on behalf of plaintiffs, from Cravath, Swaine & Moore.

        THE COURT:  Good afternoon.

        We have somebody on the phone, so please speak loudly.

        MR. BALLON:  Good afternoon, your Honor.

        Ian Ballon of Greenberg Traurig, for defendants Richard Prince and the two Blum & Poe entities.

        THE COURT:  Good afternoon.

        MR. BALLON:  Good afternoon.

        MS. BOYAJIAN:  Good afternoon, your Honor.

        This is Nina Boyajian from Greenberg Traurig representing Richard Prince in both matters, and Blum & Poe & McCann.

        THE COURT:  Good afternoon.

        MS. MARKLEY:  Good afternoon.  Alena Markley.

        I'm also with Greenberg Traurig, representing Blum & Poe and Richard Prince.

        MS. APPLETON:  Good afternoon, your Honor.

        Tracy Appleton, from Dontzin, Nagy & Fleissig, on behalf of Gagosian Gallery, Inc. and Lawrence Gagosian.

        THE COURT:  Good afternoon to all of you.

        Please be seated in the courtroom.

        I was seriously considering bringing you in for oral argument on the expert motions.  I'm not going to have argument

1  now on the summary judgment motions; that will come later.  At
2  another time I'll bring you in for oral argument on that.  And
3  I do need oral argument on the summary judgment motions.
4      But I realized, after considering it, the motions to
5  strike the expert reports are very straightforward, and really
6  I feel quite comfortable in reaching a decision without oral
7  argument on it.
8      I'm not quite sure why the motions were made.  It's
9  quite clear the experts are being used in conjunction with the
10 motions for summary judgment.  So it's a decision for me to
11 make and for me to credit or not credit, whatever it is to be
12 credited or not credited in these affidavits, and to put those
13 parts of the affidavits' expert reports that I accept, to
14 weight them accordingly.
15     I'm not going to parse every expert report line by
16 line; the cases are clear I don't have to, and I'm not going
17 to, it would be a waste of time.  I'm not going to accept legal
18 conclusions.
19     You have somebody here, I think it's -- is it
20 Ms. Besek?  I think so.  She's functioning as a lawyer.  I
21 don't need her to tell me about the law.  Presumably I'll reach
22 my own conclusions on what the law is and the lawyers will tell
23 me what the law is.  So I'm going to strike her entire report.
24     Other than that, I'll credit what I deem to be
25 appropriate and disregard what is inadmissible.

That's the overview. But I'll give you more specifics at this point.

The experts, all of the experts, are fair use experts, with the exception of a single damage expert. From the standpoint of the damage experts, I'm going to -- expert, I'm going to -- that's Stephen Holzen -- I'm going to deny that without prejudice. So if the result of the summary judgment motions is that we go on to damages, I'll then consider that. But I don't have to rule on the admissibility of the Holzen damage report at this point. Actually, a better way to do it is to dismiss it without prejudice; not to deny it, I'll dismiss it without prejudice.

I'm not going to go into the background and the facts, because the parties know that. And the parties understand Rule 702 as well. I don't have to set all of that forth.

The legal standards are as follows:

"Under *Daubert*, the district court functions as the gatekeeper for expert testimony, whether proffered at trial or in connection with a motion for summary judgment." *Buckley v. Deloitte & Touche USA LLP*, 888 F. Supp. 2d 404, 412 (S.D.N.Y. 2012), aff'd, 541 F. App'x 62 (2d Cir. 2013) (quoting *Major League Baseball Props., Inc. v. Salvino*, 542 F.3d 290, 310 (2d Cir. 2008)) "Expert opinions that are without factual basis and are based on speculation or conjecture are inappropriate material for consideration on a motion for summary judgment."

1 That's a citation again from Buckley and again quoting *Major*
2 *League Baseball Properties*. And the same is true of conclusory
3 opinions; same citation.
4   "When a party offers expert declarations in support of
5 its position, and a motion has been made to exclude such
6 expert, a court must decide that motion first, in order to
7 determine whether such testimony may be considered in
8 connection with summary judgment." *In re Puda Coal Sec. Inc.,*
9 *Litig.*, 30 F. Supp. 3d 230, 253 (S.D.N.Y. 2014), affirmed, 649
10 F. App'x 55 (2d Cir. 2016), under the name of *Querub v. Hong*
11 *Kong*.
12   "Evidence inadmissible at trial is insufficient to
13 create a genuine dispute of material fact, and the Court need
14 not engage in a separate line-by-line analysis of [the
15 parties'] objections." *Hitachi Data Sys. Credit Corp. v.*
16 *Precision Discovery, Inc.*, 2019 WL 3802178, at *3 (S.D.N.Y.
17 Aug. 13, 2019).
18   I may deny motions as a formal matter, and I have
19 discretion to simply disregard inadmissible portions of
20 evidence at summary judgment. That's also from my opinion in
21 *Hitachi*. *See also Amnesty Am. v. Town of W. Hartford*, 361 F.3d
22 113, 132 n.12 (2d Cir. 2004). And see *In re NewStarcom*
23 *Holdings, Inc.*, 547 B.R. 106, 138 (Bankr. D. Del. 2016).
24   Again, I'm not going to set forth Rule of Evidence
25 702; you know what it is.

And here, the proposed expert testimony is not of a technical nature, but, rather, falls within the ambit of social science. And I'm guided by the objectives of the *Daubert* factors, and I can't really apply each of the factors mechanically because there are no formulas here or reproducible experiments. *See United States v. Paracha,* 2006 WL 12768, at *19, aff'd, 313 F. App'x 347 (2d Cir. 2008) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

All right. Let's turn first to the motions to exclude the fair use experts.

For the motions for summary judgment, I obviously have to determine whether there is a genuine dispute of material fact. And in order to assist my determination of whether there is a material issue -- an issue of material fact, I can look to areas of these reports that give their views in terms of fair use; I can credit certain portions of the report, and I can disregard those portions that, for example, just give a legal conclusion or are inadmissible in some other way.

I've already said that the legal expert report I'm going to exclude.

"It is a well-established rule in the Second Circuit that experts are not permitted to present testimony in the form of legal conclusions." *United States v. Articles of Banned Hazardous Substances Consisting of an Undetermined No. of Cans of Rainbow Foam Paint,* 34 F.3d 91, 96 (2d Cir. 1994) (citing

*Hygh v. Jacobs,* 961 F.2d 359, 363 (2d Cir.1992)). I'm going to disregard the legal conclusions; I'm going to apply the law as it exists; and I'm not going to substitute any expert's legal conclusion for my own. *See Hewitt v. Metro-N. Commuter R.R.*, 244 F. Supp. 3d 379, 393 (S.D.N.Y. 2017)

I'll also disregard the experts' comparison of the works to the extent they encroach on the jury's role to visually compare the works. The jury can compare the works; they don't need an expert to compare the works.

On the motions for summary judgment in this case, I sit in the position of having to compare the works simply to determine whether there is a genuine dispute of material fact.

In ruling on the motion to dismiss, I directed that there be evidence produced on whether Prince's works are transformative. When I was going through the cases and in my opinion, I saw that the cases do use art criticism. And so the art criticism experts are generally allowable. See my opinion in *Graham,* 265 F. Supp. 3d at 382.

To the extent that the opinions are helpful, I will accept them; and to the extent that they usurp my role, I will disregard them. It is the June Besek report that I am excluding entirely. All of her opinions essentially are legal conclusions. There is a single reference opinion in her report saying that the works are not not transformative basically because they are in the frame of the Instagram interface. But

1   she is not an expert on Instagram.  She's a lawyer; she is

2   knowledgeable about copyright law, not art.  So, as I said, I

3   am not going to include or consider her views on copyright law.

4         I will, you'll see, consider the views on the law of

5   the Jamaican person, because that falls with a Jamaican expert

6   from Jamaica is the way to put that; she's Queens counsel.

7   Because that's under a separate rule in the Federal Rules of

8   Evidence allowing affidavits in terms of foreign law.  But not

9   Besek.  So the Besek report is stricken entirely.

10        It's Ms. Minott-Phillips QC who is the Jamaican

11  attorney.  And her testimony is admissible for me to consider

12  on the motions for summary judgment.  That's Rule 44.1.

13        Now we'll take a look at the general objections from

14  defendants.

15        They say that plaintiffs' experts' opinions on the

16  transformativeness or lack of transformativeness is based on

17  insufficient facts and data because they never inspected the

18  large-scale works in person, and they simply inspected copies

19  of the works.  That goes to the weight, not the admissibility,

20  of these opinions.  *See Cedar Petrochemicals, Inc. v. Dongbu*

21  *Hannong Chem. Co.*, 769 F. Supp. 2d 269, 285 (S.D.N.Y. 2011).

22        Defendants also argue that Whitaker, Bogre, and

23  Coleman are either unqualified or have insufficient factual

24  bases to opine on the effect of Prince's works on the market

25  for Graham's works.

1  Whitaker is qualified to testify on the art market
2  based on her education, including an MBA and a degree in fine
3  art, as well as her experience teaching business as it relates
4  to the arts.  *See In re LIBOR-Based Fin. Instruments Antitrust*
5  *Litig.*, 299 F. Supp. 3d 430, 466 (S.D.N.Y. 2018) quoting *Cary*
6  *Oil Co. v. MG Ref. & Mktg., Inc.*, 2003 WL 1878246, at *2
7  (S.D.N.Y. Apr. 11, 2003)).

8  Bogre is not an expert on art market valuations; and
9  she, in fact, said that at her deposition.  (See Bogre
10 Deposition, page 391).  Accordingly, I'll disregard that
11 opinion of hers, but I need not disregard her entire report.
12 That's *In re LIBOR* again at 467 ("[A]n expert's lack of
13 qualifications as to some of the opinions offered does not
14 render inadmissible the opinions that he is qualified to
15 offer.").

16 With respect to the factual bases underlying the
17 opinions on the art market, whether there is a sufficient
18 factual basis underlying those opinions goes to the weight, not
19 the admissibility.  *See Cedar Petrochemicals,* 769 F. Supp. 2d
20 at 285.

21 There are no empirical studies here, there are no
22 consumer surveys; so everything that's there goes to the
23 weight.

24 To the extent there are instances in which the experts
25 proffer only *ipse dixit* opinions, I'm going to disregard those

1   opinions.  See *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146
2   (1997).
3            Now let's turn to the objections from the plaintiffs.
4            The plaintiffs say that the defendants' people
5   shouldn't be allowed to speculate about Prince's state of mind
6   when he was working on the art, pointing to various portions of
7   the defendants' experts' reports, setting forth what meaning
8   Prince intended to convey in his works.  As a general matter,
9   expert testimony as to a party's state of mind is inadmissible.
10  *See In re Rezulin Prod. Liab. Litig.*, 309 F. Supp. 2d 531, 546
11  (S.D.N.Y. 2004).
12           However, in the art context, divining the artist's
13  intent is what these art people do; they say the artist
14  intended to project intense devotion to a particular thing or
15  intended for the color to make this kind of statement.  And, of
16  course, none of them actually know what the artist was
17  intending.  But that type of testimony is allowed in these
18  cases.  How critics interpret Prince's work is relevant to fair
19  use.  And that's even separate from what his actual intent is.
20  *See Pension Comm. of Univ. of Montreal Pension Plan v. Banc of*
21  *Am. Sec., LLC,* 691 F. Supp. 2d 448, 467 (S.D.N.Y. 2010).  The
22  amount I credit that speculation or don't credit it goes to the
23  weight of the evidence, not its admissibility.
24           You see that's a theme obviously in this decision.
25           And similarly, I am able to read both sides' experts'

1    recounting of the history of appropriation art and Prince's
2    substantial role in it, and evaluate that to the extent
3    helpful.  Dr. Marwick's extensive recitation of the history of
4    the internet and social media is an example here.
5         Because of the involvement of the Instagram interface,
6    some of Dr. Marwick's testimony presumably will be useful to me
7    to elucidate any relevant concepts.  But as the plaintiff
8    points out, part of her report concerning ARPA is irrelevant to
9    my fair use determination and I'll utilize the report
10   accordingly.  *See In re LIBOR,* 299 F. Supp. 3d at 469 ("The
11   fact that some of an expert's opinions are irrelevant does not
12   render all of the expert's opinions inadmissible.  Nonetheless,
13   we need not overly fragment an expert's opinions in order to
14   pick out only the relevant and helpful portions.").  That's
15   from *In re LIBOR*.
16        Now, defendants' Objections to specific plaintiffs'
17   experts.
18        Defendants object to Ms. Whitaker's report, saying
19   that her "report reads like a protest article on art politics
20   rather than proper rebuttal testimony."  Indeed part of that is
21   valid.  I enjoyed her expert opinion that -- let me just make
22   sure I have the quote right.  Paragraph 21.  "Defendants'
23   experts' assessment of the plaintiff's works as 'not art'
24   depends upon the notion that art and artist are categories and
25   terms defined and controlled by experts or other elite voices

in the art world.  This notion is, at best, accidentally undemocratic and, at worst, persistently and inexcusably colonialist and in need of updating."

I was taken by such a statement.  I haven't heard one like that since the 1960s.  I am going to disregard the hyperbole in her opinion.  *See Schwab v. Philip Morris USA, Inc.*, 449 F. Supp. 2d 992, 1221 (E.D.N.Y. 2006), reversed under the name on other grounds of *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215 (2d Cir. 2008).  And I'll take the same approach for all the expert reports.

With respect to plaintiff's expert Ms. Sussman, defendants contest her qualifications and say she has no recognized expertise in photography or appropriation art.  I think that's wrong; she does have relevant experience in art curation and consulting, as she was a curator for a number of hospitals and similar organizations.  Her lack of expertise in one field, but relevant experience in a related field, again, goes to weight, not admissibility.  *See Scentsational Techs, LLC v. Pepsi, Inc.*, 2018 WL 1889763, at *2, affirmed under the name *ScentSational Techs. LLC v. PepsiCo, Inc.*, 773 F. App'x 607 (Fed. Cir. 2019).  *See also In re Rezulin*, 309 F. Supp. 2d 531, 559 (S.D.N.Y. 2004) ("A lack of formal training does not necessarily disqualify an expert from testifying if he or she has equivalent relevant practical experience").

I've already told you that I am going to dismiss

1  without prejudice the report of plaintiffs' damages expert,
2  Stephen Holzen, and we'll deal with it if need be.  All right?
3          I'm dismissing without prejudice Holzen.  I am
4  striking Besek.  And the others I will accept what parts I
5  should and reject what parts I should.
6          Thank you.  I'll bring you in in a few weeks for
7  argument on the substantive summary judgment motions.
8          Thank you, all.
9                         *    *    *